Palisades Interstate Parkway to the east. The property adjoins both the western portion of the northerly boundary of Wesley Hills and the southern portion of the westerly boundary of Pomona. This site is surrounded by low-density single-family residences.

115. Upon information and belief, Respondent/Defendant Scenic Development, the owner of the Patrick Farm Site, plans to develop at least part of the site with adult student multi-family housing pursuant to the Adult Student Housing Law.

116. The maximum number of acres that could be used for each adult student multi-family housing development would be 12 acres under the Adult Student Housing Law. Application of the Adult Student Housing Law to the Patrick Farm Site would allow 192 dwelling units on these 12 acres. This amounts to an increase in density on these 12 acres from 6 under the prior existing zoning to 192 dwelling units, or an increase of 186 more units under the subject Adult Student Housing Law.

117. In analyzing the impact of the Adult Student Housing Law on the Patrick Farm Site, the EAF used the proposed rezoning of Patrick Farm to R-40, or 40,000 square foot lots, under the Comprehensive Plan as the comparison for the increased density. Presumably, the change in density between the existing zoning and the Adult Student Housing Law would be less, thus artificially reducing the potential impacts. Even using the R-40 zone as the basis of comparison, application of the Adult Student Housing Law would increase the density of the 12 acres from 13 units to 192, a significant increase by any standard.

118. The EAF's only analysis of the potential change in character to the neighborhood or the vastly increased allowable density was a cursory note that "the desired outcome" would be a centrally located facility amidst the proposed 40,000 square foot lots of the

surrounding area. This is not a careful or acceptable analysis of the potential adverse impacts from this significant density change.

119.    In addition, hoping that a developer would institute this "desired outcome" is not a substitute for proper study and/or mitigation of the impacts from this rezoning.

120.    The EAF also completely failed to analyze traffic, water or sewer impacts to the Patrick Farm Site, the Villages and the surrounding area from application of the Adult Student Housing Law.

121.    In connection with potential water consumption impacts, for example, only two Adult Student Housing developments on the Patrick Farm Site would create 384 multi-family dwellings with a population of 2,112 persons, consuming 158,400 gallons of water per day. Thus, limited adult student housing development on only a very small portion of the Patrick Farm Site would alone increase water consumption by over 500%.

122.    In addition, an adequate quantitative analysis of the potential traffic impacts from adult student housing on the Patrick Farm Site would have shown that the traffic generation from such a high density development would be at least four (4) times greater than allowed under the current zoning. The Town simply and improperly ignored the potential adverse impacts of this traffic generation trips by not conducting a quantitative intersection capacity analysis at the intersections most impacted by this traffic.

123.    The Town's environmental review concerning its proposed Adult Student Housing Law failed to come close to properly analyzing the potential significant adverse impacts from its application to the Patrick Farm Site.

The Nike Site

124.    The Nike Site is comprised of approximately 4.7 acres on Grandview Avenue, and is presently zoned R-25 (25,000 square foot lots). Application of the Adult Student Housing Law would permit 75 dwelling units, in comparison to the 8 single-family homes that could be built on the site under the existing zoning. Twelve homes currently exist on the site. These twelve homes were constructed by the United States Army in the 1950's, and are presently non-conforming.

125.    The Nike Site is surrounded by low-density single-family homes. It is adjacent to the Villages of Wesley Hills and New Hempstead.

126.    The EAF acknowledged that the Nike Site has a "specific proposal for this type of development" of adult student multi-family housing in anticipation of the Adult Student Housing Law.

127.    There was no environmental analysis of this proposal, or its impacts on the Villages and surrounding neighborhoods in the EAF.

128.    Respondent/Defendant Yeshiva Chofetz Chaim of Radin is the owner of the Nike Site, and the applicant for said proposal for adult student multi-family housing on the Nike Site.

129.    The EAF further acknowledged that the Nike Site cannot accommodate the 500 foot buffer required under the Adult Student Housing Law between the adult student multi-family housing and abutting low density residential land within the Villages.

130.    The Adult Student Housing Law carves out a specific exception from the buffer applicable only to the Nike Site, without any rationale for this exception.

131.    The EAF completely failed to mention or analyze the potential water, sewer or traffic impacts to the Nike Site and the surrounding area from application of the Adult Student Housing Law.

132.    The generation of traffic at a 75-dwelling unit, adult student housing development that would be permitted on the Nike Site under the new Adult Student Housing Law, for example, would be significantly above present levels (more than twice present levels), whether that be defined by the existing 12 homes or by the number of housing units that could be developed under the single-family residential zoning requirements.

133.    The Town ignored the potential adverse impacts of this traffic generation by not conducting any quantitative intersection capacity analysis at the intersections that would be most impacted by this traffic.

134.    The EAF in general failed to analyze meaningfully any of the potential significant adverse impacts from the application of the Adult Student Housing Law to the Nike Site, even though a specific development proposal was pending for this site at the time the Adult Student Housing Law was under consideration.

Highview Road Site

135.    The Highview Road Site is comprised of 11.7 acres. It is presently zoned R-25. If fully developed under the existing zoning, 20 single-family homes could be built on the 11.7 acre site.

136.    The Highview Road Site is located on Highview Road between College Road and Spook Rock Road.

137.    Upon information and belief, this site is also owned by Respondent/Defendant Yeshiva Chofetz Chaim of Radin.

26

138. Upon information and belief, Chofetz Chaim also plans to develop this site with adult student multi-family housing.

139. The EAF acknowledges that this site is "set in a neighborhood of single family dwellings." (EAF Narrative at 3, Exh. "6").

140. The EAF further acknowledged that traffic is near capacity for this site, even without increased development allowed under the Adult Student Housing Law.

141. Yet the EAF did not contain any discussion of the acknowledged traffic or other impacts from the special permit use of the site that would be allowed pursuant to the Adult Student Housing Law, including, the impacts to sewer, water, or neighborhood character that would result from the application of the Adult Student Housing Law to this site.

### Spruce Road Site

142. The Spruce Road Site consists of 4.8 acres, and is surrounded on two sides by single-family homes. The site is presently zoned R-40A. If fully developed under the existing zoning, 5 single-family homes could be built on the 4.8-acre Spruce Road site. Under the Adult Student Housing Law, 77 dwelling units could be developed.

143. The Town, again, did not mention or analyze the potential impacts from traffic, sewer and water consumption, or neighborhood character from the vastly increased housing density that would be allowed under the Adult Student Housing Law for the Spruce Road site.

144. Yet, the generation of traffic would be potentially five times greater under the Adult Student Housing Law. The Town ignored these potential adverse impacts by not conducting any quantitative intersection capacity analysis, or other of the typical traffic study methodologies.

27

145.    In addition, the Spruce Road and Nike Sites are within a one-half mile radius of each other, and, combined, the sites comprise 9.6 acres. Both sites could be developed under the Adult Student Housing Law.  If both the Nike and the Spruce Road Sites were developed as single-family housing, the combined 17 homes would generate 23 trips during the evening rush hour. The 151 adult student housing units that could be developed on the combined sites under the Adult Student Housing Law would be expected to generate at least 70 evening rush-hour trips, more than three times as much traffic as would be generated by 17 single-family homes.

146.    Since both the Nike and the Spruce Road Sites are so close together, the traffic generated by adult student housing at these sites would overlap at adjacent intersections, potentially impacting operating conditions as discussed more fully hereafter. The Town ignored the potential adverse cumulative impacts of these trips by not conducting a quantitative intersection capacity analysis at any of these most impacted intersections.

147.    The EAF failed to properly analyze any of the potential significant impacts from application of the Adult Student Housing Law to the Spruce Road site.

The Town Fails To Set Forth A Reasoned
Elaboration For The Negative Declaration

148.    Thus, without undertaking any of the requisite environmental review as discussed supra, the Town, at its June 15, 2004 Board meeting, issued a negative declaration closing its cursory environmental review process, and adopted the Adult Student Housing Law.

149.    The Town's Resolution finding that the Adult Student Housing Law would not result in at least one potential significant adverse impacts on the environment contained no explanation, reasoned elaboration or independent analysis, similar to the EAF.

28

150.   The Resolution was based solely "upon the recommendation of [Town consultant] Frederick P. Clark Associates." (Resolution No. 2004-358, dated June 15, 2004, Exh. "8").

151.   In the Town's "Notice of Determination of Non-Significance," under the section titled "Reasons Supporting This Determination," for example, the Town failed to supply any analysis or the required reasoned elaboration for the Negative Declaration as required under SEQRA.

152.   The Town merely stated that the Negative Declaration is "based on the Criteria for Determining Significance in SEQRA Section 617.[3](c)(1) and based on the approved full Environmental Assessment prepared as part of the request and the plans and reports submitted for this project." (Negative Declaration at 2, Exh. "9").

153.   The Town's negative declaration of the Adult Student Housing Law and its finding of no potential significant environmental impacts failed to meet the most basic mandatory requirements under SEQRA.

The Adult Student Housing Law Also
Impermissibly Entangles Government And Religion

154.   One of Ramapo's stated purposes for adopting the Adult Student Housing Law is that the "need for this type of housing has been identified in the context of a religious land use (RLUIPA) issue, arising from private schools which have no mechanism to provide such housing under the current regulations." (EAF Narrative at 1, Exh. "6"). Yet, no evidence has been presented, which indicates why high density multi-family housing is required to be constructed as part of such religious schools, nor how the failure to provide such housing would impose a burden on the free exercise of religion.

155.   The Town's current Zoning Law permits dormitories as accessory to all school uses, religious and secular.  Obviously, there is a mechanism for school-related housing.

156.   As such, the Adult Student Housing Law was proposed specifically in response to the request from a religious group for multi-family housing on the Nike Site and the Highview Road Site to house married adult students and their families, even though these Sites do not contain school uses.

157.   RLUIPA does not require indiscriminate high-density housing as an accommodation to religion.

158.   In addition, the Adult Student Housing Law specifically provides an exception from the required buffer for the Nike Site to benefit the property owner who would otherwise not be able to obtain the special permit for the adult student housing use.  Clearly, the Town is accommodating the user, not the use.

159.   Another example of the Adult Student Housing Law's impermissible entanglement of government with religion is that the Adult Student Housing Law provides that a student may extend his or her six (6) year residency upon application to the Planning Board "for good cause."  Adult Student Housing Law 9-2004(F).

160.   The Adult Student Housing Law defines good cause as "a longer period of full time study consistent with recognized religious practice or belief."  Id. (emphasis added).

161.   Thus, the only standard for guiding the Planning Board in granting an extension of the six-year residency limit is whether the student is engaged in full time study consistent with recognized religious practice or belief.

162.   In addition, the Planning Board must make a determination as to whether a religious practice or belief is adequately "recognized" in order to grant a student's request.

163.    The Adult Student Housing Law does not provide a standard by which the Planning Board can make this determination of whether a religious practice or belief is "recognized," and thus the Adult Student Housing Law is also unconstitutionally vague.

Unmarried Adult Students And Their Families Cannot Seek
Or Obtain Housing Under The Adult Student Housing Law

164.    The Town has also specifically limited the availability of adult student housing to "married" students and their families under the Adult Student Housing Law.

165.    Adult students who are not married or do not have any other family status, may not reside in the adult student housing even if they have minor children.

166.    Thus, the Adult Student Housing Law discriminates on the basis of familial status.

The Town Enacts The Adult Student Housing Law, Despite The
Deficiencies In The Law And The Lack Of Adequate Review

167.    On or about June 15, 2004, the Town adopted the Adult Student Housing Law, without adequate environmental review, without additional review by the County, without holding further public hearings, and despite numerous land use and constitutional deficiencies.

Respondent/Defendant Chofetz Chaim Resubmits Site Plan Application
For Adult Student Housing Project Under The Adult Student Housing Law

168.    Shortly after the Adult Student Housing Law was enacted, on or about September 8, 2004, Respondent/Defendant Chofetz Chaim supposedly resubmitted its site plan application to the Town Planning Board for the same or substantially the same 60 multi-family two and four-bedroom adult student housing development it had originally proposed on the Nike Site prior to the enactment of the Adult Student Housing Law.

Town Issues Draft Supplemental Environmental Impact
Statement For Comprehensive Plan And Comprehensive Zoning Law

169.    Almost simultaneously with the resubmission of Chofetz Chaim's Application, the Town issued a Draft Supplemental Environmental Impact Statement Assessing Comprehensive Plan Recommendations ("DSEIS") in connection with enacting the proposed zoning laws ("Zoning Law") recommended in the Comprehensive Plan.

170.    The purpose of the DSEIS, as stated by the Town, was to provide "a closer review and . . . evaluate impacts of the recommendations in the [Comprehensive] plan to provide additional housing." (DSEIS at 3.)

171.    The Town took the express position that the Adult Student Housing Law was not part of that review.

172.    As stated in the DSEIS, its purpose was to identify and evaluate specific impacts only to traffic, water supply and sewage collection system capacity that would result from expanding the supply and type of housing in the Town, specifically multi-family zones.

173.    The DSEIS included in its list of potential future developments as part of its traffic, water and sewer studies "four adult student housing sites . . . identified as possible developments." (DSEIS at 8.)

174.    To the extent that the Town's new supplemental review attempted to consider post-hoc the potential impacts of the already enacted Adult Student Housing Law, it continued to fail to analyze the impacts that it would have on the community character of the surrounding communities, or any of the potential parcels throughout the Town eligible for more intense adult student housing under the already existing Law.

175.    The traffic impact analysis in the DSEIS was insufficient to cure the prior deficient review of potential traffic impacts from the Adult Student Housing Law.

176.   The Town's supplemental review does not cure the lack of adequate analysis of the Adult Student Housing Law's impacts on water consumption, sewer, infrastructure or any other potential environmental impacts.

177.   Nor did the DSEIS address the potential impacts from the pending Adult Student Housing site plan application at the Nike Site, even though a specific application was then pending.

178.   Once again, the Town asserted, this time in the DSEIS, "that as individual projects are proposed, the Town will require detailed individual assessments of every applicant's proposal, and separate traffic, water and sewer reports and certifications will be required prior to approval or construction for each project." (DSEIS at 7).[1]

Town Holds Public Hearing On The DSEIS

179.   On or about September 27, 2004, the Town held a public hearing on the DSEIS, and established the minimum ten-day public written comment period ending on October 8, 2004.

180.   While many of the speakers at the public hearing wanted to comment on the Adult Student Housing Law again, Town representatives repeated their official position that the "Adult Student Housing was previously adopted by the Town and was not part of this hearing."

---

[1]   In light of the DSEIS and its stated purpose to evaluate the environmental impacts from the zoning provisions proposed in the Comprehensive Plan, the Petitioners in Ramapo 1 sought a stay of the Ramapo 1 litigation, which the Town opposed.

Petitioners/Plaintiffs File Suit
<u>Challenging Adult Student Housing Law</u>

181.    On or about October 13, 2004, Petitioners/Plaintiffs filed its original Verified Petition/Complaint challenging the Adult Student Housing Law, together with the Town's flawed environmental review process as evidenced by its illegal negative declaration.

<u>Town Adopts FSEIS And Zoning Law</u>

182.    On or about November 10, 2004, the Town issued the Final Supplemental Environmental Impact Statement ("FSEIS") for its new Zoning Law.

183.    Once again, the FSEIS specifically refused to respond to any comments made on the Adult Student Housing Law as it was already enacted and not part of the SEIS or the public hearing on the DSEIS.

184.    On or about November 22, 2004, after the absolute minimum ten (10) day comment period, the Town issued its Findings Statement for the Supplemental Environmental Impact Statement and, adopted its new Zoning Law.

185.    Of significance here, the new Zoning Law included the previously enacted Adult Student Housing Law as Section 376-1215, with one minor modification, which does not address any of the Adult Student Housing Law fundamental legal flaws.

186.    While the new Zoning Law states in a boilerplate provision that it "repealed" the prior Adult Student Housing Law, as acknowledged by the Town during the supplemental review, the SEIS included no further environmental review or analysis of the Adult Student Housing Law.

187.    The SEIS failed to address or cure the prior deficiencies in the environmental review of the Adult Student Housing Law.

Town Planning Board Issues Declaration Of No Potential
Significant Environmental Impact For Respondent/Defendant
Chofetz Chaim's Adult Student Housing Application

188.    While considering its new Zoning Law, the Planning Board continued to
process Respondent/Defendant Chofetz Chaim's adult student housing site plan application for
the Nike Site under the existing and already enacted Adult Student Housing Law.

189.    On or about November 19, 2004, notice was issued of a public hearing
before the Town Planning Board on a determination of significance for Respondent/Defendant
Chofetz Chaim's adult student housing site plan application.

190.    Only eight (8) days after the new Zoning Law was adopted by the Town,
and despite the Town's repeated promises that individual applications under the Adult Student
Housing Law would be subject to a full environmental review, the Town Planning Board issued
yet another determination of environmental nonsignificance this time concerning
Respondent/Defendant Chofetz Chaim's site plan application for adult student housing at the
Nike Site, again, without expressing a reasoned elaboration for its determination.

191.    Upon information and belief, the only environmental analysis upon which
the Planning Board based its negative declaration was a March 2004 Environmental Assessment
Form and a July 2003 traffic study submitted by Respondent/Defendant Chofetz Chaim when it
resubmitted its multi-family adult student housing site plan application after enactment of the
Adult Student Housing Law.  Respondent/Defendant Chofetz Chaim also submitted a two-page
letter from its traffic consultant purportedly containing updated traffic counts for two impacted
intersections submitted to the Board one day before the public hearing on or about November 29,
2004.

192.    This traffic study is insufficient and inadequate for the requisite hard look.

35

193.    There are potential adverse traffic impacts mandating an environmental impact statement. Respondent/Defendant Chofetz Chaim's July 24, 2003 Traffic Impact Study shows that the proposed Adult Student Housing at the Nike Site will increase already unacceptable delays of over three (3) minutes by 10 per cent, yet the study concludes, that "the [p]roposed [60-unit multi-family housing]...will not result in a significant negative impact on the area roadways."

194.    Neither the traffic consultant nor the Applicant proposed any traffic mitigations even though they concede that the project will adversely impact intersections in the area, and one intersection already has failing capacity.

195.    The County Department of Highways in its comments dated November 15, 2004, on the Nike multi-family adult student housing site plan application noted specifically that it had requested that "the traffic study include information to assist in determining if a turning lane and widening may be required for safe traffic movement along Grandview Avenue." The County further noted that, "[w]e see no information in the traffic study to assist in this evaluation."

196.    The County Department of Highways raised additional traffic concerns, including, the use of slide gates, stacking of vehicles along Grandview Avenue, and traffic impacts from community activities.  None of these traffic impacts were addressed by the Applicant, its consultant or the Planning Board.

197.    The Rockland County Sewer District in its comments dated September 22, 2004, noted that the site plan application "reflects a change in permitted land use that will increase the building density on this site, resulting in higher quantities of sewage flowing from this project than for which the system was designed." While the County indicated that the

existing system has adequate capacity "at this time," it expressed serious concern that "the practice of increasing density and consequently sewage flows from properties within the [Sewer] District may lead to an overload of the Sewer District's facilities in the future."

198.    Upon information and belief, the County Sewer District's comments were also not addressed.

199.    Upon information and belief, the site plan application was referred to the Rockland County Department of Planning for review and comment.  The County disapproved the application, citing specifically the application's "incompatibility" "with the surrounding community."

200.    Upon information and belief, the site plan application was also not timely referred to the adjoining municipalities for comment under the General Municipal Law.

201.    Despite the concerns of the aforementioned agencies and the clear impacts that would result from the extensive increase in housing density proposed for the Nike Site by Respondent/Defendant Chofetz/Chaim, on or about November 30, 2004, the Town Planning Board issued a determination that Defendant's adult student housing application would not result in even one potential significant adverse environmental impacts.

202.    Thus, contrary to the Town's repeated statements that the Town would require detailed individual environmental assessments for any multi-family or increased housing density individual projects, no such detailed assessments or report was required for the Nike Site application.

203.    In issuing its negative declaration and shortcutting the environmental review process under SEQRA, the Town Planning Board failed to consider any of the potential significant environmental impacts from the vastly increased housing density contained in the

Chofetz Chaim application, including, impacts to community character, infrastructure, traffic and pedestrian safety.

Respondent/Defendant Chofetz Chaim Files
Variance Application With The Town Board Of Appeals

204.    Upon information and belief, once receiving its negative declaration under SEQRA, in or about December 2004, Respondent/Defendant Chofetz Chaim filed an application with the Town Board of Appeals for numerous required variances in connection with its application.

205.    Upon information and belief, the Town Board of Appeals will be scheduling a public hearing on the variance application for January 2005.

206.    The Rockland County Department of Planning has already disapproved this variance application.

FIRST CAUSE OF ACTION
(Violation of SEQRA–Failure To Take Requisite Hard Look At Adult Student Housing Law)

207.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 206 as if fully set forth herein.

208.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law. The Town conducted an insufficient environmental review.

209.    In order for the Town, the lead agency, to determine whether an "action may include the potential for at least one significant adverse environmental impact," SEQRA mandates that an agency take a "hard look" at the potential impacts on the environment of such proposed action. 6 NYCRR § 617.7(a) (emphasis added); 6 NYCRR § 617.2.

210.    The mandatory "hard look" for making a determination of significance requires that the lead agency identify the relevant environmental impacts, thoroughly analyze and take a hard look at these potential impacts, and provide a reasoned written elaboration of why the proposed action may or may not cause significant adverse environmental impacts.

211.    In approving the Negative Declaration, the Town ignored the well-established low threshold triggering the requirement to prepare a full EIS under SEQRA for a Type 1 action, namely, whether the Adult Student Housing Law "may" include the potential for at least one significant adverse environmental impact.

212.    The Town failed to comply with its substantive obligation to take a "hard look" at significant potential adverse impacts, which the Adult Student Housing Law might cause, including, but not limited to, impacts relating to community character, water, sewer, infrastructure, and traffic and safety.

213.    The Town's failure to prepare an EIS for the Adult Student Housing Law was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

SECOND CAUSE OF ACTION
(Violation of SEQRA– Arbitrary and Capricious Determination of
Significance For Adult Student Housing Law)

214.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 213 as if fully set forth herein.

215.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

216.    The potential adverse environmental impacts expected to result from the Adult Student Housing Law, including, but not limited to, impacts relating to community

character, water, sewer, infrastructure, and traffic and safety, surpass the "low threshold" triggering the requirement for comprehensive environmental review through an EIS. It was erroneous for the Town not to recognize these potential impacts.

217.    The Town's determination that none of the aforementioned potential impacts from the Adult Student Housing Law might be significant and its failure to prepare an EIS was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

THIRD CAUSE OF ACTION
(Violation of SEQRA– Failure To Make A Reasoned Elaboration –
Improper Delegation For Adult Student Housing Law)

218.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 217 as if fully set forth herein.

219.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

220.    SEQRA mandates strict and literal compliance with its procedures to ensure that agencies will err on the side of meticulous care in their environmental review.

221.    The lead agency may not make a final decision concerning the proposed action that has been the subject of a negative declaration until it makes a "reasoned elaboration" of the basis of its ultimate environmental determination concerning the proposed action through certain explicit findings. N.Y. Envtl. Conserv. Law § 8-0109(8); 6 NYCRR §§ 617.7(b)(4), 617.11(c) & (d).

222.    Without a reasoned elaboration, the Negative Declaration does not provide an adequate basis for the public or any reviewing agency to determine whether the lead agency

40

made a proper determination. Strict compliance with SEQRA's requirements guarantees that environmental concerns are properly confronted and resolved prior to agency action.

223. The Town failed to make a reasoned elaboration supporting its Negative Declaration.

224. The lead agency may not delegate its responsibilities for undertaking the SEQRA analysis to its experts.

225. The Town as lead agency failed to make its own independent determination for the Negative Declaration, instead delegating its responsibilities by relying solely on the advice of the Town's planning consultant.

226. The Town's failure to make a reasoned elaboration to support its determination of environmental non-significance and delegation of its decision-making authority was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

FOURTH CAUSE OF ACTION
(Violation of SEQRA – Improper Segmentation)

227. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 226 as if fully set forth herein.

228. The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration for the Adult Student Housing Law.

229. "Segmentation means the division of the environmental review of an action such that various activities or stages are addressed under this Part as though they were independent, unrelated activities, needing individual determinations of significance." 6 NYCRR § 617.2(ag).

41

230. The general prohibition against segmentation is designed to prevent distortion or dilution of the potential environmental impacts, by splitting a project into two or more smaller projects, each falling below the threshold requiring full environmental review.

231. By deferring environmental review of the impacts of the Adult Student Housing Law, the Town improperly segmented its analysis. A lead agency fails to take the requisite hard look at potential significant environmental impacts by deferring resolution of potential environmental issues to a later date or not at all.

232. During the environmental review process there were at least two projects of which the Board was aware and for which proposals had been made, which were awaiting and dependent upon the enactment of the Adult Student Housing Law, including the application of Respondent/Defendant Chofetz Chaim to build 60 adult student housing units on the Nike Site.

233. Since such projects were related to and dependent upon the use permitted under the proposed Adult Student Housing Law, SEQRA requires that such projects and the Adult Student Housing Law must be evaluated as a single action during the review process.

234. The Town's failure to undertake a combined site specific review of known projects to be developed in conjunction with the enactment of the Adult Student Housing Law constitutes illegal segmentation in violation of SEQRA, mandating annulment of the Negative Declaration.

### FIFTH CAUSE OF ACTION
(Violation Of SEQRA – SEIS Not Did Cure Deficiencies of
Original Illegal Negative Declaration)

235. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 234 as if fully set forth herein.