**Exhibit D**

FILED
AND
ENTERED
ON June 16 20 05
WESTCHESTER
COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X

THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE            Index No. 16876/04
MONTEBELLO, THE VILLAGE OF POMONA, THE
VILLAGE OF WESLEY HILLS, JAY B. ROSENSTEIN,
ROBERT MOSKOWITZ, MILTON B. SHAPIRO and
DR. SONYA SHAPIRO,

                    Petitioners/Plaintiffs,

          - against -                                    DECISION

THE TOWN OF RAMAPO, THE TOWN BOARD OF
THE TOWN OF RAMAPO, THE PLANNING BOARD
OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ
CHAIM OF RADIN, SCENIC DEVELOPMENT, LLC
and THE BOARD OF APPEALS OF THE TOWN OF
RAMAPO,

                    Respondents/Defendants.

-----------------------------------------------------------------------X

NICOLAI, J.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

       This is a hybrid proceeding pursuant to CPLR Article 78 and CPLR 3001 in

which petitioners/plaintiffs (hereinafter petitioners) seek to annul and vacate the Adult Student

Housing Law (ASHL) enacted by respondent/defendant Town of Ramapo (Town) [hereinafter all

respondents/defendants shall be referred to as respondents]. The principal complaint is that the

environmental review preceding the enactment of this law, which allows multi-family housing,

did not comply with the requirements of the State Environmental Quality Review Act (Article 8

of the Environmental Conservation Law [ECL], hereinafter SEQRA), and that proposed

development thereunder will grievously affect the character of surrounding single-family

residential areas in neighboring villages and within the Town itself. Petitioners contend that the

Town also failed to address adverse environmental impacts with regard to water supply, sewage

disposal, vehicular traffic, emergency services and public schools.

       The municipal petitioners are four(4) of the 12 villages within the borders of the

Town of Ramapo, Rockland County. The individual petitioners are residents, respectively, of the

Village of Wesley Hills (MR. ROSENSTEIN), Village of New Hempstead [not a party hereto]

(MR. MOSKOWITZ), and the unincorporated area of the Town of Ramapo (MR. SHAPIRO and

his wife, DR. SHAPIRO).

       The municipal respondents, in addition to the Town, are the Town Board, which

was the lead agency under SEQRA (6 NYCRR 617.2[u]) and which enacted the ASHL (in its

present form as section 1215 of Chapter 376 [Zoning Law] of the Revised Code of the Town of

Ramapo, pursuant to Local Law No. 10 of 2004, adopted November 22, 2004); the Town

Planning Board which recently has granted a negative declaration under SEQRA and site plan

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

approval for a project (on a 4.7 acre plot known as the Nike site) proposed by respondent

YESHIVA CHOFETZ CHAIM OF RADIN (CHOFETZ CHAIM); the Town Board of Appeals

which has granted zoning area variances with regard to said project; and SCENIC

DEVELOPMENT, LLC, which is the owner of a 200 acre property (known as the Patrick Farm

site) within the unincorporated area of the Town with development potential pursuant to the

ASHL.

      The amended verified petition and complaint dated December 23, 2004 sets forth

much background information with regard to the enactment by the Town Board of the new town-

wide Comprehensive Plan (Plan) formulated pursuant to section 272-a of the Town Law and

adopted on January 28, 2004 pursuant to Town of Ramapo Resolution No.  2004-87 and the

Town's new Zoning Law, supra.

      It is to be noted that there is a companion CPLR Article 78 proceeding

challenging the adequacy of the SEQRA review of both the Plan and the Zoning Law as a whole

and seeking the annulment of same venued in Supreme Court, Westchester County before the

undersigned,, viz., THE VILLAGE OF AIRMONT, ET AL. v. THE TOWN OF RAMAPO, et al.

(Index no. 8424/04).  Issue has not been joined therein, but a motion to dismiss the petition on

the grounds of lack of capacity/standing to sue has been granted by decision of even date

herewith.

      Petitioners herein allege 13 causes of action: Violation of SEQRA by

1.      Failure to take requisite hard look at the ASHL.

2.      Arbitrary and capricious determination of significance for ASHL.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

3.    Failure to make a reasoned elaboration-improper delegation for ASHL.

4.    Improper segmentation.

5.    Supplemental Environmental Impact Statement (SEIS) did not cure deficiencies of original illegal negative declaration.

6.    Violation of SEQRA procedures.

.   .   .

7.    Impermissible spot zoning.

8.    Violation of Municipal Home Rule Law (MHRL).

9.    Violation of General Municipal Law.

10.   Facial invalidity of the ASHL – violation of the 14th Amendment of the United States Constitution and Article 1, Section 6 of the New York State Constitution.

11.   Facial invalidity of the ASHL – violation of the Establishment Clause, First Amendment, United States Constitution.

12.   Town Board's actions were <u>ULTRA VIRES</u> and VOID.

13.   Violation of SEQRA – failure to take requisite hard look at the NIKE SITE application.

The petition/complaint asks for judgment granting the following relief:

Article 78 Petition:

(1)   annulling and vacating the adoption of the Adult Student Housing Law;

(2)   annulling and vacating the finding of environmental non-significance under SEQRA for the Adult Student Housing Law;

Page 4

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

    (3)    annulling and vacating any actions taken by any of the Respondents/Defendants in reliance upon the SEQRA negative declaration for the Adult Student Housing Law;

    (4)    annulling and vacating the alleged supplemental environmental review as it might relate to the Adult Student Housing Law;

    (5)    enjoining Respondents/Defendants from implementing any of the provisions of the Adult Student Housing Law pending a determination of this proceeding;

    (6)    declaring the Adult Student Housing Law constitutes impermissible spot zoning.

    (7)    declaring the adoption of the Adult Student Housing Law violates the New York State Municipal Home Rule Law;

    (8)    declaring the adoption of the Adult Student Housing Law violates the New York State General Municipal Law; and

    (9)    annulling and vacating the finding of environmental non-significance for Respondent/Defendant Chofetz Chaim's site plan application for adult student housing on the Nike Site and enjoining any further processing of this application pending a determination of this proceeding;

Complaint for Declaratory Judgment:

    (10)    declaring the Adult Student Housing Law violates the Due Process Clauses of the United States and New York State Constitutions;

    (11)    declaring the Adult Student Housing Law violates the Establishment Clause of the United States Constitution;

    (12)    declaring the Adult Student Housing Law was not enacted pursuant to the legislative grant of zoning powers to the Town;

    (13)    awarding Petitioners/Plaintiffs the costs and disbursements of this action; and

    (14)    granting such other and further relief as this Court deems just and proper.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

Petitioners also brought on, by order to show cause dated January 18, 2005, an

application for a preliminary injunction enjoining respondents CHOFETZ CHAIM, Planning

Board and Board of Appeals from taking any additional action in furtherance of the Nike site

proposal; enjoining the Planning Board and the Board of Appeals from processing all

applications pursuant to the ASHL; and enjoining respondents CHOFETZ CHAIM and SCENIC

DEVELOPMENT from the commencement of any and all construction activities, including, but

not limited to, activities in connection with any approvals issued by the Planning Board or Board

of Appeals, or any other applicable agency with respect to the ASHL, until a final determination

is made with regard to the validity of the ASHL and the legality of the negative declaration

issued on November 30, 2004 in connection with the CHOFETZ CHAIM application.

Petitioners also sought a temporary restraining order (TRO) tracking the relief

sought in the application for a preliminary injunction. The Court granted the TRO only to the

extent that, pending hearing and determination of the motion, respondents CHOFETZ CHAIM

and SCENIC DEVELOPMENT are temporarily enjoined from commencing any and all activities

with respect to the ASHL, and respondent Town is temporarily enjoined from issuing building

permits in conjunction with this project. This motion has been opposed by respondents, and the

court has reserved decision thereon. The TRO remains in place.

Issue has not been joined, but three(3) motions to dismiss have been made.

Municipal respondents seek dismissal pursuant to CPLR 7804(f)on the grounds that all

petitioners lack standing to bring this proceeding and that petitioner villages lack the authority

and the capacity to challenge the Town's action.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

Respondent CHOFETZ CHAIM moves to dismiss the petition as against

CHOFETZ CHAIM (which takes no position with regard to the ASHL or any SEQRA review

issues) on the ground that the matter is not ripe for adjudication and petitioners lack standing to

assert their claims.

Respondent SCENIC DEVELOPMENT moves to dismiss pursuant to CPLR

3211(a)(3) and (7) and CPLR 7804(f) on the grounds that petitioner villages lack capacity and

standing to bring this proceeding, and individual petitioners lack standing to sue.

The statute reads as follows:

**§376-1215.    Adult Student Housing**

The standards for adult student housing shall be as follows:

A.    The housing must be accessory to and on the same site as an approved post
       secondary educational institution.
B.    Married students and faculty must be full time and the duration of residency shall
       be limited to the period of full time study or teaching.  If a person ceases to be
       eligible for occupancy, said person and family must vacate his/her dwelling unit
       within thirty days.
C.    The gross density shall not exceed 16 units per acre.
D.    The minimum lot size shall be four acres and the maximum lot size shall not
       exceed twelve acres.
E.    The project must be located on an already existing lot which meets the lot size
       requirements or on a lot created by subdivision from a larger existing lot, and may
       not be the result of the combination of existing lots which separately fail to meet
       the lot size requirements.
F.    The duration of a student's residency shall not exceed six years unless extended
       by the Planning Board for good cause upon written request.  Good cause shall
       include, but not be limited to, a longer period of full time study consistent with
       recognized religious practice or belief.
G.    Fifty percent of the dwelling units shall be either one or two bedroom units.  The
       remaining fifty percent of the dwelling units may be three or four bedroom units.
       No more than ten percent of the dwelling units may be occupied by faculty.
H.    The educational institution must occupy at least ten percent of the project site.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

I. The size of the dwelling units shall be as follows:
  1) One or two bedroom units shall be no greater than one thousand square feet.
  2) Three or four bedroom units shall be no greater than two thousand square feet.

J. It shall be the duty of the owner and occupant (student or faculty) to jointly file a certification with the Building Inspector indicating compliance with this section's requirements relating to the status of all occupants of each dwelling unit. Such certification shall be filed no later that January 31st of each year. Failure to file such certification shall be reported to the Planning Board which may revoke the approval after a public hearing.

K. The project must comply with the Town's Fire Prevention Chapter. All buildings must be fully alarmed and sprinklered.

L. The units shall not be occupied by anyone other than adult married students, faculty members, spouses and minor children of married students and faculty.

M. If the post secondary educational institution is discontinued, the approval for adult student housing shall automatically cease. The dwelling units must be vacated within six months of the discontinuance.

N. All applications shall be required to identify all similar adult student housing projects within a one-half mile radius measured from the edges of the property. If within this area the total acreage of similar facilities together with the proposed project exceeds three percent of the surrounding area, the Planning Board shall decline to issue an approval if it determines that the application shall detrimentally impact the character of the area. In making such determination, the Board shall consider whether the proposed use will be of a location, size and character that it will be in harmony with the appropriate and orderly development of the area and not be detrimental to the site or nearby properties in accordance with the zoning classification of such properties.

O. The minimum distance between buildings shall be 20 feet.

P. The maximum building height is 35 feet.

Q. Central refuse collection areas shall be located for the convenience of all dwelling units. They shall be supplied with an adequate number and type of covered receptacles and shall be provided with proper screening and maintenance. Such areas shall not be located in the required front yard.

R. There shall be provided on site a minimum of 100 square feet per dwelling unit of useable outdoor recreation area. Such recreation area(s) shall include playground equipment and/or other recreational facilities as determined by the Planning Board and shall be located in a safe and convenient location on the site.

S. The project shall be suitably landscaped with perimeter, foundation, parking lot and building plantings as required by the Planning Board.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

    T.    The project shall provide a separate and divided bus stop located on-site along the street access which may be within the required front yard.  The bus stop must be designed to ensure safe pickup and drop-off of children and to minimize impact on traffic flow.

    U.    The project must undergo architectural review by the Community Design Review Committee.

    V.    No outside catering for non-residents shall be permitted in the post secondary educational institution.  The post-educational institution shall not contain commercial kitchen facilities.

    W.    All projects shall provide proper access for fire fighting and emergency equipment and vehicles and shall provide hydrants in such number and location and with such water pressure as may be approved by the Planning Board based upon the recommendation of the Building Inspector and Fire Department.

    X.    All projects shall be connected to public water and sewer systems.

    Y.    No structure shall be located within five hundred feet of abutting land within a village which is residentially zoned at a density of one dwelling unit per acre or less dense zoning districts.  However, this requirement shall not apply to any land within the unincorporated area of the town which was previously within a village, but which was removed from the village as the result of court order or inter-municipal agreement.

    Z.    A certificate of occupancy for the educational institution must be issued prior to the issuance of a certificate of occupancy for any residential buildings.

Although petitioners contend that there are many areas within the incorporated area of the Town which are developable under the ASHL, there are four(4) sites which have been identified as likely to be so developed:

| Site | Max Size (acres) | Acres Available | Density | Dwelling Units |
|------|------------------|-----------------|---------|----------------|
| Patrick Farm | 12 | 200 | 16 | 192 |
| Nike Site | 4.7 | 4.7 | 16 | 75 |
| Highview Road | 11.7 | 11.7 | 16 | 187 |
| Spruce Road | 4.8 | 4.8 | 16 | 77 |

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

It is also clear that the exception from the requirement of a 500 foot buffer from abutting land, set forth in §376-1215 Y (supra), applies only to the Nike site, which had previously been within the Village of New Hempstead. This is the site owned by respondent CHOFETZ CHAIM and which has received site plan approval and area variances.

The Court is of the opinion, and so holds, that the motions to dismiss are to be granted with regard to the village petitioners for the same reasons set forth in the decision in the companion proceeding, VILLAGE OF AIRMONT (supra). That reasoning will not be repeated at length. Briefly told, there is no capacity/standing under the police power or under SEQRA to warrant the bringing of this proceeding by the villages. Any environmental injury complained of is no different from that allegedly suffered by the public at large (SOCIETY OF PLASTICS INDUS. v. COUNTY OF SUFFOLK, 77 NY2d 761, 774). That the village petitioners are alleging constitutional due process and establishment causes of action (causes of action numbers 10 and 11) makes no difference. There is no basis to find that certain provisions in the ASHL, viz., that housing thereunder is limited to married students and faculty (§376-1215 B and L, supra), and that the Planning Board is to pass upon a written request to extend a student's residency beyond six(6) years if such is "consistent with recognized religious practice or belief" (§376-1215 F, supra), are inflicting any direct injury on the village petitioners or any resident thereof. (SOCIETY OF PLASTICS INDUS. v. COUNTY OF SUFFOLK, 77 NY2d 761, 774.)

In view of these grounds for dismissal, viz., lack of capacity/standing to sue, it is not necessary to address the issue whether the authorizations to bring this proceeding granted by the respective village boards are valid.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

The Court finds, however, accepting as true, for the purposes of this motion, the

facts alleged by petitioners (PRUDENTIAL-BACHE SEC. v. CITIBANK, 73 NY2d 263, 266)

that the individual petitioners ROSENSTEIN and MOSKOWITZ have alleged facts sufficient to

show that they have standing under SEQRA to bring this proceeding.  An exception, however,

must be made with regard to the causes of action numbers 10 and 11, supra.  ROSENSTEIN and

MOSKOWITZ have shown no basis to warrant their pressing of constitutional claims.  They

have shown no harm to themselves with regard to alleged due process or establishment

violations.

ROSENSTEIN and MOSKOWITZ contend, inter alia, that in granting a negative

declaration under SEQRA to the ASHL – an admittedly Type I action – the Town Board failed to

acknowledge that the ASHL would have, among other things, a potentially significant adverse

impact upon the "existing community or neighborhood character" which is an element in the

definition of "environment" (6 NYCRR 617.2[l]).  Thus they contend the Town Board violated

SEQRA by failing to proceed to the drafting of the required Environmental Impact Statement

(EIS).  They also contend that respondent Planning Board violated SEQRA by granting a

negative declaration to the application by respondent CHOFETZ CHAIM to develop the Nike

site.

ROSENSTEIN alleges that he resides less than 400 yards by road (or about one-

fourth mile) from the Nike site, which is on Grandview Avenue, and that he and his wife have

lived at 16 Skylark Drive, Village of Wesley Hills, for 26 years.  Under the previous zoning, the

Nike site (a former military installation) had been zoned R-25 – single-family residential with

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

about 2 units per acre. The ASHL allows 16 units an acre or an eight-fold increase.

ROSENSTEIN states he lives in a single-family development of three-quarter acre lots, the

houses having been built in the 1960's, 70's and 80's. He states that the neighborhood

surrounding the Nike site, in the Village of New Hempstead, is of the same type.

ROSENSTEIN also states that his property is less than 500 feet (as the crow flies)

from the Nike site and that he was given written notice of the Planning Board's hearing of

November 30, 2004 and the Zoning Board's hearing of January 6, 2005.

MOSKOWITZ states, inter alia, that he and his wife have lived for 20 years at 30

Fessler Drive, Village of New Hempstead, about one-half mile from the Nike site. His

neighborhood, he states, consists of single-family homes on one acre lots on quiet, tree-lined

streets. He states that the non-residential uses in the vicinity are two(2) cemeteries, a public

school, houses of worship and a golf course. He contends that the proposed ASHL development

will be inconsistent with the character of the neighborhood.

Exhibit C annexed to the application for injunctive relief is a "Planimetric Site

Layout Plan" for the KIRYAS RADIN HOUSING proposed for the Nike site. It is dated

September 17, 2002 and was prepared by ALAN GARFINKEL and ASSOCIATES, Consulting

Engineers, of Suffern, New York. It is stamped received by the Town on November 5, 2004.

This exhibit supports the contention that the proposed development of the Nike site would be

incongruous with the nearby neighborhoods.

ROSENSTEIN and MOSKOWITZ have shown that they live in sufficient

proximity to the Nike site so as to establish their standing under SEQRA as person aggrieved

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

differently from the public at large.  (Matter of SUN-BRITE CAR WASH  v. BOARD OF

ZONING & APPEALS OF TOWN OF N. HEMPSTEAD, 69 NY2d 406, 413; Matter of

DOUGLASTON CIVIC ASSN. v. GALVIN, 36 NY2d 1, 5).

        That ROSENSTEIN and MOSKOWITZ do not reside within the unincorporated

area of the Town does not deprive them of standing (TOWN OF COEYMANS v. CITY OF

ALBANY, 284 AD2d 830, 833 [3rd Dept., 2001], app. den. 97 NY2d 602; ORANGE FIBRE

MILLS v. CITY OF MIDDLETOWN, 94 Misc.2d 233 [SUP. CT., ORANGE CO., 1978,

SWEENY, J.]; WEINBERG v. TOWN OF CLARKSTOWN, 78 Misc2d 464, 466 [SUP. CT.,

ROCKLAND CO., 1973, SLIFKIN, J.]).

        The SHAPIROS, however, have not alleged sufficient facts to establish their

standing under SEQRA.  They state that they have resided at 34 Scenic Drive, Suffern, N.Y., in

the unincorporated area of the Town; that they are immediately across Scenic Drive adjoining the

200 acres of the Patrick Farm site; that all houses on the street are single-family homes on 50,000

sq. ft lots; that the Patrick Farm site had been zoned R-80 (single-family homes on 80,000 sq. ft

minimum lots); that they had been aware of plans to rezone to R-40 (single-family homes on

40,000 sq. ft. minimum lots); and that they had not known that further downsizing was planned.

The SHAPIROS speculate that this 200 acre parcel could be subdivided pursuant to the ASHL

(§376-1215 E, supra) so a to provide a total of about 3,000 multi-family units (roughly 192 acres

with 16 dwelling units each).  Such an immense increase in density, they contend, would

drastically change their neighborhood.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

These concerns are speculative, however, and do not suffice to show that there is any direct and immediate harm to the SHAPIROS' property from the enactment of the ASHL. It is to be noted that the Nike site is but 4.7 acres with no buffer area required and the Patrick Farm site is 200 acres and there is no exemption from the 500 foot buffer area.

Accordingly, the motions to dismiss are to be granted as against petitioners SHAPIRO for lack of standing.

The contention by respondent CHOFETZ CHAIM that the proceeding should be dismissed because of lack of ripeness for judicial review must be rejected. The ASHL has been enacted, the CHOFETZ CHAIM project has been approved, and a pragmatic view of the matter shows that "the decision maker has arrived at a definitive position on the issue that [allegedly] inflicts an actual, concrete injury" (CHURCH OF ST. PAUL & ST. ANDREW v. BARWICK, 67 NY2d 510, 519, cert denied 479 US 985, quoting WILLIAMSON COUNTY REGIONAL PLANNING COMMN. v. HAMILTON BANK, 473 US 172, 192-193; Matter of ESSEX COUNTY v. ZAGATA, 91 NY2d 447, 453).

The Court is of the opinion, and so holds, that the application for a preliminary injunction is to be granted to the extent that no further approvals pursuant to the ASHL are to be granted by the municipal respondents, and no building permits with regard to the Nike site, or any other site under the ASHL shall be granted until the determination of this proceeding. Any other site work under the ASHL, if such has been commenced in fact, shall be suspended until the determination of this proceeding.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

The requirements for a preliminary injunction are well settled: (1) irreparable

injury to the petitioners if a preliminary injunction is not granted: (2) a likelihood of success on

the merits; and (3) a balancing of the equities favors the movants' position (W.T. GRANT v.

SROGI, 52 NY2d 496).

If remaining petitioners, ROSENSTEIN and MOSKOWITZ, are not granted a

preliminary injunction the construction planned for the Nike site will likely proceed.  No money

damages will be adequate, if the character of the neighborhood is severely damaged.  A Judgment

in favor of petitioners after the Nike project is built would be academic (Matter of ABATE v.

CITY OF YONKERS, 10 AD3d 605; Matter of DREIKHAUSEN v. ZONING BD. OF

APPEALS OF CITY OF LONG BEACH, 98 NY2d 165).

There is a likelihood of success on the merits because, inter alia, it is not disputed

that the Nike site application received a negative declaration under SEQRA, although it was

determined to be a Type I action and "a Type I action carries with it the presumption that it is

likely to have a significant adverse impact on the environment and may require an EIS." (6

NYCRR 617.4[a][1]).  "The heart of SEQRA is the Environmental Impact Statement (EIS)

process [CITATION OMITTED]" (Matter of JACKSON v. NEW YORK URBAN DEV.

CORP., 67 NY2d 400, 415).  And "strict compliance with prescribed procedures is required"

(idem, at p. 429).

Although respondent CHOFETZ CHAIM states that a delay may cause a loss of

presently available financing, the Court finds that the equities favor petitioners because, if the

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

status quo is not maintained pending determination of this case on the merits, the changes caused

by construction will be irreversible.

Pursuant to CPLR 6312(b), as a condition for the granting of the preliminary

injunction, petitioners ROSENSTEIN and MOSKOWITZ, shall give an undertaking in the sum

of $50,000.00 that, if it is finally determined that there was no entitlement to an injunction,

petitioners will pay all damages and costs which may be sustained by reason of the injunction. If

said undertaking is not given within 20 days after service of a copy of the order and judgment to

be entered hereon, with notice of entry, upon counsel for petitioners, the said preliminary

injunction shall be null and void and the temporary restraining order previously granted herein

shall then lapse and be of no further effect.

Pursuant to CPLR 7804(f), respondents shall serve answers to the

petition/complaint herein not later than 30 days after service of a copy of the order and judgment

to be entered hereon, with notice of entry thereof, upon counsel for respondents. Thereafter,

either party may re-notice the matter on 20 days notice.

In sum, the motions to dismiss are granted to the extent indicated above and are

otherwise denied. The motion for a preliminary injunction is granted as indicated above.

No costs are allowed.

The Village of Chestnut Ridge et al.
 v. The Town of Ramapo et al.
Index No. 168776/04

Submit order and judgment on notice.

Dated: White Plains, New York
      June 13, 2005

_____
FRANCIS A. NICOLAI
ACTING SUPREME COURT JUSTICE

Zarin & Steinmetz
Attorneys for the Village of Chestnut Ridge,
the Village of Montebello, the Village of
Pomona and the Village of Wesley Hills
81 Main Street, Suite 415
White Plains, New York 10601

Ross & Gess
Attorneys for Jay B. Rosenstein,
Robert Moskowitz, Milton B. Shapiro
and Dr. Sonya Shapiro
275 North Middletown Road
Pearl River, New York 10965

Holland & Knight LLP
Attorneys for the Town of Ramapo,
Town Board of the Town of Ramapo
and Planning Board of the Town of Ramapo
195 Broadway
New York, New York 10007-3189

Dennis Lynch, Esq.
Attorney for Yeshiva Chofetz Chaim of Radin
51 North Broadway
Nyack, New York 10960

Terry Rice, Esq.
Attorney for Scenic Development, LLC
Four Executive Boulevard, Suite 100
Suffern, New York 10901

**Exhibit E**

1          Proceedings          19

2          that's all, not to adjourn the

3          proceedings.

4              With regard to threshold issues,

5          Mr. Zarin is here for the individual

6          families and for the villages.  I know

7          of no evidence that has been set forth

8          that the villages have authorized by

9          resolution this application, so if he

10         has that proof, certainly I would like

11         to see it.  I think that's germane to

12         the Court's consideration of the

13         issues, that is one threshold issue.

14             The second threshold issue, your

15         Honor, since December 14th of 2005, the

16         premises that are the subject matter of

17         this proceeding insofar as the Nike

18         site were transferred.

19             There is necessary party called

20         Mosdos, Mosdos Chofetz Chaim Inc. who

21         has not been given notice of this

22         particular proceeding, is not a party

23         to this particular proceeding, and I

24         think before the Court issues any

25         orders, would have a right to come and

Proceedings                20

1
2      argue their respective position.
3           THE COURT:  Would you just be a
4      little more specific with regard to
5      that argument?  Who is the necessary
6      party?
7           MR. LYNCH:  The current owner of
8      the site, the person who has the permit
9      for the site.  Your Honor, I have for
10     the Court's information, if I can hand
11     it up, it's the only copy I have, a
12     copy of a permit issued by the Town of
13     Ramapo, December 15th of 2005, to
14     Mosdos Chofetz Chaim, so at least since
15     December of '05--
16          THE COURT:  Is that an individual,
17     religious corporation?
18          MR. LYNCH:  I did not do the
19     incorporation, I don't know.  If I had
20     to guess, I would guess it's a
21     religious corporation.
22          THE COURT:  It is the same as
23     Yeshiva Chofetz Chaim, is that the same
24     people?
25          MR. LYNCH:  I am not the attorney

Proceedings                    21

1

2   for the Mosdos Chofetz Chaim.  I don't

3   know its make-up.  They were not given

4   copies of the papers.  They own the

5   property.  They have the permit.  They

6   are a necessary party, I believe,

7   before the Court can enter any

8   particular order.  I also have a copy

9   of the deed if your Honor would want

10  that particular exhibit.  I can hand it

11  up, if I could, with your Honor's

12  permission.

13         So those, I think, are threshold

14  issues.

15         THE COURT:  Would you have these

16  marked as Respondent's B and C.

17         Mr. Zarin, we don't have copies

18  for you.  We have to give you copies

19  after this argument.

20         MR. ZARIN:  Can I take a look at

21  them?

22         THE COURT:  Show them to counsel,

23  please.

24         MR. LYNCH:  Your Honor, putting

25  aside --

Proceedings                    22

1

2          THE COURT:  One moment, let's

3     review the documents for a second.

4          MR. LYNCH:  Forgive me.

5          MR. ZARIN:  I would just like to

6     point out, your Honor, it appears both

7     parties share the same address.

8          THE COURT:  Well, Mr. Zarin, the

9     real question in my mind is, we need a

10    rabbinical scholar present who can

11    answer this question.  The caption says

12    Yeshiva Chofetz Chaim of Radin, and

13    that says Mosdos Chofetz Chaim, and the

14    question in my mind, two-thirds of it

15    have the same words.  Whether we are

16    dealing with the same entity or not,

17    but that is something we have to

18    determine.  I don't know.

19         MR. ZARIN:  I would also like to

20    raise, your Honor, that there have

21    been --

22         THE COURT:  One moment, let us

23    have one argument completed and then

24    you can respond.

25         Before you proceed, one of the

Proceedings                    32

1
2    if they would have recognized the risks
3    at that time, and they would have at
4    that time ceased construction and
5    ceased processing this to allow the
6    process to play itself out and we
7    sought a calendar preference with the
8    Appellate Division which opposed, we
9    sought to expedite in all respects this
10   litigation, it was opposed with
11   sanctions, with other motions and the
12   like, so this pleading of equity now at
13   this stage to allow them to continue I
14   think is really fraught with a certain
15   amount of disingenuousness and lacks
16   merit.
17        On the issue of the necessary
18   party, your Honor, this case has had a
19   number of pleadings post December 15th,
20   '05, both some initiated by defendants,
21   others initiated by us, in which
22   defendants put in papers, never was the
23   issue raised in any of those that we
24   were lacking the necessary party, nor
25   was this party ever added to their

1         Proceedings                33

2         caption as a relevant party to any of

3         their particular motions concerning the

4         property, so to raise it at this stage

5         again I think is without merit and

6         certainly disingenuous.

7              With respect to the, I think the

8         sort of underlying issue here about

9         look, the irreparable harm, there

10        should be no irreparable harm here.

11             If we have to undertake or redo

12        SEQRA, we will redo SEQRA and see if

13        there are any mitigations, and we will

14        face the issues at this juncture.

15             This Court sitting as the

16        environmental court I think is well

17        versed in the intent or the purported

18        intent and the meaning and the

19        practical implications of SEQRA, and if

20        plaintiffs would have, or if defendant

21        town and the applicant would have

22        recognized the import of SEQRA at that

23        time, this project may have been very

24        different, as this Court cited.  It may

25        have had less density.  It may have had