UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE | : |
| VILLAGE OF MONTEBELLO, THE VILLAGE | |
| OF POMONA, THE VILLAGE OF WESLEY HILLS, | : |
| MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : |
| | |
| Petitioners/Plaintiffs, | : |
| | |
| - against - | : |
| | |
| THE TOWN OF RAMAPO, THE TOWN | : |
| BOARD OF THE TOWN OF RAMAPO, THE | |
| PLANNING BOARD OF THE TOWN OF | : |
| RAMAPO, YESHIVA CHOFETZ CHAIM OF | |
| RADIN, SCENIC  DEVELOPMENT, LLC, and THE | : |
| BOARD OF APPEALS OF THE TOWN OF RAMAPO, | |
| and MOSDOS CHOFETZ CHAIM, INC., | : |
| | |
| Respondents/Defendants. | : |

07-CV-9278 (KMK)

**ECF CASE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR REMAND


ZARIN & STEINMETZ
81 MAIN STREET, SUITE 415
WHITE PLAINS, NEW YORK 10601
(914) 682-7800

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS .............................................................................. 3

    The Adult Student Housing Law ........................................................... 3

    Petitioners Commence The Underlying Proceeding............................... 4

    The Matter Is Removed To This Court And
    Subsequently Remanded Back To State Court ........................................ 5

    Petitioners Obtain Injunctive Relief....................................................... 6

    Petitioners Successfully Appeal The *Ramapo II* Decision ...................... 7

    Petitioners Again Move For Injunctive Relief........................................ 8

    Mosdos's Acquisition Of The Nike Site................................................. 9

    Mosdos Is Added As A Respondent/Defendant To The Action............... 9

    Mosdos Files A Notice Of Removal ....................................................... 10

ARGUMENT.................................................................................................. 10

I.     REMOVAL BY MOSDOS WAS PROCEDURALLY FLAWED ........... 10

    A.    Mosdos Is Bound By The Remand Order..................................... 10

    B.    The 30-Day Removal Deadline Has Long Passed, And
        Cannot Be Restarted Under The Circumstances Herein................ 12

    C.    Mosdos Cannot Be Rewarded For Its Bad Faith Delay ................. 13

II.    REMOVAL IS IMPROPER HERE BECAUSE MOSDOS DOES
    NOT CITE TO A COGNIZABLE CIVIL RIGHT UNDER
    SECTION 1443(1), AS WELL AS FAILS TO SHOW THAT IT
    COULD NOT ENFORCE ITS RIGHT IN STATE COURT.................... 14

    A.    Respondents Do Not Have A "Right Under" Any Federal Law
        To Exemption From Neutral Environmental Review Laws .......... 15

B.  Mosdos Also Cannot Show That It Would Be "Denied
    Or Cannot Enforce" Any Rights It May Have Under
    The FHA Or RLUIPA In The Courts Of New York ..................................... 17

    1.  Historically, Section 1443(1) Required
        A "State Enactment That Authorized The
        Predicted Denial" To Sustain Removal ............................................. 17

    2.  *Rachel* Holds That Removal Is Warranted
        To Prevent A Defendant's Prosecution Under
        State Law Where There Is A Civil Right To
        Be Free From Any "Attempt To Punish" ........................................... 19

    3.  The Second Circuit Confirms That Removal Is
        Only Warranted Where A Federal Statute
        Contains Explicit "Anti-Prosecution" Language ............................... 21

C.  The Eleventh Circuit's Decision In *Sofarelli*
    Lacks Any Substantive or Legal Bases ........................................................... 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE**

Allstate Ins. Co. v. Administratia Asigurarilor De Stat,
    875 F. Supp. 1022 (S.D.N.Y. 1995)............................................................................ 11

Am. Book Co. v. Yeshiva Univ. Dev. Found., Inc., 59 Misc. 2d 31,
    297 N.Y.S.2d 156 (Sup. Ct. N.Y. Cty. 1969) ............................................. 11

Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006)........................................................ 14

Bush v. Kentucky, 107 U.S. 110 (1883) ................................................................................ 18

Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343 (2d Cir. 1995) ........................ 11

City of Greenwood v. Peacock, 384 U.S. 808, 86 S. Ct. 1800 (1966)...................... 15, 16, 19, 20,
    21, 22, 23, 24

Costello v. U. S., 365 U.S. 265, 81 S. Ct. 534 (1961) ........................................................... 14

Davis v. Glanton, 107 F.3d 1044 (3d Cir. 1997) .................................................................... 22

Emigrant Savings Bank v. Elan Management Corp.,
    668 F.2d 671 (2d Cir. 1982)............................................................................ 16, 23, 24

Fair Hous. in Huntington Comm. Inc. v. Town of Huntington,
    316 F.3d 357 (2d Cir. 2003)............................................................................ 16

Gay Men's Health Crisis v. Sullivan, 733 F. Supp. 619 (S.D.N.Y. 1989) ............................. 14

Hallinan v. Republic Bank & Trust Co., 2007 WL 2572092 (S.D.N.Y. 2007)...................... 11

Hubbard v. Union Oil Co., 601 F. Supp. 790 (S.D.W.Va. 1985) .......................................... 12

In re Yeshiva Chofetz Chaim Kiryas Radin, Inc.,
    Case No. 03-16729 (Bankr. S.D.N.Y.) ....................................................... 9

Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc., 36 N.Y.2d 121,
    365 N.Y.S.2d 808 (1975)............................................................................ 11

Iulianelli v. Lionel, L.L.C., 183 F. Supp. 2d 962 (E.D. Mich. 2002) .................................... 12

Johnson v. Mississippi, 421 U.S. 213, 95 S. Ct 1591 (1975) ................................................ 15

Kentucky v. Powers, 201 U.S. 1 (1906) ................................................................................ 18

Lewis v. S. S. Baune, 534 F.2d 1115 (5th Cir. 1976) ................................................................ 8

Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542 (1987) .......................... 14

Miles v. Starks, 440 F. Supp. 947 (N.D. Tex. 1977) ............................................................. 11

Neal v. State of Delaware, 103 U.S. 370 (1880) .................................................................... 18

Noble v. Bradford Marine, Inc., 789 F. Supp. 395 (S.D. Fla. 1992) ................................. 11, 12

Omni Partners, L.P. v. County of Nassau, 237 A.D.2d 440,
     654 N.Y.S.2d 824 (2d Dep't 1997) .............................................................................. 5

People of State of N.Y. v. Davis, 411 F.2d 750 (2d Cir. 1969) ................................... 21, 22, 23

People of State of N. Y. v. Horelick, 424 F.2d 697 (2d Cir. 1969) ...................................... 23

Samura v. Kaiser Found. Health Plan, Inc., 715 F. Supp. 970 (N.D. Cal. 1989) ................. 12

Schiavone Constr. Co. v. N.Y. City Transit Auth.,
     593 F. Supp. 1257 (S.D.N.Y. 1984) .............................................................................. 8

Sofarelli v Pinellas County, 931 F.2d 718 (11th Cir 1991) .................................... 24 , 25

Southside Fair Hous. Comm. v. City of New York, 928 F.2d 1336 (2d Cir. 1991) .............. 14

State of Ga. v. Rachel, 384 U.S. 780, 792, 86 S. Ct. 1783 (1966) ...................... 15, 17, 18, 19, 20,
                                                                                                                21, 22, 23, 24

Strauder v. West Virginia, 100 U.S. 303 (1879) .................................................................... 17

Vill. of Chestnut Ridge v. Town of Ramapo,
     45 A.D.3d 74, 841 N.Y.S.2d 321 (2d Dep't 2007) ............................................. 4, 5, 7, 8

Vill. of Chestnut Ridge v. Town of Ramapo,
     04 CV 8865, slip op. (S.D.N.Y. Dec. 10, 2004) ....................................................... 5, 6

Vill. of Chestnut Ridge, et al. v. Town of Ramapo, et al.,
     Index No. 16876/04, slip op. (Sup. Ct. Westchester Cty. June 13, 2005) ................. 6, 7

Virginia v. Rives, 100 U.S. 313 (1879) ............................................................................ 17, 18

Water's Edge Habitat, Inc. v. Pulipati, 837 F. Supp. 501 (E.D.N.Y. 1993) ...................... 16, 17

Watts v. Swiss Bank Corp., 317 N.Y.S.2d 315, 317 N.Y.S.2d 315 (1970) .......................... 11

Westchester Day School v. Vill. of Mamaroneck,
     --- F.3d ---, 2007 WL 3011061 (2d Cir. Oct 17, 2007)................................................ 15, 16

Whately v. City of Vidalia, 399 F.2d 521 (5th Cir. 1968)...................................................... 22


FEDERAL STATUTES

28 U.S.C.A. § 1443(1) ......................................................................... 2, 15, 17, 20, 24

28 U.S.C.A. § 1446(b) ...................................................................................... 12

28 U.S.C.A. § 1447(c) ..................................................................................... 1, 25

42 U.S.C.A. § 2000cc(a)(1) .................................................................................. 16

FHA § 3604(a) ............................................................................................... 16

FHA § 3605................................................................................................... 16

FHA § 3617.............................................................................................. 21, 24


NEW YORK STATE STATUTES

N.Y. CPLR, art. 78.......................................................................................... 4

N.Y. CPLR § 1018........................................................................................... 13


NEW YORK STATE REGULATIONS

6 NYCRR § 617.4(a)(1).................................................................................... 5

6 NYCRR § 617.7(1) ...................................................................................... 5


MISCELLANEOUS

11A Wright & Miller, Fed. Prac. & Proc. § 2951................................................... 8

Petitioners/Plaintiffs ("Petitioners"), by their attorneys, Zarin & Steinmetz, submit this Brief in support of their Motion to Remand the instant matter to the New York State Supreme Court, Westchester County, pursuant to 28 U.S.C.A. Section 1447(c).

## PRELIMINARY STATEMENT

This case is – and has always been – about a municipality's and an applicant's failure to comply with New York State Law, the most basic precepts of the New York State Environmental Quality Review Act ("SEQRA"), and fundamental zoning jurisprudence.  It has nothing to do with religion or civil rights.

For three years of active litigation, Respondent/Defendant Yeshiva Chofetz Chaim of Radin ("Yeshiva") held itself out as the owner of the "Nike Site" – a property on which approvals were granted by the Town of Ramapo (the "Town") for, *inter alia*, an increase in housing density from 8 to 60 units on a mere 4.7 acre parcel.  Despite this massive increase in density, located on the borders of Petitioners' single-family neighborhoods, the Town issued a negative declaration under SEQRA without taking the requisite "hard look" at the relevant environmental concerns raised by Petitioners and others, finding somehow that there would be no potential significant environmental impacts.  This is precisely the gravamen of the instant lawsuit – not a malicious discriminatory intent as Respondents would have the Court believe.

A year after the litigation was commenced, Yeshiva purportedly transferred the Nike Site to Defendant/Respondent Mosdos Chofetz Chaim, Inc. ("Mosdos").  It took, however, two full years – only after the Appellate Division, Second Department handed down a seminal 20-page Decision favorable to Petitioners – before Yeshiva disclosed that Yeshiva claimed to no longer have an interest in the Nike Site.  Two years after the statutory thirty days lapsed, Mosdos filed the instant  Notice of Removal to this Court.

This is not the first time this action has been removed to Federal Court. In 2004, Yeshiva removed this action, but shortly thereafter consented to the matter being remanded back to State Court. As a threshold issue, as Yeshiva's successor in interest, Mosdos is bound by the Order on Remand. Furthermore, although Mosdos was added as a Defendant in this action, that alone does not restart the statutory thirty-day clock required to file a Petition to Remove. As such, the instant removal is procedurally fatally flawed. Alternatively, Mosdos sat on its rights for two years, only to surface at a convenient time to forum shop. Its Notice of Removal should also be barred under the doctrine of laches.

Moreover, Mosdos does not and cannot cite to any statutory language or legal theory that would warrant removal under 28 U.S.C.A. Section 1443(1). Removal is permissible under Section 1443(1) only where a defendant can show that its civil rights would be inevitably denied in State Court. As the Supreme Court and the Second Circuit have held, the prohibition of "coercion" in the Fair Housing Act ("FHA") does not provide sufficient basis for removal. Additionally, neither the FHA nor the Religious Land Use and Institutionalized Persons Act ("RLUIPA") exempts an application from neutral environmental review based upon the status of the applicant as a religious corporation. Finally, this Court must respectfully assume that the Courts of New York State would adequately and appropriately uphold any rights Mosdos may have in this action.

As demonstrated below, there is neither a legitimate procedural nor substantive basis for removal to Federal Court. Accordingly, this matter must be remanded to State Court.

## STATEMENT OF FACTS

For the sake of judicial economy, the Court is respectfully referred to Petitioners' Amended Petition/Complaint (the "Complaint") for a more complete exposition of the relevant background and facts in this matter.

### The Adult Student Housing Law

Violating well established environmental laws and procedures, the Town, in June 2004, rushed through a so-called Adult Student Housing Law (the "ASHL"). The ASHL, which is at the heart of this case, permits new high density, multi-family housing to be built throughout the Town, including, on certain properties located immediately abutting and surrounding the Villages' and other Petitioners' single-family residential neighborhoods. One need only look at the resulting construction on the Nike Site to see that the development is entirely incongruous with the surrounding single-family neighborhood, and should have been subjected to a full environmental review under the well established rules and regulations governing SEQRA. (See Aerial Photograph, dated July 3, 2007, annexed to the Notice of Motion as Exhibit "A").

By illustration, the ASHL would allow an increase in density from *39 to 516 dwelling units* on just four sites located within the Town, totaling a mere thirty-three (33) acres:

- The Nike Site, presently subject to an approved application granted to Yeshiva and/or Mosdos, allows 60 units to be constructed on 4.7 acres under the ASHL, an increase from a total of 8 units.

- The Patrick Farm Site would initially be permitted an increase in density from 6 units to 192 units on just a 12 acre portion of an approximately 200 acre site. Petitioners Milton B. Shapiro and Dr. Sonya Shapiro live across the street from the Patrick Farm Site.

- The Highview Road Site would be permitted an increase in density from 20 to 187 units on 11.7 acres.

- The Spruce Road Site would be permitted an increase in density from 5 to 77 units on 4.8 acres.

Critical to this action, the affected development areas and their attendant high density multifamily units will have a major adverse impact on not only the character of the Villages' and other Petitioners' immediately bordering *single-family* neighborhoods, but also the Villages' roadways, water supply, schools and sewage treatment systems, which they share with the unincorporated Town of Ramapo.   See Vill. of Chestnut Ridge v. Town of Ramapo, 45 A.D.3d 74, 841 N.Y.S.2d 321, 337-38  (2d Dep't 2007).

**Petitioners Commence The Underlying Proceeding**

On October 13, 2004, Petitioners commenced the instant proceeding pursuant to Article 78 of the New York CPLR.  The underlying action challenges, *inter alia*, the Town Board's environmental review and negative declaration adopted in connection with the ASHL as arbitrary, capricious and an abuse of discretion under SEQRA.  It also challenges the Town Planning Board's issuance of the related negative declaration in connection with the Yeshiva/Mosdos site plan on the Nike Site – the first approved project under the ASHL – as arbitrary, capricious and an abuse of discretion under SEQRA.

SEQRA requires that a government agency consider the environmental impact of an "action" before it may  be approved and/or adopted.  When it is determined that an action will not result in any adverse significant environmental impacts, the agency may issue a negative declaration.  If, however, there is the potential for any significant environmental impacts, the agency must issue a positive declaration, and require the preparation of a full Environmental Impact Statement ("EIS").

The Town correctly determined that the adoption of the ASHL was a "Type I action."  According to the SEQRA regulations, a Type I action is one that "carries with it the presumption that it is likely to have a significant adverse impact on the environment and may

require an EIS." 6 NYCRR § 617.4(a)(1). The EIS review process provides the requisite mechanism for ensuring that the potential adverse impacts of a project are avoided and/or mitigated to the maximum extent practicable. SEQRA mandates the preparation of an EIS "when the proposed project *may* include the potential for at least *one* significant environmental effect." 6 NYCRR § 617.7(1). "Because the operative word triggering the requirement of an EIS is 'may', there is a *relatively low threshold* for the preparation of an EIS," irrespective of whether the action was classified as a Type I action. See <u>Omni Partners, L.P. v. County of Nassau</u>, 237 A.D.2d 440, 654 N.Y.S.2d 824, 826 (2d Dep't 1997) (emphasis added).

Yet, despite the low threshold of review and Type I presumption, and the clear indication that the subject density rezoning may have, at minimum, the *potential* for a significant adverse environmental impact, the Town issued a negative declaration, prematurely terminating the environmental review process. Indeed, as discussed, *infra*, both the State Supreme Court and the Appellate Division, Second Department acknowledged the potential for "a substantial detrimental effect on the roads in [Petitioners'] communit[ies], their shared water supply and sewer systems, and the character of their neighborhoods," due to the adoption of the ASHL and approval of the project on the Nike Site. <u>Vill. of Chestnut Ridge v. Town of Ramapo</u>, 45 A.D.3d 74, 841 N.Y.S.2d 321, 338 (2d Dep't 2007) (the "Second Department Order") (A copy of the Second Department Order is annexed to the Notice of Motion as Exhibit "B").

**The Matter Is Removed To This Court And**
**<u>Subsequently Remanded Back To State Court</u>**

On November 9, 2004, within 30 days of the filing of the subject Complaint, Yeshiva removed the instant matter to this Court. See <u>Vill. of Chestnut Ridge, et al. v. Town of Ramapo, et al.</u>, 04 CV 8865 (S.D.N.Y.). A status conference was held on December 2, 2004. Thereafter, Yeshiva withdrew its Notice of Removal, and consented to the remand back to the

Westchester County Supreme Court.  Thus, by Order dated December 10, 2004, and entered on December 13, 2004, this Court "remanded [the matter] in its entirety to the New York Supreme Court, Westchester County," and closed the case in Federal Court.  See Vill. of Chestnut Ridge, 04 CV 8865, slip op. at 2 (S.D.N.Y. Dec. 10, 2004) (SCR) (the "Remand Order").  (A copy of the Remand Order is annexed to the Notice of Motion as Exhibit "C").  Yeshiva further consented not to seek any further remand in this matter.  (Remand Order at 2).

**Petitioners Obtain Injunctive Relief**

On June 13, 2005, Judge Francis A. Nicolai, presiding justice of the Environmental Claims Part of the Westchester County Supreme Court, granted a preliminary injunction to former Petitioners Rosenstein and Moskowitz (the "2005 Injunction").  (Vill. of Chestnut Ridge, et al. v. Town of Ramapo, et al., Index No. 16876/04, slip op. at 15 (Sup. Ct. Westchester Cty. June 13, 2005) (Nicolai, J.) ("Ramapo II Decision"), annexed to the Notice of Motion as Exhibit "D").  The Villages, however, were dismissed for lack of capacity and standing, and the Shapiros were dismissed for lack of standing.

The Ramapo II Decision held that Petitioners' claims had a likelihood of success on the merits warranting injunctive relief "because, inter alia, it is not disputed that the Nike site application received a negative declaration under SEQRA, although it was determined to be a Type I action."  (June 2005 Decision at 15).  It also held that Petitioners successfully supported its "contention that the proposed development of the Nike site would be incongruous with the nearby neighborhoods."  (Id. at 12).

The State Supreme Court also found that there would be irreparable harm if the 2005 Injunction had not been granted as "the construction planned for the Nike site will likely proceed.  No money damages will be adequate, if the character of the neighborhood is severely damaged."  (Id.).  Furthermore, the Court declared that the equities favored granting the

preliminary injunction because "if the status quo is not maintained pending determination of this case on the merits, the changes caused by construction will be irreversible." (Id. at 16).

Unfortunately, Rosenstein and Moskowitz lacked the financial means to post the undertaking. After unsuccessfully attempting to have the amount of the bond lowered, they subsequently succumbed to the intimidation of the Town and private applicant-developers, ultimately withdrawing from the case. Despite the public environmental purpose at stake and clear, blatant environmental violations of the Town, the preliminary injunction ultimately lapsed.

**Petitioners Successfully Appeal The *Ramapo II* Decision**

Petitioners had already appealed their dismissal from the case. On August 14, 2007, the Appellate Division, Second Department, in a seminal 20-page Decision, issued an Opinion and Order ("Second Department Order"), *inter alia*, reinstating all but two Causes of Action in this matter, and remitted it back to the lower Court for a determination on the merits. See Vill. of Chestnut Ridge, 841 N.Y.S.2d 321

Of significance, the Second Department held that: (i) all of the Villages have standing and capacity to challenge the ASHL under SEQRA and General Municipal Law; (ii) the Village of Wesley Hills has standing and capacity to challenge the SEQRA approvals obtained by Yeshiva and/or Mosdos on the Nike Site; and (iii) the Shapiros have standing to challenge the ASHL under SEQRA, Municipal Home Rule Law, and General Municipal Law, as well as on the grounds that the ASHL constitutes impermissible spot zoning, and the Town Board's actions were *ultra vires*. See id. at 340-41.

In reinstating the above-referenced claims, the Second Department acknowledged specifically Petitioners' environmental concerns with regard to the potential massive density increase resulting from the implementation of the ASHL, as well as the potential significant

7

impacts on water, sewage capacity and community character.  <u>Vill. of Chestnut Ridge</u>, 841 N.Y.S.2d at 338.

**Petitioners Again Move For Injunctive Relief**

Once the action was reinstated, Petitioners again sought injunctive relief from the State Supreme Court.  On September 11, 2007, following notice and an opportunity for all parties to submit papers, the Supreme Court issued a temporary restraining order, enjoining, *inter alia*, the implementation by the Town of the ASHL, the issuance of Certificates of Occupancy for the Nike Site (which is now almost entirely built), and occupation of the Nike Site (the "September 11th TRO").  This TRO is presently still in effect.[1]

On or about September 17, 2007, Yeshiva moved to stay enforcement of the September 11th TRO, claiming that it "grants relief regarding real property owned by an entity who is not a party to this proceeding," and seeking leave to appeal on the same basis.   Yeshiva claimed that a necessary party was lacking because it had purportedly transferred the Nike Site to a "different" entity – Mosdos – more than a year after the underlying litigation commenced.  It is no coincidence that despite repeated motion practice and participation in litigation, it was not until the Second Department Decision and the reinstatement of the TRO that suddenly the subject conveyance was disclosed to the Court and Petitioners.  (<u>See</u> Sept. 5, 2007 Transcript (the "Sept. 5 Tr.") at 19-22, 32-33.  Relevant portions of the Sept. 5 Tr. are annexed to the Notice

---

[1]     Although an *ex parte* TRO generally expires within ten days, in this case, since there was notice and an opportunity for all parties to be heard, the TRO is, effectively, a preliminary injunction that does not automatically expire, and is treated as such.  <u>See</u> 11A Wright & Miller, <u>Fed. Prac. & Proc.</u> § 2951, <u>citing</u> <u>Schiavone Constr. Co. v. N.Y. City Transit Auth.</u>, 593 F. Supp. 1257, 1261 n.10 (S.D.N.Y. 1984) (application for TRO treated as preliminary injunction where opposing parties had notice and opportunity to be heard); <u>see also</u> <u>Lewis v. S. S. Baune</u>, 534 F.2d 1115, 1121 (5th Cir. 1976) ("We note that the TRO here was issued after notice and a brief hearing, and was in effect for approximately one year. It was in substance and effect a preliminary injunction and we therefore view it as such.").

of Motion as Exhibit "E").  On September 25, 2007, the Second Department denied Yeshiva's Motion.

**Mosdos's Acquisition Of The Nike Site**

Based upon independent research, it was discerned that prior to the commencement of the instant action, it appears that due to alleged tax issues between the Town and Yeshiva (which are unrelated to the instant action),  Yeshiva sought relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), by Petition dated October 27, 2003.  See In re Yeshiva Chofetz Chaim Kiryas Radin, Inc., Case No. 03-16729 (Bankr. S.D.N.Y.) (RDD).

Yeshiva ultimately submitted to the Bankruptcy Court a Second Amended Plan of Reorganization, as Modified (Nov. 23, 2005) (the "Reorganization Plan").  The Reorganization Plan, which was confirmed by a Bankruptcy Court Order, dated December 13, 2005, required that the Nike Site be transferred to Yeshiva Chofetz Chaim, Inc., an "*affiliate of [Yeshiva]*." (Reorganization Plan at 10 (emphasis added)).  By Deed dated December 13, 2005, the Nike Site was so transferred.  The very next day, by Deed dated December 14, 2005, the Nike Site was transferred to Mosdos.  The Court need look no further than the Answer to establish that Mosdos is a successor in interest of the Nike Site to Yeshiva.  (See Answer, ¶ 325 ("Mosdos is currently the owner of . . . the Nike Site").

As stated earlier, Yeshiva did not inform Petitioners or the State Court that it no longer held an interest in the Nike Site until almost two years later, as it proceeded to bring multiple motions, and litigate in the State Courts.

**Mosdos Is Added As A Respondent/Defendant To The Action**

Once Yeshiva and Mosdos revealed that Mosdos was the actual owner of the Nike Site, in an attempt to short-circuit the gamesmanship by Yeshiva and Mosdos, Judge Nicolai

suggested that for procedural purposes, Petitioners serve an Amended Petition/Complaint, *inter alia*, adding Mosdos as a Respondent/Defendant. Petitioners served Mosdos on September 26, 2007 with an Amended Summons, Notice of Amended Petition/Complaint, and the Complaint. No other amendments were made to the Complaint.

**Mosdos Files A Notice Of Removal**

After three years of extensive litigation in the State Courts by Yeshiva, and two years after Mosdos acquired the Nike Site, on October 17, 2007, Mosdos filed the subject Notice of Removal. Mosdos also filed an Answer with Counterclaims, dated October 16, 2007 (the "Answer" or "Counterclaims"), inserting meritless federal claims in a blatant attempt at forum shopping.

For the reasons set forth, *infra*, the Notice of Removal is both procedurally and substantively flawed. Accordingly, Petitioners seek an Order remanding this matter back to State Court where it appropriately belongs.

## ARGUMENT

## POINT I.

## REMOVAL BY MOSDOS WAS PROCEDURALLY FLAWED

As a threshold matter, removal in the instant situation was entirely improper and procedurally flawed.

### A. Mosdos Is Bound By The Remand Order

Yeshiva waived its right to remove its action to Federal Court when it consented to the Remand Order. Yeshiva agreed therein that it would "not seek removal of this action or any part thereof to any United States District Court, provided, that no new Respondents/Defendants are added to this action." (Remand Order at 2, Exhibit "C"). Although

Mosdos will likely argue that it is a new party, Mosdos does not have that right since Yeshiva – its predecessor in interest – does not have that right.

As a successor in interest to Yeshiva, Mosdos "stepped into the shoes" of Yeshiva. It can acquire no greater rights than Yeshiva itself. See, e.g., Allstate Ins. Co. v. Administratia Asigurarilor De Stat, 875 F. Supp. 1022, 1026 (S.D.N.Y. 1995) ("'an assignee never stands in any better position than his assignor.'"), quoting Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc., 36 N.Y.2d 121, 365 N.Y.S.2d 808, 811 (1975), and citing Am. Book Co. v. Yeshiva Univ. Dev. Found., Inc., 59 Misc. 2d 31, 297 N.Y.S.2d 156, 163 (Sup. Ct. N.Y. Cty. 1969) ("the successor in interest to the prior owners *stepped into their shoes*, acquiring no greater rights than its predecessors" (citations omitted) (emphasis added)). Thus, Mosdos "is subject to all the equities and burdens which attach to the property assigned because [it] receives no more and can do no more than [its] assignor."[2] Allstate Ins. Co., 875 F. Supp. at 1026, quoting Int'l Ribbon Mills, Ltd., 365 N.Y.S.2d at 811.

Simply put, Yeshiva's waiver of its right to removal is binding upon all subsequently added Defendants, including Mosdos. Noble v. Bradford Marine, Inc., 789 F. Supp. 395, 397 (S.D. Fla. 1992) ("[T]he failure of initial Defendants to remove during the original thirty day time period is deemed a waiver of the right of removal which is binding on subsequently added Defendants."), citing Miles v. Starks, 440 F. Supp. 947, 948 (N.D. Tex. 1977).

---

[2]    This position is supported by the doctrine of privity. Successors in interest are deemed to be in privity with their predecessors. Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995), citing Watts v. Swiss Bank Corp., 317 N.Y.S.2d 315, 317 N.Y.S.2d 315, 320 (1970) (the term privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action."); accord Hallinan v. Republic Bank & Trust Co., 2007 WL 2572092, *11 (S.D.N.Y. 2007). "Privity is a well-established component of the federal law of *res judicata*. A privy is bound with respect to all the issues that were raised or could have been raised in the previous lawsuit." Chase Manhattan Bank, 56 F.3d at 346.

Accordingly, since Yeshiva cannot remove this matter, neither can Mosdos.

**B.    The 30-Day Removal Deadline Has Long Passed, And
Cannot Be Restarted Under The Circumstances Herein**

Even ignoring the fact that Mosdos is bound by the constraints of its predecessor and the Remand Order, 28 U.S.C.A. Section 1446(b) precludes removal. The law is clear that where a case is removable from its inception, but remains in State Court, the addition of a new defendant *does not* re-start the 30-day clock for removal, especially here, where Mosdos sought removal *three years* after the commencement of the litigation.

In Iulianelli v. Lionel, L.L.C., 183 F. Supp. 2d 962 (E.D. Mich. 2002), for example, the original defendant did not remove the case to Federal Court within 30 days of being served with the complaint. Several months later, an additional defendant was named, and the original defendant was dismissed from the case. The new defendant thereafter removed the case to Federal Court.

The Iulianelli Court held that removal was improper, and that the "matter must be remanded to state court . . . [because] the case was removable from its inception . . . but was not removed until almost ten months later." Id. at 964; see also Noble v. Bradford Marine, Inc., 789 F. Supp. 395, 397 (S.D. Fla. 1992) ("The addition of a new Defendant in an Amended Complaint . . . does not start the time for removal anew when the original Complaint itself was removable."), citing Samura v. Kaiser Found. Health Plan, Inc., 715 F. Supp. 970, 971 (N.D. Cal. 1989). Although the Courts recognize an exception to this rule where "the amendment [to the complaint] sets forth a new basis of federal jurisdiction, subsequent events [such as the mere addition of a successor in interest to defendant] do not make a removable case 'more removable' or 'again removable.'" See Noble, 789 F. Supp. at 397, quoting Hubbard v. Union Oil Co., 601 F. Supp. 790, 795 (S.D.W.Va. 1985); see also Iulianelli, 183 F. Supp. 2d at 964.

12

Petitioners have amended only the caption in this action, at the request of Mosdos, and the direction of the State Supreme Court. No new causes of action have been added. Therefore, no new basis for federal jurisdiction has been added. The 30-day clock did not reset after three years of litigation in the State Court.

**C.**    **Mosdos Cannot Be Rewarded For Its Bad Faith Delay**

Mosdos is also barred from removing this action to Federal Court under the doctrine of laches. Unbeknownst to Petitioners and the State Supreme and Appellate Courts, Mosdos has been "waiting in the wings" for almost two years. It was not until September 5, 2007, after Petitioners obtained its favorable decision in the Second Department, that Mosdos surfaced, and Yeshiva and Mosdos began to contend Mosdos was a "necessary party."[3]  (See Exhibit "E").

Mosdos was unquestionably on notice of the proceedings in this matter for years. Yeshiva and Mosdos have at least two officers in common. They have the same mailing address. Indeed, it appears from various newspaper articles that both entities had the same counsel for a period of time. (See, e.g., Certificate of Incorporation of Yeshiva Chofetz Chaim Kiryas Radin; Certificate of Incorporation of Mosdos Chofetz Chaim, Inc.; Selection of Articles. Copies of the foregoing are annexed to the Notice of Motion as Exhibits "F," "G," and "H").

Mosdos's Notice of Removal can only be interpreted as blatant forum shopping. Mosdos sat idly by while Yeshiva (equally as silent) proceeded with substantial litigation and motion practice, including an appeal to the Second Department, in connection with property it presumably no longer owned. This two-year extensive delay and lack of diligence by Mosdos in

---

[3]    Notably, as Petitioners argued to the State Courts, "[u]pon any transfer of interest, [an] action may be continued by *or against the original parties* unless the court directs the person to whom the interest is transferred to be substituted or joined in the action." N.Y. CPLR § 1018 (emphasis added). Thus, Mosdos is not and has never been a "necessary party," but was added at the Court's direction.

asserting its rights with no credible reason necessitates remand of this action back to State Court. Costello v. U. S., 365 U.S. 265, 81 S. Ct. 534, 543 (1961) ("Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense"); Southside Fair Hous. Comm. v. City of New York, 928 F.2d 1336, 1354 (2d Cir. 1991) ("Laches can bar constitutional claims"); Gay Men's Health Crisis v. Sullivan, 733 F. Supp. 619, 631 (S.D.N.Y. 1989) ("The equitable doctrine of laches involves 'unreasonable delay' by the plaintiff coupled with 'undue prejudice' to the defendant").

For the foregoing procedural defects alone, Petitioners Motion for Remand must be granted.

## POINT II.

### REMOVAL IS IMPROPER HERE BECAUSE MOSDOS DOES NOT CITE TO A COGNIZABLE CIVIL RIGHT UNDER SECTION 1443(1), AS WELL AS FAILS TO SHOW THAT IT COULD NOT ENFORCE ITS RIGHT IN STATE COURT

Even assuming, *arguendo*, that the procedural hurdles could be overcome, removal is likewise improper on substantive grounds. Federal questions raised as defenses or counterclaims generally do not enable a defendant to remove a case to Federal Court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S. Ct. 1542, 1546 (1987). Mosdos's only potential avenue of removal is Title 28, Section 1443(1) of the United State Code ("Section 1443(1)"), which provides for removal for defendants in very limited circumstances. Mosdos cannot meet its burden of establishing that its Counterclaims fit within the narrow scope of Section 1443(1).[4]

---

[4]    The party asserting federal jurisdiction, including through removal, bears the burden of establishing jurisdiction.  Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006).

A party seeking to remove a case pursuant to Section 1443(1) must satisfy a two-prong test.  First, it must show that "the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality."  Johnson v. Mississippi, 421 U.S. 213, 95 S. Ct 1591, 1595 (1975), quoting State of Ga. v. Rachel, 384 U.S. 780, 792, 86 S. Ct. 1783, 1790 (1966).  "Second, it must appear, in accordance with the provisions of [Section] 1443(1), that the removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the courts of [the] State."  Johnson, 95 S. Ct. at 1595, quoting 28 U.S.C.A. § 1443(1).

Mosdos's Counterclaims satisfy neither prong.  No federal law, including the laws relied on by Mosdos, obviate any person's obligation to comply with ordinary land use control laws such as SEQRA.

**A.    Respondents Do Not Have A "Right Under" Any Federal Law To Exemption From Neutral Environmental Review Laws**

Initially, Mosdos's Counterclaims allegedly under the First Amendment cannot sustain removal under Section 1443(1).  The rights established by that Amendment "are not rights arising under a law providing for 'equal civil rights' within the meaning of s 1443(1)."[5] City of Greenwood v. Peacock, 384 U.S. 808, 86 S. Ct. 1800, 1811 (1966).

Similarly, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), requires that Mosdos, like any other religious applicant, submit its development projects to ordinary land use review laws such as SEQRA.  See Westchester Day School v. Vill. of Mamaroneck, --- F.3d ---, 2007 WL 3011061, at *7-8 (2d Cir. Oct 17, 2007) (discussing

---

[5]    See also Rachel, 86 S. Ct. at 1790 (holding that "defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under s 1443, because those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that s 1443 demands").

"preclu[sion] of religious organization[s] from demonstrating substantial burden in the neutral application of legitimate land use restrictions" under RLUIPA).[6]

The Fair Housing Act ("FHA") also does not obviate any person's obligation to comply with established land use laws.  The only substantive section of the FHA invoked by Mosdos is Section 3604(a), which makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make available or deny a dwelling to any person because of their race, color, religion, sex, familial status, or national origin."  (See Answer, ¶¶ 385-86).  This Section cannot be interpreted to mean that a party can ignore ordinary land use laws or be exempt from an action seeking to compel compliance with such laws.[7]  Compare Emigrant Savings Bank v. Elan Management Corp., 668 F.2d 671, 675 (2d Cir. 1982) (rejecting effort to remove foreclosure action because, in relevant part, "[n]either in text nor by fair implication does [FHA Section 3605] endow a person who considers himself a victim of discrimination in the financing of housing with a right to take the law into his own hands . . . and refuse to make payments of interest or principal"); see also Water's Edge Habitat, Inc. v. Pulipati, 837 F. Supp. 501, 506 (E.D.N.Y. 1993) (holding that "the FHA confers no federal right to violate [a] facially valid ordinance limiting the number of occupants in the dwelling").[8]  No law cited by Mosdos establishes that any attempt to make it comply with ordinary land use and environmental controls  implicates a protected right.

---

[6]    In any event, RLUIPA's prohibitions on the substantially burdensome or discriminatory application of land use laws is directed exclusively at "government[s]".  42 U.S.C.A. § 2000cc(a)(1).  It does not apply where, as here, a religious use obtained what it sought from the government, and a private party is challenging that governmental approval.

[7]    While the "[c]onduct prohibited by this section includes discriminatory zoning practices," Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, 316 F.3d 357, 366 (2d Cir. 2003), Mosdos is not alleging that the Town discriminated against it in its land use decisions.

[8]    Cf. Peacock, 86 S. Ct. at 1812 (denying removal because, in pertinent part, "no federal law confers an absolute right on private citizens-on civil rights advocates, on Negroes, or on anybody else-to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman")

Alternatively, Mosdos's Counterclaims do not qualify for removal under Section 1443(1). Mosdos's Counterclaims allege religious, not racial, discrimination. The legislative history of Section 1443 "clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality." Rachel, 384 U.S. 780, 86 S. Ct. 1783, 1789 (1966); see also id. at 1790 ("On the basis of the historical material that is available, we conclude that the phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality."). Accordingly, in Water's Edge Habitat, the District Court held that a "removal petition [based upon the FHA and] grounded upon alleged discrimination based upon familial status may not support removal under 28 U.S.C.A. §1443(1) and must be remanded to the State court." 837 F. Supp at 505.

**B.    Mosdos Also Cannot Show That It Would Be "Denied Or Cannot Enforce" Any Rights It May Have Under The FHA Or RLUIPA In The Courts Of New York**

**1.    Historically, Section 1443(1) Required A "State Enactment That Authorized The Predicted Denial" To Sustain Removal**

The Court in Rachel, 86 S. Ct. 1783, thoroughly discussed the legislative and judicial history of Section 1443(1). See Id. at 1791-1795. First, the Court noted that the legislative history for the original adoption of Section 1443(1)'s antecedent in 1866 indicated "that the Reconstruction Congress *did not* intend the language of the 'denied or cannot' enforce clause of [the statute] to be read to its fullest possible extent." Id. at 1791 (emphasis added).

The Rachel Court then discussed the Supreme Court's two touchstone decisions on this provision. The Court "established a relatively narrow, well-defined area in which pre-trial removal could be sustained under the 'denied or cannot enforce' clause." 86 S. Ct. at 1793, discussing Strauder v. West Virginia, 100 U.S. 303 (1879) and Virginia v. Rives, 100 U.S. 313

17

(1879).  As the Court noted, the Strauder-Rives doctrine establishes  that "[r]emoval is warranted only if it can *be predicted by reference to a law of general application* that the defendant will be denied or cannot enforce the specified federal rights in the state courts."  Rachel, 86 S. Ct. at 1794 (emphasis added). That is to say, there must be some basis for predicting that the State Court would essentially be likely to violate a civil right. [9]

The Rachel Court next discussed two subsequent Supreme Court decisions, affirming that "in the absence of *a presently effective state law authorizing the predicted denial,* the state court [is] the proper forum for the resolution of the claims that rights of equality would be denied."  Rachel, 86 S. Ct. at 1795 (emphasis added), quoting Neal v. State of Delaware, 103 U.S. 370 (1880) and Bush v. Kentucky, 107 U.S. 110 (1883).  Once again, unless a state law actually authorizes the denial of a civil right, Federal Courts must defer to State Courts to remedy alleged rights violations.

Finally, the Rachel Court discussed Kentucky v. Powers, 201 U.S. 1 (1906).  In Kentucky, a party sought removal on the eve of his allegedly politically motivated fourth trial, which followed his successful appeal of three prior guilty verdicts.  See Rachel, 86 S. Ct. at 1795.  As the Court noted, as the result of plaintiff's prior appellate success, the proponent of removal could obviously "enhance his prediction that rights would be denied by pointing to instances of illegality in the three prior proceedings."  Id.  Nevertheless, the Powers Court

---

[9]    As the Supreme Court explained in Rives, removal is warranted "[w]hen a statute of the State denies [a] right, or interposes a bar to [] enforcing it, in the judicial tribunals" because then "the presumption is fair that [State courts] will be controlled by it in their decisions."  In contrast,

> [W]hen a subordinate officer of the State, in violation of State law, undertakes to deprive an accused party of a right which the statute law accords to him . . . it can hardly be said that he is denied, or cannot enforce, 'in the judicial tribunals of the State' the rights which belong to him. *In such a case it ought to be presumed the court will redress the wrong."*

Rives, 100 U.S. at 322-23 (emphasis added).

rejected removal because the party cited to "*no state enactment that authorized the predicted denial,*" concluding that, under the Strauder-Rives doctrine, "no case for removal had been made out." Id. (emphasis added).

> **2.    *Rachel* Holds That Removal Is Warranted To Prevent A Defendant's Prosecution Under State Law Where There Is A Civil Right To Be Free From Any "Attempt To Punish"**

Working within Section 1443's historical framework, the Rachel Court held that "the narrow circumstances of th[at] case" could support a case for removal. 86 S. Ct. at 1796. In particular, the Rachel defendants alleged that they had refused to leave a public restaurant after the owners asked them to do so solely for racial reasons and, consequently, were prosecuted under a Georgia trespass statute. See id. at 1785 & 1796-97. Critically, the Civil Rights Act of 1964 not only afforded individuals the right to be free from racial discrimination at places of public accommodation, but also "immunized from prosecution" individuals exercising their rights under the Act. See id. at 1796-97. The Act prohibited any "attempt to punish" an individual exercising their rights under the Act. Id.

Thus, if the Rachel defendants could show that they had been asked to leave a restaurant for racial reasons, "the mere pendency of the prosecutions enables the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of [the] State' the right to be free of any 'attempt to punish' them for the protected activity." Id. at 1797. "The burden of having to defend the prosecutions is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964 as construed" by Supreme Court jurisprudence. Id.

The limited nature of the Rachel holding was immediately demonstrated by the Supreme Court's ruling in Peacock, which was decided on the same day. In that case, the defendants proposing removal alleged that they were charged with general criminal offenses, such as obstructing public streets, while they were engaged in civil rights activity. See 86 S. Ct.

19

at 1803 & 1811.  The Court rejected removal, holding that the difference between this case and

Rachel was "immediately apparent."  Id. at 1811.  In particular, "no federal law [invoked by the

defendants] confers immunity from state prosecution" for the charges leveled against them.  Id.

The Peacock Court held that removal under Section 1443(1) is only available

where an "explicit state or federal law" establishes that a defendant right's would "inevitably be

denied by the very act of bringing the defendant to trial in the state court":

> Under s 1443(1), the vindication of the defendant's federal rights
> is left to the state courts except in the rare situations where it can
> be clearly predicted *by reason of the operation of a pervasive and*
> *explicit state or federal law that those rights will inevitably be*
> *denied by the very act of bringing the defendant to trial in the*
> *state court.*

Id. at 1812 (emphasis added).  The Court distinguished Rachel "because the Civil Rights Act of

1964, in those narrow circumstances, 'substitutes a right for a crime.'"  Id.  at 1814.  That is to

say, the Civil Rights Act converted the subject crime (i.e., trespass) into a protected right under

the circumstances of that case.

Critically, the Peacock Court held that "the motives" for initiating a suit are

irrelevant because a defendant still ultimately may be able to vindicate its rights in State Court:

> It is not enough to support removal under s 1443(1) to allege or show that
> the defendant's federal equal civil rights have been illegally and corruptly
> denied by state administrative officials in advance of trial, that the charges
> against the defendant are false, or that the defendant is unable to obtain a
> fair trial in a particular state court. *The motives of the officers bringing the*
> *charges may be corrupt, but that does not show that the state trial court*
> *will find the defendant guilty if he is innocent, or that in any other manner*
> *the defendant will be 'denied or cannot enforce in the courts' of the State*
> *any right under a federal law providing for equal civil rights*. The civil
> rights removal statute does not require and does not permit the judges of
> the federal courts to put their brethren of the state judiciary on trial.

Id. at 1812 (emphasis added).

20

Thus, even though Mosdos is alleging that the instant action was brought solely to coerce or intimidate Mosdos from asserting its rights, this Court must respectfully assume that the State Courts will uphold Mosdos's rights, if any.

> **3.     The Second Circuit Confirms That Removal Is Only Warranted Where A Federal Statute Contains Explicit "Anti-Prosecution" Language**

The Second Circuit discussed the meaning of <u>Rachel</u> and <u>Peacock</u> in the context of an FHA claim in <u>People of the State of N.Y. v. Davis</u>, 411 F.2d 750 (2d Cir. 1969).  In that case, the proponent of removal, Davis, alleged that he was in an interracial marriage, and that his Department of Social Services case supervisor, among others, discouraged him from moving into a white neighborhood.  411 F.2d at 752.  Davis was subsequently charged with "menacing" under New York law when he threatened to "'put [a] rock right through [his case supervisor's] head if [he was] not taken off my case.'"  <u>Id.</u>  Relying on <u>Rachel</u>, Davis alleged that removal under Section 1443(1) was warranted because the case supervisor was coercing, intimidating, threatening or interfering with him within the meaning of FHA Section 3617 by initiating the prosecution.  <u>Id.</u> at 753.

The Second Circuit, in repeating Davis's argument, held that his case was distinguishable from <u>Rachel</u>. The Court found that in <u>Rachel</u>, "the conduct charged as a criminal offense, to wit, not leaving the restaurants on request, was alleged by the defendants to be the very activity in which the Civil Rights Act gave them a right to engage, namely, enjoyment of equal access to places of public accommodation."  <u>Id.</u> "In contrast, the Fair Housing Act confers no right to menace or assault anyone, including, persons who have allegedly demonstrated hostility to its purposes."  <u>Id.</u>

Significantly, the Second Circuit recognized that the <u>Peacock</u> Court had effectively rejected claims of prosecutorial "coercion" as a sustainable basis for removal.  <u>Id.</u> at

753.  The <u>Davis</u> Court understood that the <u>Peacock</u> Court had taken account of language in the Voting Rights Act of 1965, which parallels Section 3617 of the FHA, in holding that no federal laws cited by the defendants in that case justified removal, "even when, as was alleged there, that state prosecutions were intended to intimidate persons exercising their rights to vote or to encourage voting."  <u>Davis</u>, 411 F.2d at 753 & n.3.[10]

Accordingly, the Second Circuit held that <u>Rachel</u> and <u>Peacock</u> established that removal was not warranted where the only allegation was that the underlying action was "motivated by a desire to discourage the petitioner from exercising or to penalize him for having exercised a federal right:"

> The line is thus between prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the petitioner, and *prosecutions where the only grounds for removal are that the charge is false and motivated by a desire to discourage the petitioner from exercising or to penalize him for having exercised a federal right.*

<u>Davis</u>, 411 F.2d at 753.  Put another way, the Court held that the FHA had not rendered State criminal law unconstitutional even where it was used to bring baseless charges:

> [W]hereas the Civil Rights Act of 1964 had rendered Georgia's refusal to leave on demand statute unconstitutional in cases where the demand was racially motivated, the Fair Housing Act has not rendered New York's 'menacing' statute unconstitutional simply because the defendant claims that the prosecution is basely motivated and that he did not do what has been charged.

---

[10]    Specifically, the <u>Davis</u> Court recognized that the <u>Peacock</u> Court had considered Section 11(b) of the Voting Rights Act, which establishes that no one "shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person" in connection with their exercise of their rights under that Act. <u>Id.</u> at 753 n.3.  In doing so, the Second Circuit expressly stated that it did not agree with the majority opinion in <u>Whately v. City of Vidalia</u>, 399 F.2d 521 (5th Cir. 1968), which opined that the <u>Peacock</u> Court overlooked the "coercion" language in Section 11(b).  <u>Davis</u>, 411 F.2d at 753 n.3.  As such, so much of the decision in <u>Davis v. Glanton</u>, 107 F.3d 1044 (3d Cir. 1997) as relies on the distinction drawn in <u>Whately</u>, should carry no weight in the Second Circuit.

Id.[11]  Even if it were true, as Mosdos alleges, that Petitioners filed their SEQRA action solely to coerce it (which is absolutely inaccurate), this would not render SEQRA unconstitutional.  As such, respectfully, this Court must remand this matter to State Court to review Petitioners' SEQRA claims.  The Federal Court must operate under the assumption that, if necessary, the State Court would address any FHA violation in its proceeding.

  In Emigrant Savings Bank v. Elan Management Corp., 668 F.2d 671 (2d Cir. 1982), the Second Circuit held that the FHA could not sustain the removal of a foreclosure action, which was also allegedly improperly motivated.  The Second Circuit held that Rachel and Peacock only enabled removal where a statute contains "explicit anti-prosecution language:"

> Thus it seems clear that although the Court in Rachel and Peacock interpreted the permissible range of removal under s. 1443(1) to be slightly broader than that indicated in Strauder and Rives, the scope of the intended expansion was limited to statutes containing explicit anti-prosecution language, as was the case with s. 203(c) of the Civil Rights Act of 1964 in Rachel.

Emigrant Savings Bank, 668 F.2d at 674-75.  The Second Circuit rejected specifically any interpretation of Peacock that did not recognize that the Court in that case contrasted the

---

[11]  The Davis Court indicated removal under the FHA might only be warranted if a prosecution were initiated to enforce a racially discriminatory legal requirement:

> A true parallel [to the Rachel scenario] under the Fair Housing Act would be, for example, if Davis were being prosecuted under a statute forbidding tenancy by persons not approved by a majority of the dwellers in an apartment house and the removal petition alleged that the basis for disapproval was Davis' being a party to a mixed marriage. In such an instance, on the facts claimed by the defendant, § 804 of the Fair Housing Act would have substituted a federal right to occupy the apartment for what the state had branded as a crime.

411 F.2d at 753; see also People of State of N. Y. v. Horelick, 424 F.2d 697, 701 (2d Cir. 1969) (noting that the Davis Court "hypothesized that removal might be allowable if [Davis] were being prosecuted on racial grounds for the very fact of living in his apartment").  Thus, the FHA might support removal where a land use provision itself directly interfered with an African-American's ability to live in a premise for race-based reasons.

prohibition against punishment at issue in <u>Rachel</u> "with the prohibition against intimidation in other statutes." <u>Id.</u> at 675 n.4.[12]

Accordingly, the Court, again, rejected the argument that removal was warranted under FHA Section 3617 because the foreclosure action was improperly motivated.  <u>Id.</u> at 675-76.  The Court held that this "argument ignores the distinction drawn in <u>Peacock</u> between the 'punish or attempt to punish language of [the Act at issue in <u>Rachel</u>] and language which speaks of coercion, intimidation, etc." <u>Id.</u>, <u>citing</u> <u>Peacock</u>, 86 S. Ct. at 1812 & n 25.

As such, Mosdos cannot meet its burden of establishing Federal Jurisdiction by relying on FHA Section 3617.

C.    **The Eleventh Circuit's Decision In** *Sofarelli*
      <u>**Lacks Any Substantive or Legal Bases**</u>

Significantly, the parties in   <u>Sofarelli v Pinellas County</u>, 931 F.2d 718, 724-25 (11th Cir 1991), did "not dispute that [the] allegation [in the defendant's counterclaim] f[ell] within the United States Supreme Court's holding in [<u>Rachel</u>]."  As such, that case contains no analysis of the propriety of removing a claim under the FHA based on allegations of coercion.  It also provides far too superficial a basis to overlook the clear holdings of the Supreme Court and the Second Circuit relevant to this matter.

As set forth, *supra*, the Supreme Court and the Second Circuit have clearly established that removal under Section 1443(1) is not warranted where the only allegation is that a State Court prosecution was initiated solely to coerce or harass the defendants, assuming that was even accurate here.   State Courts must be provided with the opportunity to affirm

---

[12]    The Second Circuit rejected the Fifth Circuit's decision in <u>Whately</u>.  Once again, so much of the Third Circuit's decision in <u>Davis v. Glanton</u> as relies on the discussion of the "coercion" language in <u>Whately</u> should be ignored in the Second Circuit.

defendants' civil rights in the first instance.  To the extent <u>Sofarelli</u> contradicts this premise, it must be disregarded.

## **CONCLUSION**

For all the foregoing reasons, Petitioners respectfully seek an Order (i) remanding the action back to the New York State Supreme Court, Westchester County, (ii) granting such other relief as this Court deems just and proper, and (iii) in the event removal is granted, scheduling a pre-motion conference in connection with a proposed Motion for Costs and/or Sanctions pursuant to 28 U.S.C.A. Section 1447(c).  <u>See</u> <u>Circle Indus. USA, Inc. v. Parke Constr.</u> <u>Group, Inc.</u>, 183 F.3d 105, 109 (2d Cir. 1999) (holding that the "goal [of § 1447(c)] is to deter improper removal . . . [since] [r]emoval is done *ex parte* and without need of a court order").

Dated:  November 30, 2007
      White Plains, New York

                ZARIN & STEINMETZ

By:   S/ _____
        Michael D. Zarin (MDZ-6692)
        Daniel M. Richmond (DMR-2652)
        Jody T. Cross (JTC-1433)
        *Attorneys for Petitioners*
        81 Main Street, Suite 415
        White Plains, New York 10601
        (914) 682-7800