UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE | : |
| VILLAGE OF MONTEBELLO, THE VILLAGE | |
| OF POMONA, THE VILLAGE OF WESLEY HILLS, | : |
| MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : |
| | |
| Petitioners/Plaintiffs, | : |
| | |
| - against - | : |
| | 07-CV-9278 (KMK) |
| THE TOWN OF RAMAPO, THE TOWN | : |
| BOARD OF THE TOWN OF RAMAPO, THE | **ECF CASE** |
| PLANNING BOARD OF THE TOWN OF | : |
| RAMAPO, YESHIVA CHOFETZ CHAIM OF | |
| RADIN, SCENIC  DEVELOPMENT, LLC, and THE | : |
| BOARD OF APPEALS OF THE TOWN OF RAMAPO, | |
| and MOSDOS CHOFETZ CHAIM, INC., | : |
| | |
| Respondents/Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF PETITIONERS' MOTION FOR REMAND</u>**

ZARIN & STEINMETZ
81 MAIN STREET, SUITE 415
WHITE PLAINS, NEW YORK 10601
(914) 682-7800

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

REPLY STATEMENT OF FACTS ................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.     PROCEDURAL FLAWS NECESSITATE REMAND ............................................. 1

     A.     Mosdos Is Bound By Its Predecessor's Actions ............................................. 1

     B.     Mosdos's Removal Petition Is Untimely ....................................................... 3

          1.     Service Upon Mosdos Relates Back To The 2004 ............................ 3

          2.     Removal Is Flawed Under The Rule Of Unanimity ......................... 4

          3.     Mosdos's Bad Faith Cannot Be Rewarded By Equity ....................... 5

II.     MOSDOS'S REMOVAL DOES NOT SATISFY SECTION 1443(1) ..................... 6

     A.     Mosdos's Effort To Impugn Petitioners' Motives Is Irrelevant ..................... 7

     B.     RLUIPA Lacks "Anti-Prosecutorial" Language ............................................ 8

     C.     Mosdos's Project Must Be Subject To Unbiased Environmental Review ....... 9

CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>ABF Freight System, Inc. v. N.L.R.B.</u>, 510 U.S. 317,
    114 S. Ct. 835 (1994)................................................................................ 5

<u>Brown v. Demco, Inc.</u>, 792 F.2d 478 (5th Cir. 1986)................................................ 5, 6

<u>Buran v. Coupal</u>, 87 N.Y.2d 173, 638 N.Y.S.2d 405 (1995)................................... 3

<u>Burr ex rel. Burr v. Toyota Motor Credit Co.</u>,
    478 F. Supp. 2d 432 (S.D.N.Y. 2006)........................................................ 4

<u>City of Greenwood v. Peacock</u>, 384 U.S. 808, 86 S. Ct. 1800 (1966).................... 7, 8, 9

<u>Coca-Cola Bottling Co. v. Bd. of Estimate of N.Y.</u>, 72 N.Y.2d 674,
    536 N.Y.S.2d 33 (1988)............................................................................ 10

<u>Codapro Corp. v. Wilson</u>, 997 F. Supp. 322 (E.D.N.Y. 1998) ............................... 4

<u>David v. Hooker, Ltd.</u>, 560 F.2d 412 (9th Cir. 1977) ............................................. 3

<u>Emigrant Savings Bank v. Elan Mgt. Corp.</u>, 668 F.2d 671 (2d Cir. 1982)............ 8

<u>Glatzer v. Hanley</u>, 2007 WL 1334971 (S.D.N.Y. 2007) ........................................ 4, 5

<u>Holland v. Williams Mt. Coal Co.</u>, 496 F.3d 670 (D.C. Cir. 2007)........................ 2

<u>In re Bell</u>, 53 F. Supp. 993 (E.D.N.Y. 1943) ........................................................ 3

<u>Marano Enterprises of Kansas v. Z-Teca Restaurants</u>,
    254 F.3d 753 (8th Cir. 2001) ................................................................... 6

<u>Midrash Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d 1214 (11th Cir. 2004)...... 9, 10

<u>N.Y. v. Davis</u>, 411 F.2d 750 (2d Cir. 1969) ........................................................ 7, 8, 9

<u>Northside Realty Associates, Inc. v. Chapman</u>,
    411 F. Supp. 1195 (N.D. Ga. 1976)........................................................ 7

<u>PenneCom B.V. v. Merrill Lynch & Co., Inc.</u>, 372 F.3d 488 (2d Cir. 2004) ........ 5

<u>Poulard v. Papamihlopoulos</u>, 254 A.D.2d 266,
    678 N.Y.S.2d 383 (2d Dep't 1998)......................................................... 4

Pyramid Co. v. Planning Bd. of Watertown, 24 A.D.3d 312,
    807 N.Y.S.2d 243 (4th Dept. 2005), leave to appeal dismissed,
    7 N.Y.3d 803, 821 N.Y.S.2d 810 (2006) ................................................................ 1

Shapiro v. U.S., 335 U.S. 1, 68 S. Ct. 1375 (1948) ................................................ 2

Sofarelli v Pinellas County, 931 F.2d 718 (11th Cir 1991) .................................... 7

State of Georgia v. Rachel, 384 U.S. 780, 86 S. Ct. 1783 (1966) ......................... 7, 8

Westchester Day School. v. Mamaroneck, 504 F.3d 338 (2d Cir. Oct 17, 2007) ................. 8, 9

Whatly v. City of Vidalia, 399 F.2d 521 (5th Cir. 1968) ........................................ 7, 8

## FEDERAL STATUTES

28 U.S.C.A. § 1443(1) ............................................................................................. 6, 7

28 U.S.C.A. § 1447(c) ............................................................................................. 1, 10

42 U.S.C.A. § 2000cc(a)(1) ..................................................................................... 9

42 U.S.C.A. § 2000cc(a)(1)(B) ................................................................................ 9

## NEW YORK STATUTES

N.Y. C.P.L.R. § 203(b) ............................................................................................ 3

N.Y. C.P.L.R. § 305 ................................................................................................. 3

N.Y. C.P.L.R. § 1018 ............................................................................................... 3

## NEW YORK REGULATIONS

6 N.Y.C.R.R. § 617.3(a) .......................................................................................... 10

6 N.Y.C.R.R. § 617.7(a)(1) ...................................................................................... 10

## MISCELLANEOUS

67A C.J.S. Parties § 84 ............................................................................................ 2

Petitioners/Plaintiffs ("Petitioners"), by their attorneys, Zarin & Steinmetz, submit this Reply Brief in further support of their Motion to Remand pursuant to 28 U.S.C.A. § 1447(c).

## REPLY STATEMENT OF FACTS

There are numerous factual misstatements and inaccuracies in Mosdos's Memorandum (the "Mosdos Mem."). Those relevant to this Motion are addressed below.

First, Mosdos states that "[t]here is no readily available alternative site [to the Nike Site] with *existing facilities* that will accommodate [its] purpose without significant interruption of its mission." (Mosdos Mem. at 4 (emphasis added)). The only reason there are "existing facilities" on the Nike Site is because Mosdos, *at its own risk*, continued all-out to construct its project during the pendency of this litigation.

Moreover, Mosdos's improper attempt to insert what would essentially amount to a Motion to Dismiss on grounds of mootness is improper on this Motion. (See Mosdos Mem. at 5-7). In any event, Petitioners have inoculated themselves from claims of mootness by diligently pursuing injunctive relief throughout this litigation.[1]

## ARGUMENT

## POINT I.

## PROCEDURAL FLAWS NECESSITATE REMAND

### A.    Mosdos Is Bound By Its Predecessor's Actions

Mosdos contends that it is not bound by the Remand Order since "a transferee of property *need not be* a successor-in-interest to all that possessed by the transferor." (Mosdos Mem. at 19 (emphasis added)). Mosdos was added as a party to this action by operation of a

---

[1]    Petitioners sought injunctive relief at the inception of this action. Although they were initially dismissed from the action, they were reinstated by the Second Department on August 14, 2007. At no time did Petitioners, as Mosdos improperly contends, "abandon[] their request for injunctive relief," which they were finally able to obtain on September 11, 2007. (See Mosdos Mem. at 6). Compare Pyramid Co. v. Planning Bd. of Watertown, 24 A.D.3d 312, 807 N.Y.S.2d 243 (4th Dept. 2005), leave to appeal dismissed, 7 N.Y.3d 803, 821 N.Y.S.2d 810 (2006) (appeal was not moot where petitioners "ha[d] attempted to maintain the status quo at multiple junctures of the proceeding").

transfer of interest in the subject Nike Site from Yeshiva to Mosdos.  Thus, as "a substituted party[, Mosdos] takes up the case where [its] predecessor left it . . . ."  67A C.J.S. Parties § 84 (following substitution, "the case is the same as if the substituted defendant had been originally named").  Mosdos stepped into the shoes of Yeshiva, and is bound by the Remand Order.

Notably, in Holland v. Williams Mt. Coal Co., 496 F.3d 670, 672 (D.C. Cir. 2007), cited by Mosdos, the Court held a "party simply acquiring property of a firm in an arm's length transaction . . . does not become the selling firm's 'successor in interest.'"  Id. at 672.  Mosdos's acquisition of the Site can hardly be said to have been "at arms length."  It was a transfer of property to *an affiliate* in the wake of a Chapter 11 bankruptcy reorganization.[2]

Mosdos cites the December 10, 2004 Remand Order, which states that Yeshiva "will not seek removal of this action or any part thereof . . . provided that no *new Respondents/Defendants are added to this action*."  (Mosdos Mem. at 18 (emphasis added)).  Mosdos posits that this is a reference to "parties who are brought in as a result of a purchase of the property – like Mosdos."  (Mosdos Mem. at 19-20).  At the commencement of this action, the owners of only two of the four Sites on which the Town contends the Adult Student Housing Law would apply had filed a land use application and/or initiated development activities under the new Law.  The intent of the Order was to not preclude potential "new parties" related to the remaining two Sites from seeking removal since they were not yet named in the case.[3]

---

[2]    Indeed, Mosdos concedes that the entities involved in the transfer of the Nike Site all have "some level of affiliation," and although "independent of each other, with different directors, trustees and corporate purposes . . . there is some overlapping."  (Mosdos Mem. at 18-19).

[3]    Cf. Shapiro v. U.S., 335 U.S. 1, 68 S. Ct. 1375, 1391 (1948) (discussing the "well-settled doctrine of this Court to read a statute, assuming that it is susceptible of either of two opposed interpretations, in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen").  Alternatively, it would not be strained to speculate that Yeshiva's counsel added that clause because it already anticipated transferring the Site to its affiliate.  Yeshiva was in the midst of a bankruptcy restructuring filed a year before this action.

2

Finally, Mosdos states that pursuant to the Reorganization Plan, the Nike Site was "transferred free and clear of all claims, liens and encumbrances."  (Mosdos Mem. at 20 (emphasis removed)).  Mosdos argues that if "[Yeshiva]'s consent to the [Remand] Order constituted an encumbrance of the interest transferred (the land), it was wiped out by the Order confirming [Yeshiva]'s Chapter 11 Plan of Reorganization."  (Mosdos Mem. at 20).

The Remand Order was incapable of being "wiped out" by a Bankruptcy Court pursuant to Chapter 11.  A Bankruptcy proceeding cannot discharge orders issued by a court prior to the filing of the Bankruptcy Petition.  See, e.g., David v. Hooker, Ltd., 560 F.2d 412, 418 (9th Cir. 1977) (holding that a bankruptcy proceeding "does [not] deprive [another] court of jurisdiction over the matter"); In re Bell, 53 F. Supp. 993 (E.D.N.Y. 1943) (holding that filing for bankruptcy does not relieve bankrupt party of another court's contempt order).

**B.    Mosdos's Removal Petition Is Untimely**

**1.    Service Upon Mosdos Relates Back To The 2004**

Mosdos was added to this action at its own request, and at the discretion of the State Court pursuant to N.Y. C.P.L.R. Section 1018.  Mosdos was not joined as a "new party."[4] The addition of Mosdos as a party "relates back" to the commencement of the action.

Under the relation back doctrine, three conditions must be satisfied in order for claims against one defendant to relate back to claims asserted against another.  See Buran v. Coupal, 87 N.Y.2d 173, 638 N.Y.S.2d 405 (1995) (citation omitted).  The first prong of the test – that the claims arise out of the same occurrence – is easily satisfied. The amended pleading

---

[4]    Mosdos was added to this action by service of an *Amended* – not Supplemental – Summons and Notice of Petition.  It is black letter law that New York's relation back doctrine allows a claim asserted against a defendant in an *amended* filing to relate back to claims previously asserted against a codefendant for Statute of Limitations purposes where the two defendants are "united in interest." N.Y. C.P.L.R. § 203(b).  Since Mosdos purchased the Property long after the Statute of Limitations ran, it could not have been added by supplemental pleadings.  See N.Y. C.P.L.R. § 305.

3

served on Mosdos was identical to the pleading served on Yeshiva on December 23, 2004, with the only exception being that Mosdos was added to the caption.

The second prong – a unity in interest between the parties – is also easily satisfied here, since "the interest of the parties in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other." Poulard v. Papamihlopoulos, 254 A.D.2d 266, 678 N.Y.S.2d 383 (2d Dep't 1998). Yeshiva had been the intended developer of the Nike Site, and now Mosdos, its affiliate, is the developer. They are united in interest. (See Petitioners' Moving Mem. at 11). The third prong – that the party knew or should have known the action would have been brought against it – has also been established. Mosdos was well aware of the pending litigation when it purchased the Nike Site in December 2005.

### 2.    Removal Is Flawed Under The Rule Of Unanimity

Under the "rule of unanimity," "for removal to be effective in a case where there are multiple defendants, all defendants must join in seeking removal or consent thereto in a timely manner." Glatzer v. Hanley, 2007 WL 1334971, *2 (S.D.N.Y. 2007) "'Failure of any defendant to provide its written consent within the applicable thirty-day period renders the petition for removal untimely.'" Id. (citation omitted).

Even if "all of the Defendants have indicated to Mosdos that they support the removal" (Mosdos Mem. at 23), "[i]t is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf." Burr ex rel. Burr v. Toyota Motor Credit Co., 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006). "Each [defendant] must independently and unambiguously file notice of [ ] consent and [ ] intent to join in the removal." Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (E.D.N.Y. 1998) (citation omitted).

Petitioners have received copies of correspondence sent to the Court from the Municipal Respondents[5] and Yeshiva in support of Mosdos's removal of this action. Petitioners are unaware of the receipt by the Court of any consent from Respondent/Defendant Scenic Development, LLC. Accordingly, it appears that there is no unanimous consent. Thus, removal was untimely, and must fail on this ground alone.

### 3.    Mosdos's Bad Faith Cannot Be Rewarded By Equity

Mosdos argues that that this Court should apply the "last-served" rule rather than the "first-served" rule to determine whether removal to Federal Court was timely. (Mosdos Mem. at 21-23). Mosdos bases its argument on the "inequity of foreclosing the later-served defendant's right to removal merely because it was not served concurrently." (Id. at 22). Mosdos is not entitled to the more equitable "last-served" rule, since it comes to the Court with unclean hands. (See Petitioners' Moving Brief at 13-14).

In Glatzer v. Hanley, cited by Mosdos (see Mosdos Mem. at 22), the Court applied the last-served rule, reasoning that such a rule "is more equitable, as it ensures that the last-served defendant is not deprived of the procedural right to remove, and comports more with the plain language of § 1446." Glatzer, 2007 WL 1334971, *2 (S.D.N.Y. May 8, 2007). A party cannot, however, knowingly sit idly by for more than two years, only to surface for the purpose of forum shopping following an unfavorable decision from the State Appellate Division:[6]

> To permit the defendants in this case to obtain removal after they have tested state-court waters for four years would give them a second opportunity to forum-shop and further delay the progress of

---

[5]    Although correspondence was sent by the Town, it simply stated that while "it appears that a federal forum would be appropriate," the Town "offer[ed] no substantive response to the Petitioners' challenge to removal." This is hardly "*unambiguous* consent" to removal of this action.

[6]    "New York courts have long applied the maxim that one 'who comes to equity must come with clean hands.'" PenneCom B.V. v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004) (citation omitted). "The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" ABF Freight System, Inc. v. N.L.R.B., 510 U.S. 317, 114 S. Ct. 835, 842 (1994) (citations omitted).

the suit. *The unfairness of this to the plaintiff outweighs the unfairness, if any, to the last-joined defendant*. The forum for a suit ought to be settled at some time early in the litigation.

Brown v. Demco, Inc., 792 F.2d 478, 482 (5th Cir. 1986) (emphasis added).

Marano Enterprises of Kansas v. Z-Teca Restaurants, 254 F.3d 753 (8th Cir. 2001), also cited by Mosdos, distinguished Brown and discussed the basis for equitably applying the last-served rule. The Eighth Circuit stated:

> [I]t was the responsibility of the plaintiff to identify – and to serve – *all* the defendants. If a plaintiff does not get that done until the case has been litigated for four years, then the unfairness is arguably to the last-served defendant who is not allowed thirty days to remove the case, not to the plaintiff.

Marano, 254 F.3d at 755 n.3 (emphasis in original).

The facts and circumstances of this action clearly demonstrate that the equities here are squarely within the reasoning of Brown and *not* Marano. Petitioners served all the Respondents at the commencement of the litigation. Mosdos and Yeshiva intentionally withheld disclosure of the transfer of the Site until three years into the litigation – after a full opportunity to test the State Court waters. Accordingly, Mosdos should not be rewarded for its bad faith to the detriment of Petitioners, who have been litigating this matter in State Court for three years.

## POINT II.

## MOSDOS'S REMOVAL DOES NOT SATISFY SECTION 1443(1)

Mosdos relies almost exclusively on the Religious Land Use and Institutionalized Persons Act ("RLUIPA") as the basis for removal under Section 1443(1). Apparently referring to the New York State Environmental Quality Review Act ("SEQRA"), Mosdos argues that "the use of a State Statute to undermine a religious entity's ability to use its facility is clearly contrary to the policy behind RLUIPA." (Mosdos Mem. at 14). Mosdos posits that "[i]t is Plaintiffs' intent to use the judicial process . . . in order to undermine the Federal Law and policy that gives rise to Mosdos's ability to remove this case to the Federal Court." (Id.).

6

### A.    Mosdos's Effort To Impugn Petitioners' Motives Is Irrelevant

Mosdos's first error is that a party's motives for initiating a suit are irrelevant to Section 1443(1).  (See Petitioners' Moving Mem. at 20).  Removal is not warranted where the only purported grounds "are that the charge is false and motivated by a desire to discourage the petitioner from exercising or to penalize him for having exercised a federal right."  N.Y. v. Davis, 411 F.2d 750, 753 (2d Cir. 1969).  Respectfully, the Federal Courts must assume that the State Courts will uphold any federal rights a defendant may have; intent is irrelevant.  City of Greenwood v. Peacock, 384 U.S. 808, 86 S. Ct. 1800, 1812 (1966).

To the extent that Sofarelli v Pinellas County, 931 F.2d 718 (11th Cir 1991) would justify removal based on Mosdos's "belief that the Plaintiffs are using the State Court system as a vehicle to coerce, intimidate, deter or deprive [Mosdos's] students from moving into Kiryas Radin," it must be ignored.  (Mosdos Mem. at 14.)  The Second Circuit has repeatedly rejected claims of "coercion" as a basis for removal, even where the federal statute has "anti-coercion" language.  (Petitioners' Moving Mem. at 21-24).[7]

In reaching this conclusion, the Second Circuit has expressly rejected the Sofarelli's jurisprudential basis.  Sofarelli relied on Northside Realty Associates, Inc. v. Chapman, 411 F. Supp. 1195 (N.D. Ga. 1976) for the proposition that "removal under § 1443 is proper when a lawsuit filed in state court is itself the act by which the movant's civil rights are violated."  Sofarelli, 931 F.2d at 726.  Northside, in turn, relied on Whatly v. City of Vidalia, 399 F.2d 521 (5th Cir. 1968), which held that "anti-coercion" language "brought [an] action within the narrow exception of Rachel so that the mere bringing of the action in state court would deny these defendants their federally protected right."  See 411 F. Supp. at 1199.

---

[7]    Notably, RLUIPA does not even contain "anti-coercion" language, such as is in the FHA.

Critically, <u>Whatly</u> interpreted footnote 25 of the <u>Peacock</u> decision very differently than the Second Circuit has.  In that footnote, <u>Peacock</u> noted that "[n]one of the federal statutes invoked by the defendants in [that] case contains" language that might "confer immunity from state prosecution."  86 S. Ct at 1812 & n. 25.    <u>Whatly</u> held that in this footnote the <u>Peacock</u> Court was not distinguishing "anti-coercion" language in a federal statute from the sort of  "anti-prosecution" language that the <u>Rachel</u> Court held could sustain removal.  <u>See</u> 399 F.2d at 522-23.   The Second Circuit, in contrast, "reject[ed] [<u>Whatly</u>] as not a fair reading of <u>Peacock</u>," and held that <u>Peacock</u>  drew just such a distinction.  <u>Emigrant Savings Bank v. Elan Mgt. Corp.</u>, 668 F.2d 671, 675 n. 4 (2d Cir. 1982); <u>see</u> also <u>Davis</u>, 411 F.2d at 753 n.3.[8]

**B.    RLUIPA Lacks "Anti-Prosecutorial" Language**

Mosdos's argument is also flawed because RLUIPA contains no "anti-prosecution" language.  In <u>State of Georgia. v. Rachel</u>, 384 U.S. 780, 792, 86 S. Ct. 1783 (1966), the Supreme Court held that removal might be proper where a federal law explicitly prohibited any "attempt to punish" an individual exercising her rights under the law.  Even assuming Mosdos's project were covered by RLUIPA,[9] nothing in that Act would immunize Mosdos from having to defend Article 78 challenges to its land use approvals.[10]

---

[8]       As such, in <u>Davis</u>, the Second Circuit recognized that the Supreme Court rejected removal "even when [the] state prosecutions were intended to intimidate persons exercising their rights to vote or to encourage voting," and the federal statute at issue contained "anti-coercion" language.  <u>Davis</u>, 411 F.2d at 753 & n.3.  In <u>Emigrant Savings Bank</u>, the Court rejected the removal of a purportedly racially motivated foreclosure action because it "ignore[d] the distinction drawn in <u>Peacock</u> between the 'punish or attempt to punish language . . . and language which [only] speaks of coercion, intimidation, etc." 668 F.2d 671, 675-76 (2d Cir. 1982), <u>citing</u> <u>Peacock</u>, 86 S. Ct. at 1812 & n 25.

[9]       The primary purpose of Mosdos's project is for housing.  Approximately 90% of Site would be used for its 60-unit housing project, with only 10% for purported religious use.  The fact that this housing might be affiliated with a religious institution does not automatically trigger RLUIPA.  <u>See</u> <u>Westchester Day School. v. Mamaroneck</u>**,** 504 F.3d 338, 348(2d Cir. Oct 17, 2007) (to be covered by RLUIPA, "proposed facilities [must be] for a religious purpose rather than simply [being] religiously-affiliated").

[10]      Mosdos's misstates the meaning of the hypothetical posed by the <u>Davis</u> Court in asserting that it would sustain removal "if Mosdos and its property is the subject of this lawsuit because the Plaintiffs are proceeding on racial grounds."  (Mosdos Mem. at 16).  In fact, the <u>Davis</u> hypothetical would only justify

Moreover, there is no way for Mosdos to state a RLUIPA claim against the Villages under the facts of this case. RLUIPA's prohibitions are directed exclusively at the "impos[ition] or implement[ation] [of] land use regulation[s]" by "government[s]." 42 U.S.C.A. § 2000cc(a)(1). The subject SEQRA determinations were implemented by the Town of Ramapo, not Petitioners. Petitioners are only challenging the adequacy of the SEQRA determinations.[11]

The only way the Court could hold that Petitioners' Article 78 challenge violates RLUIPA would be by improperly predicting that the State Court would impose a remedy that would violate RLUIPA. As the Supreme Court has held, "[t]he civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." Peacock, 86 S. Ct. at 1812. Once again, the Federal Court must, respectfully, assume that the State Court would uphold any rights Mosdos has under RLUIPA.

### C.    Mosdos's Project Must Be Subject To Unbiased Environmental Review

Mosdos's argument also ignores that, like any other land use applicant, it is subject to ordinary land use review laws, such as SEQRA. Mosdos fails to even mention the Second Circuit's most recent decision on RLUIPA. In Westchester Day School, the Second Circuit reaffirmed that "the Supreme Court has held that generally applicable burdens, neutrally imposed, are not 'substantial.'" 504 F.3d at 350. As such, religious institutions, such as Mosdos, cannot "demonstrat[e] substantial burden in the neutral application of legitimate land use restrictions" under RLUIPA. Id.; see also Midrash Sephardi, Inc. v. Town of Surfside, 366

---

removal if a prosecution were initiated to *enforce* a racially discriminatory legal requirement. (Petitioners' Moving Mem. at 23 n.11). Thus, if the Town has imposed a discriminatory mitigation measure, and then sued to enforce it, Mosdos might have been able to remove its case to Federal Court.

[11]    Even if RLUIPA could be construed to apply to the Villages as Petitioners, the Villages' lawsuit would not violate RLUIPA since it is the "least restrictive means of furthering [the Villages'] compelling governmental interest[s]." See 42 U.S.C.A. § 2000cc(a)(1)(B). An Article 78 Petition is the only way the Villages can challenge a SEQRA review, which ignored their environmental interests.

F.3d 1214, 1227 n. 11 (11th Cir. 2004) (holding that "reasonable "run of the mill" zoning considerations do not constitute substantial burdens on religious exercise").

SEQRA requires all governmental agencies to consider the environmental consequences of any discretionary decision they make.  Coca-Cola Bottling Co. v. Bd. of Estimate of N.Y., 72 N.Y.2d 674, 536 N.Y.S.2d 33, 35 (1988); see also 6 N.Y.C.R.R. § 617.3(a) (establishing that no governmental agency "may undertake, fund or approve [an] the action until it has complied with" SEQRA).  SEQRA requires an environmental impact statement for any action that "*may*" have a significant effect on the environment.  6 N.Y.C.R.R. § 617.7(a)(1).

This case involves an action that should, under any standard, require an EIS.  It involves a major rezoning, which allows a significant increase in multi-family density in predominantly single-family neighborhoods.  It poses multiple potential significant adverse impacts, including, to neighborhood character, traffic, and other areas of concern under SEQRA. Respondents cannot seriously argue this is religiously motivated.  Respondents must comply with the legitimate land use review laws that are applicable to all applications of this magnitude.

### CONCLUSION

Petitioners respectfully seek an Order (i) remanding the action back to the New York State Supreme Court, Westchester County, (ii) granting such other relief as this Court deems just and proper, and (iii) in the event remand is granted, scheduling a pre-motion conference for a Motion for Costs and/or Sanctions pursuant to 28 U.S.C.A. Section 1447(c).

Dated:  December 28, 2007                              ZARIN & STEINMETZ
      White Plains, New York

                                         By:    S/_____
                                              Michael D. Zarin (MDZ-6692)
                                              Daniel M. Richmond (DMR-2652)
                                            Jody T. Cross (JTC-1433)
                                          *Attorneys for Petitioners*
                                            81 Main Street, Suite 415
                                            White Plains, New York 10601
                                            (914) 682-7800