**Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE OF MONTEBELLO, THE VILLAGE OF POMONA, THE VILLAGE OF WESLEY HILLS, JAY B. ROSENSTEIN, ROBERT MOSKOWITZ, MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : : : : | Index No. 04-16876 Assigned Judge: Hon. Francis A. Nicolai |

Petitioners/Plaintiffs,            :

- against -                        :            AMENDED VERIFIED
                                                PETITION
THE TOWN OF RAMAPO, THE TOWN      :            AND COMPLAINT
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF     :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC  DEVELOPMENT, LLC, and THE   :
BOARD OF APPEALS OF THE TOWN OF RAMAPO,
                                   :
Respondents/Defendants.
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


Petitioners/Plaintiffs the Village of Chestnut Ridge, the Village of Montebello, the

Village of Pomona, and the Village of Wesley Hills (collectively, the "Villages"), by their

attorneys, Zarin & Steinmetz, and Jay B. Rosenstein, Robert Moskowitz, Milton B. Shapiro and

Dr. Sonya Shapiro (collectively with the Villages, the "Petitioners/Plaintiffs"), by their attorneys

Ross & Gess, Attorneys, P.C., as and for their Amended Verified Petition and Complaint herein,

respectfully allege, as follows:

## SUMMARY OF ACTION

1.      Petitioners/Plaintiffs bring this hybrid action against the Town of Ramapo

and the Town Board of the Town of Ramapo (collectively, the "Town" or "Ramapo") to have the

Town's recently enacted Adult Student Housing Law declared void and unconstitutional.

2.     Petitioners/Plaintiffs seek, among other things, a determination pursuant to CPLR Article 78 that the Town Board's environmental review of the Adult Student Housing Law was arbitrary, capricious and an abuse of discretion under the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Envtl. Conserv. Law § 8-0101, et seq.

3.     Petitioners/Plaintiffs also seek a determination that the Town Planning Board's issuance of a negative declaration for its first Adult Student Housing site plan application located on a site in the Town of Ramapo (the "Nike Site") was arbitrary, capricious and an abuse of discretion under SEQRA.

4.     On or about January 29, 2004, the Town adopted a Comprehensive Plan, following completion of a Generic Environmental Impact Statement of the Comprehensive Plan. The Comprehensive Plan proposed a series of major zoning changes in areas throughout the unincorporated portion of the Town.   These changes involved primarily the rezoning of residential districts to significantly increased density, and to convert certain non-residential districts to higher density residential districts.

5.     On or about May 27, 2004, Petitioner/Plaintiff Villages, together with the Villages of Airmont, Suffern and Sloatsburg, commenced a lawsuit against the Town in the Supreme Court of New York, Westchester County, Index No. 04-08424 ("Ramapo I").  Ramapo I, which is still pending, was brought pursuant to Article 78 of the Civil Practice Law and Rules, seeking to annul, vacate and set aside the Resolution adopting the Comprehensive Plan and SEQRA Findings of even date, on the grounds that the Town violated SEQRA.

6.     In Ramapo I, the Petitioner Villages asserted that the Town violated SEQRA by failing to take the required "hard look" at the potential impacts of the Comprehensive Plan, failing to consider reasonable alternatives to the adoption of the Comprehensive Plan,

improperly deferring analysis and resolution of impacts to the infrastructure, especially traffic, sewage, water and school systems, for review at a later time, and improperly segmenting review of known projects related to and dependent on the zoning changes set forth in the Comprehensive Plan.

7.      Indeed, the Town Supervisor had stated on various occasions that the rezonings contemplated under the Comprehensive Plan would be proposed, studied and enacted in a comprehensive manner, not individually or in piecemeal fashion, so that their entire impact could be properly evaluated.

8.      Yet, at the Town's first opportunity to follow through on these representations, on or about June 15, 2004, the Town proposed and enacted a zoning law allowing significantly higher density residential development throughout the Town, in a piecemeal fashion, without fully analyzing the environmental impacts from this zoning law and without studying it in conjunction with the other proposed rezonings.

9.      The first zoning law enacted was the Adult Student Housing Law, Local Law No. 9-2004 ("Adult Student Housing Law"), permitting married adult student multi-family high-density housing in most single-family residential zones throughout the unincorporated portion of the Town of Ramapo.  (See generally Adult Student Housing Law, Exh. "1").   This new high-density housing was to be allowed as an "accessory use" to a post-secondary educational institution so long as the educational institution occupies only ten (10) per cent of the site.

10.     The substantial increase in development proposed under the Adult Student Housing Law would be located directly abutting Petitioners/Plaintiffs' borders, and would have significant potential adverse impacts on the character and/or infrastructure of the petitioning

3

communities, including the straining of already overburdened water supply and sewage systems, severe increases in traffic generation, and substantial increases in population and density.

11.    Yet, the Town determined in issuing a determination of non-significance under SEQRA that the Adult Student Housing Law would not result in even <u>one</u> potential significant environmental impact, avoiding the need to prepare an environmental impact statement as required by law.

12.    In its haste to enact the Adult Student Housing Law, as well as expedite various higher density development proposals already pending before the Law was even enacted, the Town simply ignored and failed to examine adequately any of the obvious potential environmental impacts the Law would have on Petitioners/Plaintiffs and their related communities.

13.    The Town also failed to provide a reasoned elaboration to support its Negative Declaration, as well as improperly delegated its decision-making responsibilities under SEQRA to its consultant.

14.    The Town also improperly segmented its review by deferring its analysis of the potential impacts from specific, definitive project proposals for married adult student multi-family housing before the Town at the time it enacted its Adult Student Housing Law.

15.    In particular, at the time the Town was considering the Adult Student Housing Law, there was already a pending application by Respondent/Defendant Yeshiva Chofetz Chaim for a sixty (60) unit housing development, which would increase the housing density at that site by over 750%.

16.    Shortly following the enactment of the Adult Student Housing Law, Respondent/Defendant Yeshiva Chofetz Chaim resubmitted its site plan application to

Respondent/Defendant Town Planning Board for the same project at a site known as the Nike Site.

17.    Shortly thereafter, in order to enact the additional zoning provisions proposed in the Comprehensive Plan, which were not otherwise enacted as part of the Adult Student Housing Law, the Town issued a "Draft Supplemental Environmental Impact Statement Assessing Comprehensive Plan Recommendations" and proposed new Comprehensive Zoning Law.

18.    While Respondent/Defendant Chofetz Chaim's application was pending before the Town under the recently enacted Adult Student Housing Law, the Town completed its environmental review of the new Comprehensive Zoning Law, which supposedly incorporated, inter alia, the Adult Student Housing Law as Section 376-1215.

19.    Contrary to any after-the-fact representations the Town may assert, the Town's supplemental environmental review relating to the enactment of its new Comprehensive Zoning Law failed to cure – let alone address – the deficiencies in the Town's previously issued negative declaration and flawed environmental review of its already enacted Adult Student Housing Law.

20.    In fact, Town representatives repeated on several occasions during its supplemental review under SEQRA that it would not accept any comments concerning the potential environmental impacts of the Adult Student Housing Law since such Law had already been enacted.

21.    Not wasting any time, approximately one week after issuing its SEQRA Findings concerning its supplemental review of its new Comprehensive Zoning Law and despite repeated assurances by the Town that any development application under the new Zoning would

be subject to a more detailed site specific environmental review, the Town Planning Board, without any meaningful environmental review, issued yet another determination of no environmental significance.  This time the Town Planning Board closed the environmental review process on the pending adult student housing site plan application of Respondent/Defendant Chofetz Chaim for the Nike Site.

22.    The Town Planning Board's cursory examination and negative declaration issued in connection with Respondent/Defendant Chofetz Chaim's application for a substantially higher density sixty (60) unit multi-family housing development under the Adult Student Housing Law was  arbitrary, capricious and an abuse of discretion, and respectfully must be declared null and void.

23.    The Town's flawed environmental review and Negative Declaration of its Adult Student Housing Law must also be annulled and vacated, and the Town must be required to undertake a more detailed and informative analysis and evaluation of the real and undisputed impacts.

24.    The Town also failed to properly enact the Adult Student Housing Law in accordance with Municipal Home Rule Law and General Municipal Law.  The Town did not hold another public hearing or refer the Adult Student Housing Law to the County Planning Department after making substantial changes to the Adult Student Housing Law.  These substantial changes were included in the final version of the Adult Student Housing Law after the public hearing and after referring the Adult Student Housing Law to the County, preventing the public and the County from commenting on the substantial changes and their potential impacts.

25.    The Adult Student Housing Law also amounts to impermissible spot zoning.  The Adult Student Housing Law specifically singles out individual lots for this use, presumably requested by the property owners, to the detriment of surrounding property owners. The Adult Student Housing Law further impermissibly carves out an exception to one of the Adult Student Housing Law's requirements, which is applicable solely to one particular parcel, the Nike Site.

26.    Petitioners/Plaintiffs also seek a declaratory judgment declaring the Adult Student Housing Law unconstitutional.

27.    The Adult Student Housing Law violates the Due Process Clauses of the United States and New York State Constitutions by limiting the application of the Adult Student Housing Law to only married students.

28.    The Adult Student Housing Law also violates the Establishment Clause of the First Amendment to the United States Constitution. The Adult Student Housing Law has the purpose and effect of promoting religion and fosters the excessive entanglement of the government with religion by, inter alia, providing aid and preference to those engaged in full time study consistent with recognized religious practice or belief.

29.    The Adult Student Housing Law was also not enacted pursuant to the Town's police powers, and is not rationally related to a legitimate governmental purpose. The Adult Student Housing Law is not in conformance with the Town's recently enacted Comprehensive Plan.  It allows impermissible spot zoning, forbids development on properties that are assembled from smaller lots, and was enacted in response to the threat of litigation rather than in furtherance of the health, safety and welfare of the Town's residents.  Thus, the Adult

Student Housing Law is <u>ultra</u> <u>vires</u> and should be declared null and void as outside the Town's grant of police powers from the State.

30.    The Adult Student Housing Law is also unconstitutionally vague, and is inconsistent with certain other provisions of the Town's Zoning Law.  Petitioners/Plaintiffs thus request that the Adult Student Housing Law be declared null and void as a matter of law in its entirety.

<u>THE PARTIES</u>

31.    Petitioner/Plaintiff, the Village of Chestnut Ridge ("Chestnut Ridge"), is a municipal corporation existing by and under the laws of the State of New York, located within the Town of Ramapo, with offices at 277 Old Nyack Turnpike, Chestnut Ridge, New York 10977.

32.    By Resolution dated July 15, 2004, the Board of Trustees for the Village of Chestnut Ridge authorized the retention of counsel and the commencement of this proceeding on behalf of Chestnut Ridge.

33.    Petitioner/Plaintiff, the Village of Montebello ("Montebello"), is a municipal corporation existing by and under the laws of the State of New York, located in the Town of Ramapo, with offices at 1 Montebello Road, Suffern, New York 10901-3901.

34.    By Resolution dated July 13, 2004, the Board of Trustees for the Village of Montebello authorized the retention of counsel and the commencement of this proceeding on behalf of Montebello.

35.    Petitioner/Plaintiff, the Village of Pomona ("Pomona"), is a municipal corporation existing under the laws of the State of New York, located in the Towns of Ramapo and Haverstraw, with offices at 100 Ladentown Road, Pomona, New York 10970.

36.    By Resolution dated June 28, 2004, the Board of Trustees for the Village of Pomona authorized the retention of counsel and the commencement of this proceeding on behalf of Pomona.

37.    Petitioner/Plaintiff, the Village of Wesley Hills ("Wesley Hills"), is a municipal corporation existing by and under the laws of the State of New York, located in the Town of Ramapo, with offices at 432 Route 306, Wesley Hills, New York 10952.

38.    By Resolution dated July 13, 2004, the Board of Trustees for the Village of Wesley Hills authorized the retention of counsel and the commencement of this proceeding on behalf of Wesley Hills.

39.    Petitioner/Plaintiff Jay Rosenstein is an individual residing on Skylark Drive in the Village of Wesley Hills in the Town of Ramapo, near the property known as the Nike Site.

40.    Petitioner/Plaintiff Robert Moskowitz is an individual residing on Fessler Drive in the Village of New Hempstead in the Town of Ramapo, near the property known as the Nike Site.

41.    Petitioner/Plaintiff Milton B. Shapiro is an individual residing on Scenic Drive in the unincorporated Town of Ramapo, adjacent to the property known as the Patrick Farm Site.

42.    Petitioner/Plaintiff Dr. Sonya Shapiro is an individual residing on Scenic Drive in the unincorporated Town of Ramapo, adjacent to the property known as the Patrick Farm Site.

43.    Respondent/Defendant, the Town of Ramapo, is a duly organized municipality existing by and under the laws of the State of New York, with offices at 237 Route 59, Suffern, New York 10901.

44.    Respondent/Defendant, the Town Board of the Town of Ramapo, is a legislative body formed pursuant to New York State law, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.  The Town Board was the lead agency under SEQRA for the environmental review and adoption of the Adult Student Housing Law.

45.    Respondent/Defendant, the Planning Board of the Town of Ramapo, is a municipal body, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.  Any application processed pursuant to the Adult Student Housing Law would come before the Planning Board.

46.    Respondent/Defendant the Board of Appeals of the Town of Ramapo is a municipal body, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.

47.    Upon information and belief, and as set forth by Respondents/Defendants, applications pursuant to the Adult Student Housing Law are currently pending or are imminent for one or more of the four sites identified by the Town in the environmental assessment for application of the Adult Student Housing Law.

48.    Respondent/Defendant Yeshiva Chofetz Chaim of Radin ("Chofetz Chaim"), located in Suffern, Rockland County, New York, is the owner of and applicant for the properties known as the Nike Site and the Highview Road Site.

49.    Chofetz Chaim has submitted a site plan application to the Town Planning Board for married adult student multi-family housing to be located within the unincorporated Town of Ramapo, on Grandview Avenue on the Nike Site.  Not only would this proposal be

permitted under the Adult Student Housing Law, but the Adult Student Housing Law carves out an exception to its buffering requirement, which is specifically applicable to only one piece of property -- the Nike Site -- without any explanation except that the Nike Site cannot meet the buffering requirement.

50.    The Town Planning Board has already issued an improper negative declaration of environmental significance for Respondent/Defendant Chofetz Chaim's site plan application on the Nike Site.

51.    Upon information and belief, Chofetz Chaim has also submitted an application for one or more variances to the Town Board of Appeals for its married adult student multi-family housing proposal at the Nike Site.

52.    Upon information and belief, Respondent/Defendant Scenic Development LLC, located in Nanuet, Rockland County, New York, is the owner of the property known as the Patrick Farm Site.

<u>JURISDICTION</u>

53.    The Court has subject matter jurisdiction, and may exercise personal jurisdiction over the Respondents/Defendants in this matter.

54.    Pursuant to CPLR Section 506(b), venue is proper in this Court. The determinations complained of were made and the material events took place in the County of Rockland, which is situated within the Ninth Judicial District.

55.    No prior application for this or any similar relief has been made to this or any other Court, except for the related law suit referred to herein as <u>Ramapo I</u>.

56.    On or about November 9, 2004, Respondent/Defendant Chofetz Chaim removed this matter to the United States District Court for the Southern District of New York.

Subsequently, Respondent/Defendant Chofetz Chaim withdrew its removal petition, and without objection from any party, this matter was subsequently remanded to this Court pursuant to an Order of Remand dated December 10, 2004.

FACTUAL BACKGROUND

The Town Of Ramapo

       57.    The Town of Ramapo is located in southern Rockland County. More than one-half of the geographical area of the Town is comprised of twelve incorporated Villages situated in an irregular ring bordering the areas of Monsey, Viola and Hillcrest, which form the Town of Ramapo's "central hub." The unincorporated areas of the Town are dominated by medium to high density residential, industrial and commercial uses.

       58.    In contrast, with the exception of relatively small areas of the Petitioner/Plaintiff Villages of Montebello and Chestnut Ridge, which lie along the New York State Thruway/Route 59 corridor, land use within the bordering Petitioner/Plaintiff Villages is almost exclusively low to medium density residential. The neighborhoods in the Petitioner/Plaintiff Villages are predominantly made up of single-family residences in zoning districts generally ranging from R-25 to R-50 (25,000 square foot lots and 50,000 foot lots, respectively).

       59.    The Villages share much of the Town's infrastructure, including, roadways, water supply, schools and sewage treatment systems. Thus, any meaningful increase in population density in the unincorporated Town along the Village borders would result in potential significant impacts to the Villages.

The Town Proposes An Updated Comprehensive Plan

      60.    In or about July 2000, the Town authorized the preparation of an update to the Town's Comprehensive Plan to govern zoning and development of the unincorporated areas of the Town.

      61.    In or about February 2001, the Town retained a consultant to prepare the update to the Comprehensive Plan.

      62.    A draft Comprehensive Plan was completed in or about September 2002.

      63.    The Comprehensive Plan proposes a series of major zoning changes in areas throughout the unincorporated portion of the Town.  These changes primarily involve the rezoning of residential districts in the Town so as to significantly increase density in the zoning districts bordering the lower density residential Village areas.  The Comprehensive Plan also proposes to convert various non-residential districts to higher density residential districts.

The Town Prepares A Generic Environmental
Impact Statement For The Comprehensive Plan

      64.    In conjunction with the preparation of the Comprehensive Plan, the Town retained the same consultants who prepared the Comprehensive Plan to prepare a Generic Environmental Impact Statement ("GEIS") for the Comprehensive Plan pursuant to SEQRA.

      65.    As defined by the regulations governing SEQRA, a "generic EIS[ ] may be broader, and more general than site or project specific EISs and should discuss the logic and rationale for the choices advanced.  They may also include an assessment of specific impacts if such details are available.  They may be based on conceptual information in some cases."  6 NYCRR § 617.10(a).

      66.    The Town accepted a Draft GEIS on the proposed Comprehensive Plan as complete in March 2003.

67.    The Town scheduled the only public hearing on the Town's DGEIS for the evening of April 7, 2003, only 18 days after the release of the DGEIS.  Due to a freak snowstorm, the Board was forced to adjourn commencement of the public hearing to the evening of April 28, 2003.

The Town Adds A Section On Adult Student Multi-Family
Housing To The Comprehensive Plan Following
Completion of the GEIS Without Any Environmental Studies

68.    Many parties commented on the DGEIS and Comprehensive Plan, in writing and orally at the public hearing.

69.    In one written comment to the Town on the DGEIS and the Comprehensive Plan, dated May 2, 2003 (submitted after the close of the public hearing), Respondent/Defendant Chofetz Chaim requested that the Comprehensive Plan provide for adult student housing for married students and their families while the students continue their post-secondary education.  Respondent/Defendant Chofetz Chaim was the only party to comment in this regard.

70.    Respondent/Defendant Chofetz Chaim, in its written comment, pointed out "one glaring deficiency in the proposed plan that needs to be addressed . . . [is that] [t]he community has many young men who marry and continue their pursuit of a rabbinical or secular degree for several years after marriage.  These young students are in need of dormitory housing that would provide all the needed space for their families to thrive while they pursue their educational goals."  (FGEIS at F-53, Exh. "2").

71.    Further, Respondent/Defendant Chofetz Chaim noted that it had previously submitted a plan for adult student dormitory housing for one of the properties it owns

at "the former US army base on five acres off Grandview Avenue" in the Town (i.e., the Nike Site), but had been advised that the zoning did not allow this use. (Id.).

72.     In response to this comment, the Town included in its FGEIS, without any further environmental study, a proposal that the Comprehensive Plan provide for and accommodate married adult student multi-family housing.

73.     As such, a provision for "Student Housing" was added to the "Community Resources and Character" chapter of the Comprehensive Plan, after completion of the GEIS.

74.     The "Student Housing" provision stated that "[t]he Town recognizes the need for married student housing within the Town and recognizes that an appropriate solution to this issue needs to be addressed. The Town should develop an appropriate approach to address this issue." (Comprehensive Plan at C-8, Exh. "3").

75.     Of significance here, the Town promised in the FGEIS, as it would do on several other occasions, that, "a specific analysis of how to implement any zoning changes will need to be undertaken." (FGEIS at F-53, Exh. "2").

76.     The "Student Housing" provision in the Comprehensive Plan also recognized that "[a] specific analysis of how to implement any zoning changes should be undertaken. Providing a proper balance between the need for married student housing and the community's interest in minimizing impacts to neighboring areas would be a critical consideration." (Id.).

77.     Thus, as admitted by the Town, adult student housing was not originally included in the Comprehensive Plan, as well as was not studied in the GEIS. It was added to the Comprehensive Plan after the environmental review of the Comprehensive Plan was completed,

and the Town promised to undertake a full environmental review prior to enacting any new zoning amendments.

The Town Adopts The Comprehensive Plan, And Once
Again, Assures The Public That A Supplemental Environmental
Review Would Be Undertaken Prior To Any Rezonings

78.    As it would do throughout these proceedings, the Town once more promised in response to <u>Ramapo I</u> that before any actual rezonings, the Town would undertake a supplemental environmental impact statement that "will provide an analysis, as appropriate and as required by law, of the potential environmental impacts of the proposed zoning changes.  This analysis generally will be more detailed than that provided in the GEIS process, although where adequate the studies, analyses and findings made in that process will be used."  (Affidavit of John F. Lange, sworn to July 30, 2004, ¶ 38, Exh. "4").

79.    The Town's response in <u>Ramapo I</u> reflected similar statements in its SEQRA Findings with respect to its adoption of the Comprehensive Plan that "any actual rezoning of the Town or any portion of it must comply with applicable provisions of law, including … SEQRA."  (Affidavit of Christopher P. St. Lawrence, sworn to July 28, 2004, ¶ 9, Exh. "5").

80.    Likewise, the Town Supervisor has stated on numerous occasions that any rezonings would not be done in a piecemeal fashion.  The rezonings would be proposed and studied all at once so their entire impact could be properly evaluated together.

81.    Yet, contrary to the Town's representations and the law, at the Town's very first opportunity to adopt a new zoning law following the Comprehensive Plan, the Town adopted the subject Adult Student Housing Law in a piecemeal fashion and without compliance with SEQRA or other applicable law.

The Town Proposes New Zoning Law

82.    After adopting the Comprehensive Plan, in or about April 2004, the Town proposed a new zoning law to permit adult student multi-family housing in most single-family residential zoning districts throughout the Town of Ramapo.

83.    As even acknowledged by the Town, the new zoning law has the potential to impact over 100 sites within the Town.  (Environmental Assessment Form ("EAF") Narrative at 2, Exh. "6").

84.    As originally proposed, the new zoning law provided, inter alia, that multi-family housing would be permitted as a special permit use in residential zones as an accessory use to post secondary educational institutions in order to provide housing for adult students.  The minimum lot size would be four acres, with a density not to exceed 16 units per acre.  The educational institution must occupy at least 10 per cent of the project site.

85.    Thus, with only a nominal educational institution on the site, the proposed Adult Student Housing Law would allow high density multi-family housing within a residential zone in the unincorporated Town of Ramapo, potentially impacting traffic, water supply, available sewer capacity, schools, services and the character of the surrounding neighborhoods.

The Town Refers The New Adult Student Housing Law To
Rockland County For Required General Municipal Law Review

86.    Pursuant to the requirements of General Municipal Law §§ 239-l and 239-m, on or about April 30, 2004, the Town referred the new proposed Adult Student Housing Law to the Rockland County Department of Planning for its review and recommendations.

87.    Upon reviewing the proposed Adult Student Housing Law, the County, in a letter dated June 2, 2004, expressed "concerns about the proposal," and recommended modifications.  (Exh. "7").

88.     Specifically, the County noted that the proposed Adult Student Housing Law provides for the adult student housing to be an accessory use to an educational institution, yet the adult student housing component could occupy more than 50% of the site under the Adult Student Housing Law, making this "a primary use not an accessory use."  (Id.).

89.     The County also expressed concern over "the impact of what is essentially a multi-family housing development on the existing infrastructure," especially since adult student housing was not originally considered in the environmental studies for the Comprehensive Plan and thus there were no opportunities to comment on the potential impact to sewer and water. (Id.).

90.     The County further indicated that the impact to the community character of low-density neighborhoods in adjoining municipalities, especially the Villages, of such adult student multi-family housing developments would be "significant."  (emphasis supplied) (Id.).

91.     The Town, as set forth infra, overrode the County's GML review, and responded to few of its concerns.

The Town Holds A Public Hearing On The Adult Student Housing Law

92.     On or about June 2, 2004, the Town held a public hearing on the proposed Adult Student Housing Law.  Numerous people spoke in opposition to the Law.

93.     Following the public hearing, the Town made several changes to the Adult Student Housing Law, including, adding a requirement that the students be married; changing to 30 days from 6 months within which the students must vacate when they are no longer eligible for the housing; adding a limitation on maximum lot size to 12 acres; adding a requirement that the project be located on an already existing lot that meets the lot size requirements or be created

by subdivision from a larger lot; adding an occupancy limitation of 6 years; and changing the buffering requirements.

94.    These changes were material and substantial, requiring that the public and the County have the appropriate opportunity to provide comments on these revisions.  The Town refused to hold an additional public hearing.

95.    The Town also refused to refer the revised Adult Student Housing Law to the County for further GML review as required under the General Municipal Law.

The Town Conducts A Superficial, Incomplete SEQRA Review

96.    In conjunction with the required GML review and public hearing, the Town also instituted its environmental review of the proposed Adult Student Housing Law under SEQRA.

97.    Pursuant to the requirements of SEQRA, the Town Board declared itself lead agency.  Of significance, it also determined that the proposed Adult Student Housing Law was a Type 1 action.

98.    The Town's designation of the proposed Adult Student Housing Law as a Type I action, according to the SEQRA regulations, "carrie[d] with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS [environmental impact statement]."  6 NYCRR § 617.4(a)(1).

99.    The Town's consultant completed the checklists in Parts 1 and 2 of the EAF, and prepared a brief four and one half page "narrative" for Part 3 of the EAF.

100.    As stated in the SEQRA regulations, an EAF is a form used by a lead agency "to assist it in determining the environmental significance or nonsignificance of actions.

A properly completed EAF must contain enough information to describe the proposed action, its location, its purpose and its potential impacts on the environment."  6 NYCRR § 617.2(m).

The EAF Fails To Take The Required "Hard Look"
At Potential Significant Environmental Impacts

101.    In the "EAF Narrative," the Town's consultant initially identified over 100 sites that could meet the Adult Student Housing Law's requirements, and receive the conditional use permit for adult student multi-family housing use.

102.    Using some unknown, arbitrary determination, however, the consultant concluded that only four sites within the Town might seek the use: the Nike Site, Patrick Farm Site, Highview Road Site and Spruce Road Site.  The consultant thus limited the EAF Narrative's analysis to these four sites only.  The consultant's conclusion was not based upon any empirical data or evaluation.

103.    The EAF also provided no analysis, let alone the required "hard look," of the potential impact on the character of the community from placing high density uses in the middle of low density single-family houses, not even for the four known sites discussed below.

104.    Nor did the EAF provide any analysis, let alone the required "hard look," of the potential traffic impacts from the Adult Student Housing Law on the four known sites, except for the unsupported statement that most of the students will stay on site for the majority of the days, and in "some specific cases, spouses may not drive." (EAF Narrative at 2, Exh. "6").

105.    The EAF also provided no analysis, let alone the required "hard look," of any impacts to the infrastructure from the Adult Student Housing Law, including, important potential impacts to the water, sewer and road infrastructure that the Villages share with the Town that would result from the significant increase in housing density under the Adult Student Housing Law.

106.    The Town completely ignored the fact that the Adult Student Housing Law would create substantial increases in water and sewer demand over development under existing zoning.   Normal water consumption of single-family and multi-family dwellings is 100 gallons and 75 gallons per person per day, respectively.  An average family size in single-family dwellings on larger lot sizes is 4 persons per unit, and multi-family dwellings is 5.5 persons per unit.   The combination of these factors yields a dramatic increase in water consumption with a multi-family adult student housing use pursuant to the Adult Student Housing Law, over existing single-family zoning.

107.    If the Town had performed the requisite environmental review it would have found that there would be a significant potential environmental impact from the dramatic increase in water consumption from the extensive development of adult student multi-family housing use that would be permitted under the proposed Adult Student Housing Law.

108.    Because most water brought into a dwelling is eventually released through a sewage treatment system, if the Town had performed the requisite environmental review, it would have also found that the increases in required sewage treatment of the potential development permitted under the Adult Student Housing Law would have been of the same magnitude as that of the water consumption.

109.    The Town also failed to perform the requisite traffic analysis that the enactment of the Adult Student Housing Law and the development of adult student housing would have on the local roadways.  If the Town had performed this requisite environmental review, the Town would have found that the enactment of the Adult Student Housing Law would generate significant volumes of traffic, certainly well above present levels of traffic generation.

Further, the Town would have learned that there is insufficient capacity at the roadway locations and intersections most likely impacted by the traffic.

110.    An adequate review of the traffic impacts from the Adult Student Housing Law would have shown that the enactment of the Adult Student Housing Law would likely have a significant adverse impact on area traffic operating conditions, as well as that adequate mitigation measures may not be feasible.

111.    The Town essentially deferred the aforementioned analyses to a later time, even when the Town acknowledged that at least one site was currently the subject of a specific site plan proposal under the proposed and now enacted Adult Student Housing Law.

The Town Also Failed To Take The Required "Hard Look" At The Potential
Significant Impacts From The Adult Student Housing Law On Four Known
Sites It Specifically Identified As Likely To Be Developed For This Use

112.    Indeed, the Town identified four sites that would likely be developed under the proposed Adult Student Housing Law: Patrick Farm Site, Nike Site, Highview Road Site and Spruce Road Site.

113.    The Town in considering and enacting the Adult Student Housing Law was required at a minimum to look at the potential environmental impacts to the Villages and the single-family neighborhoods surrounding the four sites, let alone the other 96 parcels it identified would be eligible. The Adult Student Housing Law would in effect rezone the sites from low density single-family, to high-density multi-family.

Patrick Farm Site

114.    The Patrick Farm Site comprises approximately 200 acres, which are presently zoned primarily R-80 (80,000 square foot lots). The Patrick Farm Site is located in the northern part of Ramapo, bounded by Route 306 to the west, Route 202 to the north and the

Palisades Interstate Parkway to the east. The property adjoins both the western portion of the northerly boundary of Wesley Hills and the southern portion of the westerly boundary of Pomona. This site is surrounded by low-density single-family residences.

115. Upon information and belief, Respondent/Defendant Scenic Development, the owner of the Patrick Farm Site, plans to develop at least part of the site with adult student multi-family housing pursuant to the Adult Student Housing Law.

116. The maximum number of acres that could be used for each adult student multi-family housing development would be 12 acres under the Adult Student Housing Law. Application of the Adult Student Housing Law to the Patrick Farm Site would allow 192 dwelling units on these 12 acres. This amounts to an increase in density on these 12 acres from 6 under the prior existing zoning to 192 dwelling units, or an increase of 186 more units under the subject Adult Student Housing Law.

117. In analyzing the impact of the Adult Student Housing Law on the Patrick Farm Site, the EAF used the proposed rezoning of Patrick Farm to R-40, or 40,000 square foot lots, under the Comprehensive Plan as the comparison for the increased density. Presumably, the change in density between the existing zoning and the Adult Student Housing Law would be less, thus artificially reducing the potential impacts. Even using the R-40 zone as the basis of comparison, application of the Adult Student Housing Law would increase the density of the 12 acres from 13 units to 192, a significant increase by any standard.

118. The EAF's only analysis of the potential change in character to the neighborhood or the vastly increased allowable density was a cursory note that "the desired outcome" would be a centrally located facility amidst the proposed 40,000 square foot lots of the

surrounding area.  This is not a careful or acceptable analysis of the potential adverse impacts from this significant density change.

119.    In addition, hoping that a developer would institute this "desired outcome" is not a substitute for proper study and/or mitigation of the impacts from this rezoning.

120.    The EAF also completely failed to analyze traffic, water or sewer impacts to the Patrick Farm Site, the Villages and the surrounding area from application of the Adult Student Housing Law.

121.    In connection with potential water consumption impacts, for example, only <u>two</u> Adult Student Housing developments on the Patrick Farm Site would create 384 multi-family dwellings with a population of 2,112 persons, consuming 158,400 gallons of water per day.  Thus, limited adult student housing development on only a very small portion of the Patrick Farm Site would alone increase water consumption by over 500%.

122.    In addition, an adequate quantitative analysis of the potential traffic impacts from adult student housing on the Patrick Farm Site would have shown that the traffic generation from such a high density development would be at least four (4) times greater than allowed under the current zoning.  The Town simply and improperly ignored the potential adverse impacts of this traffic generation trips by not conducting a quantitative intersection capacity analysis at the intersections most impacted by this traffic.

123.    The Town's environmental review concerning its proposed Adult Student Housing Law failed to come close to properly analyzing the potential significant adverse impacts from its application to the Patrick Farm Site.

The Nike Site

124.    The Nike Site is comprised of approximately 4.7 acres on Grandview Avenue, and is presently zoned R-25 (25,000 square foot lots).  Application of the Adult Student Housing Law would permit 75 dwelling units, in comparison to the 8 single-family homes that could be built on the site under the existing zoning.  Twelve homes currently exist on the site. These twelve homes were constructed by the United States Army in the 1950's, and are presently non-conforming.

125.    The Nike Site is surrounded by low-density single-family homes.  It is adjacent to the Villages of Wesley Hills and New Hempstead.

126.    The EAF acknowledged that the Nike Site has a "specific proposal for this type of development" of adult student multi-family housing in anticipation of the Adult Student Housing Law.

127.    There was no environmental analysis of this proposal, or its impacts on the Villages and surrounding neighborhoods in the EAF.

128.    Respondent/Defendant Yeshiva Chofetz Chaim of Radin is the owner of the Nike Site, and the applicant for said proposal for adult student multi-family housing on the Nike Site.

129.    The EAF further acknowledged that the Nike Site cannot accommodate the 500 foot buffer required under the Adult Student Housing Law between the adult student multi-family housing and abutting low density residential land within the Villages.

130.    The Adult Student Housing Law carves out a specific exception from the buffer applicable only to the Nike Site, without any rationale for this exception.

131.    The EAF completely failed to mention or analyze the potential water, sewer or traffic impacts to the Nike Site and the surrounding area from application of the Adult Student Housing Law.

132.    The generation of traffic at a 75-dwelling unit, adult student housing development that would be permitted on the Nike Site under the new Adult Student Housing Law, for example, would be significantly above present levels (more than twice present levels), whether that be defined by the existing 12 homes or by the number of housing units that could be developed under the single-family residential zoning requirements.

133.    The Town ignored the potential adverse impacts of this traffic generation by not conducting any quantitative intersection capacity analysis at the intersections that would be most impacted by this traffic.

134.    The EAF in general failed to analyze meaningfully any of the potential significant adverse impacts from the application of the Adult Student Housing Law to the Nike Site, even though a specific development proposal was pending for this site at the time the Adult Student Housing Law was under consideration.

Highview Road Site

135.    The Highview Road Site is comprised of 11.7 acres.  It is presently zoned R-25.  If fully developed under the existing zoning, 20 single-family homes could be built on the 11.7 acre site.

136.    The Highview Road Site is located on Highview Road between College Road and Spook Rock Road.

137.    Upon    information    and    belief,    this    site    is    also    owned    by Respondent/Defendant Yeshiva Chofetz Chaim of Radin.

138.    Upon information and belief, Chofetz Chaim also plans to develop this site with adult student multi-family housing.

139.    The EAF acknowledges that this site is "set in a neighborhood of single family dwellings."  (EAF Narrative at 3, Exh. "6").

140.    The EAF further acknowledged that traffic is near capacity for this site, even without increased development allowed under the Adult Student Housing Law.

141.    Yet the EAF did not contain any discussion of the acknowledged traffic or other impacts from the special permit use of the site that would be allowed pursuant to the Adult Student Housing Law, including, the impacts to sewer, water, or neighborhood character that would result from the application of the Adult Student Housing Law to this site.

Spruce Road Site

142.    The Spruce Road Site consists of 4.8 acres, and is surrounded on two sides by single-family homes.  The site is presently zoned R-40A.  If fully developed under the existing zoning, 5 single-family homes could be built on the 4.8-acre Spruce Road site. Under the Adult Student Housing Law, 77 dwelling units could be developed.

143.    The Town, again, did not mention or analyze the potential impacts from traffic, sewer and water consumption, or neighborhood character from the vastly increased housing density that would be allowed under the Adult Student Housing Law for the Spruce Road site.

144.    Yet, the generation of traffic would be potentially five times greater under the Adult Student Housing Law. The Town ignored these potential adverse impacts by not conducting any quantitative intersection capacity analysis, or other of the typical traffic study methodologies.

145.     In addition, the Spruce Road and Nike Sites are within a one-half mile radius of each other, and, combined, the sites comprise 9.6 acres.  Both sites could be developed under the Adult Student Housing Law.  If both the Nike and the Spruce Road Sites were developed as single-family housing, the combined 17 homes would generate 23 trips during the evening rush hour.  The 151 adult student housing units that could be developed on the combined sites under the Adult Student Housing Law would be expected to generate at least 70 evening rush-hour trips, more than three times as much traffic as would be generated by 17 single-family homes.

146.     Since both the Nike and the Spruce Road Sites are so close together, the traffic generated by adult student housing at these sites would overlap at adjacent intersections, potentially impacting operating conditions as discussed more fully hereafter. The Town ignored the potential adverse cumulative impacts of these trips by not conducting a quantitative intersection capacity analysis at any of these most impacted intersections.

147.     The EAF failed to properly analyze any of the potential significant impacts from application of the Adult Student Housing Law to the Spruce Road site.

The Town Fails To Set Forth A Reasoned
Elaboration For The Negative Declaration

148.     Thus, without undertaking any of the requisite environmental review as discussed supra, the Town, at its June 15, 2004 Board meeting, issued a negative declaration closing its cursory environmental review process, and adopted the Adult Student Housing Law.

149.     The Town's Resolution finding that the Adult Student Housing Law would not result in at least one potential significant adverse impacts on the environment contained no explanation, reasoned elaboration or independent analysis, similar to the EAF.

150.    The Resolution was based solely "upon the recommendation of [Town consultant] Frederick P. Clark Associates."  (Resolution No. 2004-358, dated June 15, 2004, Exh. "8").

151.    In the Town's "Notice of Determination of Non-Significance," under the section titled "Reasons Supporting This Determination," for example, the Town failed to supply any analysis or the required reasoned elaboration for the Negative Declaration as required under SEQRA.

152.    The Town merely stated that the Negative Declaration is "based on the Criteria for Determining Significance in SEQRA Section 617.[3](c)(1) and based on the approved full Environmental Assessment prepared as part of the request and the plans and reports submitted for this project."  (Negative Declaration at 2, Exh. "9").

153.    The Town's negative declaration of the Adult Student Housing Law and its finding of no potential significant environmental impacts failed to meet the most basic mandatory requirements under SEQRA.

The Adult Student Housing Law Also
Impermissibly Entangles Government And Religion

154.    One of Ramapo's stated purposes for adopting the Adult Student Housing Law is that the "need for this type of housing has been identified in the context of a religious land use (RLUIPA) issue, arising from private schools which have no mechanism to provide such housing under the current regulations." (EAF Narrative at 1, Exh. "6").  Yet, no evidence has been presented, which indicates why high density multi-family housing is required to be constructed as part of such religious schools, nor how the failure to provide such housing would impose a burden on the free exercise of religion.

29

155.    The Town's current Zoning Law permits dormitories as accessory to all school uses, religious and secular.  Obviously, there is a mechanism for school-related housing.

156.    As such, the Adult Student Housing Law was proposed specifically in response to the request from a religious group for multi-family housing on the Nike Site and the Highview Road Site to house married adult students and their families, even though these Sites do not contain school uses.

157.    RLUIPA does not require indiscriminate high-density housing as an accommodation to religion.

158.    In addition, the Adult Student Housing Law specifically provides an exception from the required buffer for the Nike Site to benefit the property owner who would otherwise not be able to obtain the special permit for the adult student housing use.  Clearly, the Town is accommodating the user, not the use.

159.    Another example of the Adult Student Housing Law's impermissible entanglement of government with religion is that the Adult Student Housing Law provides that a student may extend his or her six (6) year residency upon application to the Planning Board "for good cause."  Adult Student Housing Law 9-2004(F).

160.    The Adult Student Housing Law defines good cause as "a longer period of full time study consistent with recognized religious practice or belief."  Id. (emphasis added).

161.    Thus, the only standard for guiding the Planning Board in granting an extension of the six-year residency limit is whether the student is engaged in full time study consistent with recognized religious practice or belief.

162.    In addition, the Planning Board must make a determination as to whether a religious practice or belief is adequately "recognized" in order to grant a student's request.

163.    The Adult Student Housing Law does not provide a standard by which the Planning Board can make this determination of whether a religious practice or belief is "recognized," and thus the Adult Student Housing Law is also unconstitutionally vague.

Unmarried Adult Students And Their Families Cannot Seek
Or Obtain Housing Under The Adult Student Housing Law

164.    The Town has also specifically limited the availability of adult student housing to "married" students and their families under the Adult Student Housing Law.

165.    Adult students who are not married or do not have any other family status, may not reside in the adult student housing even if they have minor children.

166.    Thus, the Adult Student Housing Law discriminates on the basis of familial status.

The Town Enacts The Adult Student Housing Law, Despite The
Deficiencies In The Law And The Lack Of Adequate Review

167.    On or about June 15, 2004, the Town adopted the Adult Student Housing Law, without adequate environmental review, without additional review by the County, without holding further public hearings, and despite numerous land use and constitutional deficiencies.

Respondent/Defendant Chofetz Chaim Resubmits Site Plan Application
For Adult Student Housing Project Under The Adult Student Housing Law

168.    Shortly after the Adult Student Housing Law was enacted, on or about September 8, 2004, Respondent/Defendant Chofetz Chaim supposedly resubmitted its site plan application to the Town Planning Board for the same or substantially the same 60 multi-family two and four-bedroom adult student housing development it had originally proposed on the Nike Site prior to the enactment of the Adult Student Housing Law.

Town Issues Draft Supplemental Environmental Impact
Statement For Comprehensive Plan And Comprehensive Zoning Law

169.    Almost simultaneously with the resubmission of Chofetz Chaim's Application, the Town issued a Draft Supplemental Environmental Impact Statement Assessing Comprehensive Plan Recommendations ("DSEIS") in connection with enacting the proposed zoning laws ("Zoning Law") recommended in the Comprehensive Plan.

170.    The purpose of the DSEIS, as stated by the Town, was to provide "a closer review and . . . evaluate impacts of the recommendations in the [Comprehensive] plan to provide additional housing."  (DSEIS at 3.)

171.    The Town took the express position that the Adult Student Housing Law was not part of that review.

172.    As stated in the DSEIS, its purpose was to identify and evaluate specific impacts only to traffic, water supply and sewage collection system capacity that would result from expanding the supply and type of housing in the Town, specifically multi-family zones.

173.    The DSEIS included in its list of potential future developments as part of its traffic, water and sewer studies "four adult student housing sites . . . identified as possible developments." (DSEIS at 8.)

174.    To the extent that the Town's new supplemental review attempted to consider post-hoc the potential impacts of the already enacted Adult Student Housing Law, it continued to fail to analyze the impacts that it would have on the community character of the surrounding communities, or any of the potential parcels throughout the Town eligible for more intense adult student housing under the already existing Law.

175.    The traffic impact analysis in the DSEIS was insufficient to cure the prior deficient review of potential traffic impacts from the Adult Student Housing Law.

176.    The Town's supplemental review does not cure the lack of adequate analysis of the Adult Student Housing Law's impacts on water consumption, sewer, infrastructure or any other potential environmental impacts.

177.    Nor did the DSEIS address the potential impacts from the pending Adult Student Housing site plan application at the Nike Site, even though a specific application was then pending.

178.    Once again, the Town asserted, this time in the DSEIS, "that as individual projects are proposed, the Town will require detailed individual assessments of every applicant's proposal, and separate traffic, water and sewer reports and certifications will be required prior to approval or construction for each project."  (DSEIS at 7).[1]

Town Holds Public Hearing On The DSEIS

179.    On or about September 27, 2004, the Town held a public hearing on the DSEIS, and established the minimum ten-day public written comment period ending on October 8, 2004.

180.    While many of the speakers at the public hearing wanted to comment on the Adult Student Housing Law again, Town representatives repeated their official position that the "Adult Student Housing was previously adopted by the Town and was not part of this hearing."

---

[1]      In light of the DSEIS and its stated purpose to evaluate the environmental impacts from the zoning provisions proposed in the Comprehensive Plan, the Petitioners in Ramapo 1 sought a stay of the Ramapo 1 litigation, which the Town opposed.

Petitioners/Plaintiffs File Suit
Challenging Adult Student Housing Law

181.    On or about October 13, 2004, Petitioners/Plaintiffs filed its original Verified Petition/Complaint challenging the Adult Student Housing Law, together with the Town's flawed environmental review process as evidenced by its illegal negative declaration.

Town Adopts FSEIS And Zoning Law

182.    On or about November 10, 2004, the Town issued the Final Supplemental Environmental Impact Statement ("FSEIS") for its new Zoning Law.

183.    Once again, the FSEIS specifically refused to respond to any comments made on the Adult Student Housing Law as it was already enacted and not part of the SEIS or the public hearing on the DSEIS.

184.    On or about November 22, 2004, after the absolute minimum ten (10) day comment period, the Town issued its Findings Statement for the Supplemental Environmental Impact Statement and, adopted its new Zoning Law.

185.    Of significance here, the new Zoning Law included the previously enacted Adult Student Housing Law as Section 376-1215, with one minor modification, which does not address any of the Adult Student Housing Law fundamental legal flaws.

186.    While the new Zoning Law states in a boilerplate provision that it "repealed" the prior Adult Student Housing Law, as acknowledged by the Town during the supplemental review, the SEIS included no further environmental review or analysis of the Adult Student Housing Law.

187.    The SEIS failed to address or cure the prior deficiencies in the environmental review of the Adult Student Housing Law.

Town Planning Board Issues Declaration Of No Potential
Significant Environmental Impact For Respondent/Defendant
Chofetz Chaim's Adult Student Housing Application

188.    While considering its new Zoning Law, the Planning Board continued to process Respondent/Defendant Chofetz Chaim's adult student housing site plan application for the Nike Site under the existing and already enacted Adult Student Housing Law.

189.    On or about November 19, 2004, notice was issued of a public hearing before the Town Planning Board on a determination of significance for Respondent/Defendant Chofetz Chaim's adult student housing site plan application.

190.    Only eight (8) days after the new Zoning Law was adopted by the Town, and despite the Town's repeated promises that individual applications under the Adult Student Housing Law would be subject to a full environmental review, the Town Planning Board issued yet another determination of environmental nonsignificance this time concerning Respondent/Defendant Chofetz Chaim's site plan application for adult student housing at the Nike Site, again, without expressing a reasoned elaboration for its determination.

191.    Upon information and belief, the only environmental analysis upon which the Planning Board based its negative declaration was a March 2004 Environmental Assessment Form and a July 2003 traffic study submitted by Respondent/Defendant Chofetz Chaim when it resubmitted its multi-family adult student housing site plan application after enactment of the Adult Student Housing Law.  Respondent/Defendant Chofetz Chaim also submitted a two-page letter from its traffic consultant purportedly containing updated traffic counts for two impacted intersections submitted to the Board one day before the public hearing on or about November 29, 2004.

192.    This traffic study is insufficient and inadequate for the requisite hard look.

193.    There are potential adverse traffic impacts mandating an environmental impact statement.  Respondent/Defendant Chofetz Chaim's July 24, 2003 Traffic Impact Study shows that the proposed Adult Student Housing at the Nike Site will increase already unacceptable delays of over three (3) minutes by 10 per cent, yet the study concludes, that "the [p]roposed [60-unit multi-family housing]…will not result in a significant negative impact on the area roadways."

194.    Neither the traffic consultant nor the Applicant proposed any traffic mitigations even though they concede that the project will adversely impact intersections in the area, and one intersection already has failing capacity.

195.    The County Department of Highways in its comments dated November 15, 2004, on the Nike multi-family adult student housing site plan application noted specifically that it had requested that "the traffic study include information to assist in determining if a turning lane and widening may be required for safe traffic movement along Grandview Avenue." The County further noted that, "[w]e see no information in the traffic study to assist in this evaluation."

196.    The County Department of Highways raised additional traffic concerns, including, the use of slide gates, stacking of vehicles along Grandview Avenue, and traffic impacts from community activities.  None of these traffic impacts were addressed by the Applicant, its consultant or the Planning Board.

197.    The Rockland County Sewer District in its comments dated September 22, 2004, noted that the site plan application "reflects a change in permitted land use that will increase the building density on this site, resulting in higher quantities of sewage flowing from this project than for which the system was designed."  While the County indicated that the

Case 7:07-cv-09278-KMK    Document 12-2    Filed 01/02/2008    Page 38 of 58

existing system has adequate capacity "at this time," it expressed serious concern that "the practice of increasing density and consequently sewage flows from properties within the [Sewer] District may lead to an overload of the Sewer District's facilities in the future."

198.    Upon information and belief, the County Sewer District's comments were also not addressed.

199.    Upon information and belief, the site plan application was referred to the Rockland County Department of Planning for review and comment.  The County disapproved the application, citing specifically the application's "incompatibility" "with the surrounding community."

200.    Upon information and belief, the site plan application was also not timely referred to the adjoining municipalities for comment under the General Municipal Law.

201.    Despite the concerns of the aforementioned agencies and the clear impacts that would result from the extensive increase in housing density proposed for the Nike Site by Respondent/Defendant Chofetz/Chaim, on or about November 30, 2004, the Town Planning Board issued a determination that Defendant's adult student housing application would not result in even one potential significant adverse environmental impacts.

202.    Thus, contrary to the Town's repeated statements that the Town would require detailed individual environmental assessments for any multi-family or increased housing density individual projects, no such detailed assessments or report was required for the Nike Site application.

203.    In issuing its negative declaration and shortcutting the environmental review process under SEQRA, the Town Planning Board failed to consider any of the potential significant environmental impacts from the vastly increased housing density contained in the

37

Chofetz Chaim application, including, impacts to community character, infrastructure, traffic and pedestrian safety.

Respondent/Defendant Chofetz Chaim Files
Variance Application With The Town Board Of Appeals

204.    Upon information and belief, once receiving its negative declaration under SEQRA, in or about December 2004, Respondent/Defendant Chofetz Chaim filed an application with the Town Board of Appeals for numerous required variances in connection with its application.

205.    Upon information and belief, the Town Board of Appeals will be scheduling a public hearing on the variance application for January 2005.

206.    The Rockland County Department of Planning has already disapproved this variance application.

FIRST CAUSE OF ACTION
(Violation of SEQRA–Failure To Take Requisite Hard Look At Adult Student Housing Law)

207.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 206 as if fully set forth herein.

208.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law. The Town conducted an insufficient environmental review.

209.    In order for the Town, the lead agency, to determine whether an "action may include the potential for at least one significant adverse environmental impact," SEQRA mandates that an agency take a "hard look" at the potential impacts on the environment of such proposed action.  6 NYCRR § 617.7(a) (emphasis added); 6 NYCRR § 617.2.

210.    The mandatory "hard look" for making a determination of significance requires that the lead agency identify the relevant environmental impacts, thoroughly analyze and take a hard look at these potential impacts, and provide a reasoned written elaboration of why the proposed action may or may not cause significant adverse environmental impacts.

211.    In approving the Negative Declaration, the Town ignored the well-established low threshold triggering the requirement to prepare a full EIS under SEQRA for a Type 1 action, namely, whether the Adult Student Housing Law "may" include the potential for at least one significant adverse environmental impact.

212.    The Town failed to comply with its substantive obligation to take a "hard look" at significant potential adverse impacts, which the Adult Student Housing Law might cause, including, but not limited to, impacts relating to community character, water, sewer, infrastructure, and traffic and safety.

213.    The Town's failure to prepare an EIS for the Adult Student Housing Law was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

<u>SECOND CAUSE OF ACTION</u>
(Violation of SEQRA– Arbitrary and Capricious Determination of
Significance For Adult Student Housing Law)

214.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 213 as if fully set forth herein.

215.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

216.    The potential adverse environmental impacts expected to result from the Adult Student Housing Law, including, but not limited to, impacts relating to community

character, water, sewer, infrastructure, and traffic and safety, surpass the "low threshold" triggering the requirement for comprehensive environmental review through an EIS. It was erroneous for the Town not to recognize these potential impacts.

217. The Town's determination that none of the aforementioned potential impacts from the Adult Student Housing Law might be significant and its failure to prepare an EIS was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

THIRD CAUSE OF ACTION
(Violation of SEQRA– Failure To Make A Reasoned Elaboration –
Improper Delegation For Adult Student Housing Law)

218. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 217 as if fully set forth herein.

219. The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

220. SEQRA mandates strict and literal compliance with its procedures to ensure that agencies will err on the side of meticulous care in their environmental review.

221. The lead agency may not make a final decision concerning the proposed action that has been the subject of a negative declaration until it makes a "reasoned elaboration" of the basis of its ultimate environmental determination concerning the proposed action through certain explicit findings. N.Y. Envtl. Conserv. Law § 8-0109(8); 6 NYCRR §§ 617.7(b)(4), 617.11(c) & (d).

222. Without a reasoned elaboration, the Negative Declaration does not provide an adequate basis for the public or any reviewing agency to determine whether the lead agency

made a proper determination.  Strict compliance with SEQRA's requirements guarantees that environmental concerns are properly confronted and resolved prior to agency action.

223.    The Town failed to make a reasoned elaboration supporting its Negative Declaration.

224.    The lead agency may not delegate its responsibilities for undertaking the SEQRA analysis to its experts.

225.    The Town as lead agency failed to make its own independent determination for the Negative Declaration, instead delegating its responsibilities by relying solely on the advice of the Town's planning consultant.

226.    The Town's failure to make a reasoned elaboration to support its determination of environmental non-significance and delegation of its decision-making authority was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

FOURTH CAUSE OF ACTION
(Violation of SEQRA – Improper Segmentation)

227.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 226 as if fully set forth herein.

228.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration for the Adult Student Housing Law.

229.    "Segmentation means the division of the environmental review of an action such that various activities or stages are addressed under this Part as though they were independent, unrelated activities, needing individual determinations of significance."  6 NYCRR § 617.2(ag).

230.    The general prohibition against segmentation is designed to prevent distortion or dilution of the potential environmental impacts, by splitting a project into two or more smaller projects, each falling below the threshold requiring full environmental review.

231.    By deferring environmental review of the impacts of the Adult Student Housing Law, the Town improperly segmented its analysis.  A lead agency fails to take the requisite hard look at potential significant environmental impacts by deferring resolution of potential environmental issues to a later date or not at all.

232.    During the environmental review process there were at least two projects of which the Board was aware and for which proposals had been made, which were awaiting and dependent upon the enactment of the Adult Student Housing Law, including the application of Respondent/Defendant Chofetz Chaim to build 60 adult student housing units on the Nike Site.

233.    Since such projects were related to and dependent upon the use permitted under  the proposed Adult Student Housing Law, SEQRA requires that such projects and the Adult Student Housing Law must be evaluated as a single action during the review process.

234.    The Town's failure to undertake a combined site specific review of known projects to be developed in conjunction with the enactment of the Adult Student Housing Law constitutes illegal segmentation in violation of SEQRA, mandating annulment of the Negative Declaration.

<u>FIFTH CAUSE OF ACTION</u>
(Violation Of SEQRA – SEIS Not Did Cure Deficiencies of
Original Illegal Negative Declaration)

235.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 234 as if fully set forth herein.

236.    The SEIS issued for the Comprehensive Zoning Law did not cure -- let alone address -- the prior deficient environmental review of the Adult Student Housing Law.

237.    By the Town's own admission, the SEIS was not meant to address the Adult Student Housing Law as this Law had been previously enacted.  The Town specifically refused to take or respond to comments made on the SEIS pertaining to the Adult Student Housing Law.

238.    To the extent that the SEIS may have indirectly related to the Adult Student Housing Law, the SEIS, by its own terms, only reviewed the general traffic impacts from four sites that the Town suspected might seek to be developed as adult student housing, as part of the overall future build conditions along with other potential developments.  Even this purported review was completely inadequate.

239.    The SEIS failed to address any of the other at least 96 sites identified by the Town as potentially eligible for development under the Adult Student Housing Law.

240.    The SEIS also continued to ignore and failed to take the requisite "hard look" at any of the significant potential adverse impacts, which the Adult Student Housing Law might cause, including, but not limited to, impacts relating to community character, schools, and infrastructure from the vastly increased housing density permitted under the Adult Student Housing Law.

241.    The SEIS also did not cure the prior inadequate review of the potential traffic, safety, water and sewer impacts from the Adult Student Housing Law for the four sites, and ignored numerous other potentially impacted traffic intersections.

242.    Finally, the SEIS constituted improper segmentation as it continued to fail to evaluate the site specific impacts with respect to the known pending application from Defendant Chofetz Chaim for adult student housing at the Nike Site.

243.    The Town's failure to satisfy its obligations as lead agency under SEQRA was arbitrary, capricious and an abuse of discretion and its adoption of the SEQRA Findings and alleged re-adoption of the Adult Student Housing Law as part of the Comprehensive Zoning Law, must be annulled and vacated, and no activities permitted.

244.    The SEIS for the new Comprehensive Zoning Law cannot be used and did not cure the prior deficiencies in the environmental review of the Adult Student Housing Law and the alleged re-enactment of the Adult Student Housing Law as part of the new Comprehensive Law is null and void.

SIXTH CAUSE OF ACTION
(Violation of SEQRA Procedures)

245.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 244 as if fully set forth herein.

246.    SEQRA mandates strict and literal compliance with its procedures to ensure that agencies will err on the side of meticulous care in their environmental review.

247.    SEQRA requires that the lead agency consider the substantive public comments received on a DEIS and respond to such comments in the FEIS.  Lead agencies may not ignore public comments on a DEIS.  See ECL § 8-0109.

248.    If a lead agency determines to hold a public hearing on a DSEIS, then the lead agency must allow the public the opportunity to comment at the public hearing.

249.    During the public hearing on the DSEIS for the new Comprehensive Zoning Law, the Town repeatedly stated that this public hearing was not for comments on the Adult Student Housing Law as that Law was already enacted.

250.    In the FSEIS for the new Comprehensive Zoning Law, the Town refused to respond to comments on the Adult Student Housing Law as that Law was already enacted and not part of the SEIS for the new Comprehensive Zoning Law.

251.    The Town violated the requirements of SEQRA when it failed to hold the required public hearing under SEQRA in connection with the DSEIS for the alleged re-adoption of the Adult Student Housing Law and failed to respond to comments on the Adult Student Housing Law in the FSEIS.

SEVENTH CAUSE OF ACTION
(Impermissible Spot Zoning)

252.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 251 as if fully set forth herein.

253.    The Adult Student Housing Law requires that "no structure shall be located within five hundred feet (500) of abutting land within a village which is residentially zoned at a density of one dwelling unit per acre or less."

254.    Yet, the Adult Student Housing Law carves out an exception to this buffering requirement applicable the Nike Site.  The Adult Student Housing Law contains no explanation for this exemption except that the Nike Site cannot meet the buffering requirement. This is clearly beneficial to the property owner who would otherwise not be able to apply for this high density housing.

255.    The Nike Site is completely surrounded by low density single-family residences.

256.    Creating different zoning requirements for individual properties that are otherwise part of a class or that are similarly situated to other properties is spot zoning.

257.    The Town stated the Adult Student Housing Law is specifically applicable to four (4) named Sites: the Nike Site, Patrick Farm Site, Highview Road Site and Spruce Road Site.  Each of these Sites is surrounded by single-family zoning districts.  Application of the Adult Student Housing Law to the specified Sites constitutes spot zoning since the use is for the benefit of specific property owners to the detriment of the surrounding single family property owners and is contrary to the Comprehensive Plan.

258.    The Adult Student Housing Law should be declared void and illegal as constituting impermissible spot zoning.

EIGHTH CAUSE OF ACTION
(Violation of Municipal Home Rule Law)

259.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 258 as if fully set forth herein.

260.    The Town enacted the Adult Student Housing Law in violation of the Municipal Home Rule Law.

261.    Municipal Home Rule Law Section 20(4) mandates that no local law shall be passed unless it is in final form and on the desks of the legislative body at least seven calendar days prior to its final passage or mailed to the members of the legislative body at least ten calendar days prior to final passage.

262.    Municipal Home Rule Law Section 20(5) mandates a public hearing on the proposed local law prior to adoption of the local law.

263.    An additional public hearing must be held on a local law if substantial or material changes are made to the local law following the initial public hearing.

264.    The only public hearing on the proposed Adult Student Housing Law was held on or about June 2, 2004.

265.    Following the public hearing, numerous significant changes were made to the Adult Student Housing Law, including, (i) adding a requirement that the students be married; (ii) changing to 30 days from 6 months within which the students must vacate when they are no longer eligible for the housing; (iii) adding a limitation on maximum lot size to 12 acres; (iv) adding a requirement that the project be located on an already existing lot that meets the lot size requirements or be created by subdivision from a larger lot; (v) adding an occupancy limitation of 6 years; and (vi) changing the buffering requirements.

266.    These changes to the Adult Student Housing Law were substantial, and required another public hearing prior to adoption of the Adult Student Housing Law.  The public had a right to comment on the revised Adult Student Housing Law.

267.    The Town failed to hold another public hearing on the Adult Student Housing Law, preventing Petitioners/Plaintiffs and the public from learning about and commenting on the Adult Student Housing Law as actually enacted.

268.    In addition, upon information and belief, the Adult Student Housing Law was not in its final form until June 15, 2004, the day of the adoption of the Adult Student Housing Law.

269.    At the public hearing held on or about September 27, 2004, on the new Comprehensive Zoning Law, the Town failed and refused to allow public comments on the Adult Student Housing Law, thus the changes to the Adult Student Housing Law were still not presented for public comment.

270.    The Adult Student Housing Law should be declared void and invalid for violating the Municipal Home Rule Law.

## NINTH CAUSE OF ACTION
(Violation of General Municipal Law)

271.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 270 as if fully set forth herein.

272.    The Town enacted the Adult Student Housing Law in violation of the General Municipal Law.

273.    The General Municipal Law requires that if any substantive or material changes are made to a local law after the County's review, that the local law be resubmitted to the County for further review.

274.    Following the County's review and comments on the Adult Student Housing Law, the Town made numerous significant changes to the Adult Student Housing Law.

275.    These changes to the Adult Student Housing Law were substantial and required resubmittal to the County for another review pursuant to the General Municipal Law.

276.    The Town failed to submit the revised Adult Student Housing Law to the County for further review.

277.    The Adult Student Housing Law should be annulled and declared void for failure to comply with the General Municipal Law.

## TENTH CAUSE OF ACTION
(Facial Invalidity of the Adult Student Housing Law – Violation of the Fourteenth Amendment, United States Constitution and Article I, Section 6, New York State Constitution)

278.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 277 as if fully set forth herein.

279.    On its face, the provision of the Adult Student Housing Law, which limits occupancy of adult student housing to "married" adult students and their families and prevents unmarried adult students and their families from occupying adult student housing, does not further a legitimate governmental purpose.

280.    On its face, the provision of the Adult Student Housing Law, which limits occupancy of adult student housing to "married" adult students and their families and prevents unmarried adult students and their families from occupying adult student housing, bears no reasonable relation to the ends sought to be achieved by the Adult Student Housing Law.

281.    The Adult Student Housing Law discriminates on the basis of familial status.

282.    The Adult Student Housing Law amounts to a denial of the right to due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, § 6 of the Constitution of the State of New York.

283.    Petitioners/Plaintiffs request a judgment declaring that on its face the limitation of the Adult Student Housing Law to "married" adult students violates the Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and Article I, § 6 of the Constitution of the State of New York.

<u>ELEVENTH CAUSE OF ACTION</u>
(Facial Invalidity of the Adult Student Housing Law – Violation of the
Establishment Clause, First Amendment, United States Constitution)

284.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 283 as if fully set forth herein.

285.    The Adult Student Housing Law does not promote a secular purpose, in that the Planning Board must make a determination as to whether a religious practice or belief is

adequately "recognized" in order to grant a student's request "for good cause" to extend his or her six (6) year residency.  Adult Student Housing Law 9-2004(F).

286.    This provision in the Adult Student Housing Law has as its principal effect to advance religion.

287.    The Adult Student Housing Law also fosters excessive government entanglement with religion.

288.    The legislative history shows that the Adult Student Housing Law is drawn to secure for one religious community a unique and significant zoning benefit as it is drafted to benefit four specific properties.

289.    The Adult Student Housing Law provides aid and preference to those engaged in full time study consistent with recognized religious practice or belief.

290.    The Adult Student Housing Law violates the Establishment Clause of the First Amendment to the Constitution of the United States, and must be annulled.

TWELFTH CAUSE OF ACTION
(Town Board's Actions Ultra Vires and Void)

291.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 290 as if fully set forth herein.

292.    The Town Board has no inherent power to enact zoning regulations and the Town Board exercises its zoning authority solely through the State's legislative grant of zoning authority as defined and set forth in the Town Law, Article 16.

293.    The Town Board is only empowered to enact zoning regulations pursuant to a comprehensive plan, and for the purpose of promoting the health, safety, morals or the general welfare of the community.

294.    The Adult Student Housing Law, which permits multi-family housing in any residential zone throughout the Town, is not in accordance with the Town's recently adopted Comprehensive Plan, and is ultra vires.

295.    The Comprehensive Plan for the Town of Ramapo, adopted in January 2004, establishes certain areas within the Town for multi-family or high density residential use. The Adult Student Housing Law places multi-family housing outside of these designated areas, and immediately adjacent to single-family residential zoning districts.

296.    The Adult Student Housing Law permits married adult student multi-family housing on minimum four-acre sites. Such multi-family housing, pursuant to the Adult Student Housing Law "must be located on an already existing lot which meets the lot size requirements or on a lot created by subdivision from a larger existing lot, and may not be the result of the combination of existing lots which separately fail to meet the lot size requirements."

297.    Forbidding adult student multi-family housing on assembled lots, while allowing the housing in "existing" or subdivided lots is not rationally related to, or in furtherance of, the health, safety, morals or general welfare of the community, and is ultra vires.

298.    The Adult Student Housing Law permits only married students and their families to reside in the student housing, and forbids unmarried students and their families from residing in the student housing. Such a distinction is not rationally related to, or in furtherance of, the health, safety, morals or general welfare of the community, and is ultra vires.

299.    The Town Board enacted the Adult Student Housing Law in response to the pressure of litigation from certain property owners. The Town Board expressly stated that the Adult Student Housing Law was being adopted in response to concerns that litigation would

be brought pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

300.    The Adult Student Housing Law was not, therefore, adopted to protect the health, safety and welfare of its citizens, rather the Town adopted the Adult Student Housing Law in response to the pressure of litigation from Town property owners who want to maximize development on their property for economic purposes.

301.    The Adult Student Housing Law is ultra vires and should be declared null and void as outside the Town's grant of police powers from the State.

<u>THIRTEENTH CAUSE OF ACTION</u>
(Violation of SEQRA – Failure to Take Requisite Hard Look At Nike Site Application)

302.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 301 as if fully set forth herein.

303.    The Town Planning Board acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with Respondent/Defendant Chofetz Chaim's Nike Site adult student housing site plan application ("Nike Site Plan Application").    The Town Planning Board conducted an insufficient environmental review.

304.    The Town Planning Board failed to comply with its substantive obligation to identify and take a "hard look" at potential significant adverse impacts from the Nike Site Plan Application, including but not limited to, specific impacts resulting from the Application relating to community character, water, sewer, infrastructure, and traffic and safety.

305.    The Town Planning Board also failed to set forth the required reasoned elaboration for its determination that the Nike Site Plan Application would not result in even one

potential adverse environmental impact, requiring the preparation of a more detailed environmental impact statement.

306.    Contrary to the Town's repeated statements that the Town would require detailed individual assessments for all individual projects under the Adult Student Housing Law, in particular, no such detailed assessments or reports were conducted or required for the Nike Site Plan Application.

307.    The Town Planning Board's failure to require or prepare an EIS for the Nike Site Plan Application was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the application must be vacated.

WHEREFORE, Petitioners/Plaintiffs request a judgment, as follows:

Article 78 Petition:

(1)    annulling and vacating the adoption of the Adult Student Housing Law;

(2)    annulling and vacating the finding of environmental non-significance under SEQRA for the Adult Student Housing Law;

(3)    annulling and vacating any actions taken by any of the Respondents/Defendants in reliance upon the SEQRA negative declaration for the Adult Student Housing Law;

(4)    annulling and vacating the alleged supplemental environmental review as it might relate to the Adult Student Housing Law;

(5)    enjoining Respondents/Defendants from implementing any of the provisions of the Adult Student Housing Law pending a determination of this proceeding;

(6)    declaring the Adult Student Housing Law constitutes impermissible spot zoning;

(7)    declaring the adoption of the Adult Student Housing Law violates the New York State Municipal Home Rule Law;

(8)    declaring the adoption of the Adult Student Housing Law violates the New York State General Municipal Law; and

(9)    annulling and vacating the finding of environmental non-significance for Respondent/Defendant Chofetz Chaim's site plan application for adult student housing on the Nike Site and enjoining any further processing of this application pending a determination of this proceeding;

## Complaint For Declaratory Judgment:

(10)    declaring the Adult Student Housing Law violates the Due Process Clauses of the United States and New York State Constitutions;

(11)    declaring the Adult Student Housing Law violates the Establishment Clause of the United States Constitution;

(12)    declaring the Adult Student Housing Law was not enacted pursuant to the legislative grant of zoning powers to the Town;

(13)    awarding Petitioners/Plaintiffs the costs and disbursements of this action; and

(14)    granting such other and further relief as this Court deems just and proper.

Dated: December 23 2004
White Plains, New York

ZARIN & STEINMETZ

By:   _Michel_

Michael D. Zarin
Susan H. Sarch
*Attorneys for Petitioners/Plaintiffs Villages*
81 Main Street, Suite 415
White Plains, New York 10601
(914) 682-7800

Ross & Gess, Attorneys, P.C.
*Attorneys for Individual*
        *Petitioners/Plaintiffs*
275 North Middleton Road
Pearl River, NY 10965
(845) 735-0088

54

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE VILLAGE OF CHESTNUT RIDGE, THE            :
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS,       :
JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,      :

                             Petitioners/Plaintiffs,        :

      - against -                                          :

THE TOWN OF RAMAPO, THE TOWN                  :
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF                 :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC and            :
ROSE OCKO FOUNDATION,
                                              :

                       Respondents/Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

U.S. DISTRICT COURT
FILED
DEC 13 2004
S.D. W.P. OF N.Y.

04 CIV 8865 (SCR)

ORDER OF REMAND

WHEREAS, pursuant to 28 U.S.C. § 1441, this matter was duly removed ... e

United States District Court, Southern District of New York, on November 9, 2004, from the

New York Supreme Court, Westchester County, by Respondent/Defendant Yeshiva Chofetz

Chaim of Radin; and

        WHEREAS, on December 2, 2004, the parties appeared before this Court for a

status conference; and

        WHEREAS, at the conference Respondent/Defendant Yeshiva Chofetz Chaim of

Radin, through its counsel, withdrew its petition of removal and stated its consent to have this

matter remanded to the New York Supreme Court, Westchester County in view of events that

transpired after removal, and no other party objected to said remand; and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 12
DATE FILED:

WHEREAS, Respondent/Defendant Yeshiva Chofetz Chaim of Radin further consented that, in the event that Petitioners/Plaintiffs amend the Verified Petition and Complaint, said Respondent/Defendant will not seek removal of this action or any part thereof to any United States District Court, provided, that no new Respondents/Defendants are added to this action; and

WHEREAS, counsel for Respondent/Defendant Yeshiva Chofetz Chaim of Radin will accept service of process from counsel for Petitioners/Plaintiffs;

NOW THEREFORE, for good cause having been shown and upon consideration of the foregoing, it is hereby

ORDERED, pursuant to 28 U.S.C. § 1441(c) and 28 U.S.C. § 1447(c), that this matter is hereby remanded in its entirety to the New York Supreme Court, Westchester County, and the Clerk is hereby directed to mail a certified copy of this Order of Remand to the Clerk of the New York Supreme Court, Westchester County.

*Case closed.*

Dated: December 10, 2004

_____
Honorable Stephen C. Robinson
United States District Judge

2