**Exhibit D**

45 A.D.3d 74                                                                                              Page 1
45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434
**(Cite as: 45 A.D.3d 74)**

**C**

Village of Chestnut Ridge v. Town of Ramapo
N.Y.A.D. 2 Dept.,2007.

Supreme Court, Appellate Division, Second Department, New York.
In the Matter of VILLAGE OF CHESTNUT RIDGE, et al., appellants, et al., petitioners/ plaintiffs,
v.
TOWN OF RAMAPO, et al., respondents.
Aug. 14, 2007.

**Background:** Villages brought hybrid Article 78 proceeding to challenge local law enacted by municipality which permitted adult student living facilities in certain residential zones adjacent to villages. The Supreme Court, Westchester County, Francis Nicolai, J., dismissed petition and complaint. Villages appealed.

**Holdings:** The Supreme Court, Appellate Division, Spolzino, J.P., held that:

(1) Town Law that insulated zoning changes from legal challenges by neighboring villages did not limit capacity of villages to sue that they enjoyed by reason of Village Law that authorized municipalities to sue and be sued;

(2) bar to judicial review of zoning changes by adjoining villages established by Town Law did not apply to challenges to change in zoning regulations under New York State Environmental Quality Review Act (SEQRA);

(3) persons who were residents of municipality and owners of property in close proximity to area subject to zoning change had standing to assert cause of action complaining of procedural infirmities in municipality's adoption of adult student housing law under Municipal Home Rule Law;

(4) persons who owned and resided upon property in close proximity to area subject to zoning change had standing to raise claims alleging that adult stu-

dent housing law adopted by municipality was inconsistent with municipality's comprehensive plan and thus constituted impermissible spot zoning and that adoption of adult student housing law was illegal under New York law in that it was not rationally related to health, safety, and welfare of community;

(5) adjoining villages did not have standing to assert claims against municipality that enacted adult student housing law alleging that such law constituted impermissible spot zoning, there were procedural infirmities in adoption of such law, and that law was not rationally related to health, safety, and welfare of community;

(6) adjoining landowners and adjoining villages had standing to assert that enacting municipality failed to comply with procedural requirements of General Municipal Law with respect to adoption of adult student housing law and revised comprehensive zoning law;

(7) adjoining villages did not have standing to raise claims alleging discrimination in violation of equal protection or due process; and

(8) married couple did not have standing to raise claims alleging discrimination in violation of equal protection or due process.

Affirmed as modified and remitted.
West Headnotes
**[1] Parties 287** 🔑1

287 Parties
   287I Plaintiffs
     287I(A) Persons Who May or Must Sue
      287k1 k. Capacity and Interest in General.
Most Cited Cases
Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing.

**[2] Parties 287** 🔑1

287 Parties

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

287I Plaintiffs
  287I(A) Persons Who May or Must Sue
    287k1 k. Capacity and Interest in General.
Most Cited Cases

As a general matter, capacity to sue concerns a litigant's power to appear and bring its grievance before the court.

**[3] Associations 41 ☞20(1)**

41 Associations
  41k20 Actions by or Against Associations
    41k20(1) k. In General. Most Cited Cases

**Corporations 101 ☞499**

101 Corporations
  101XI Corporate Powers and Liabilities
    101XI(F) Civil Actions
      101k499 k. Capacity to Sue and Be Sued in General. Most Cited Cases

**Parties 287 ☞1**

287 Parties
  287I Plaintiffs
    287I(A) Persons Who May or Must Sue
      287k1 k. Capacity and Interest in General.
Most Cited Cases

**Parties 287 ☞8**

287 Parties
  287I Plaintiffs
    287I(A) Persons Who May or Must Sue
      287k8 k. Persons Expressly Authorized by Statute. Most Cited Cases

Capacity to sue can be derived from an express statutory grant, as in the case of a business corporation or unincorporated association, or can be inferred, even in the absence of statutory authority, where the power to sue and be sued is a necessary incident of the party's responsibilities.

**[4] Parties 287 ☞1**

287 Parties
  287I Plaintiffs
    287I(A) Persons Who May or Must Sue

287k1 k. Capacity and Interest in General.
Most Cited Cases

**Pretrial Procedure 307A ☞557**

307A Pretrial Procedure
  307AIII Dismissal
    307AIII(B) Involuntary Dismissal
      307AIII(B)2 Grounds in General
        307Ak556 Parties, Defects as to
          307Ak557 k. Capacity. Most Cited Cases

Where there is no statutory authority to sue, and such authority is not necessarily implied from the entity's other powers, there is no capacity, and a petition or complaint must be dismissed.

**[5] Municipal Corporations 268 ☞1016**

268 Municipal Corporations
  268XVI Actions
    268k1016 k. Capacity to Sue or Be Sued in General. Most Cited Cases

Being artificial creatures of statute, governmental entities have neither an inherent nor a common-law right to sue; rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate.

**[6] Municipal Corporations 268 ☞1016**

268 Municipal Corporations
  268XVI Actions
    268k1016 k. Capacity to Sue or Be Sued in General. Most Cited Cases

The statute that authorizes villages "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court" constitutes an express grant of legislative authority empowering villages to sue. McKinney's Village Law § 1-102(5).

**[7] Municipal Corporations 268 ☞1016**

268 Municipal Corporations
  268XVI Actions
    268k1016 k. Capacity to Sue or Be Sued in General. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

The principle that a municipality may not sue the state does not bar an action by one creature of the state against another.

**[8] Zoning and Planning 414 ☞571**

414 Zoning and Planning
    414X Judicial Review or Relief
      414X(A) In General
        414k571 k. Right of Review. Most Cited Cases
Town Law that insulated zoning changes from legal challenges by neighboring municipalities did not limit capacity of municipalities to sue that they enjoyed by reason of Village Law that authorized municipalities "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court," although municipalities' causes of action were not predicated on express grant of standing and Town Law provision was of concern in addressing issue of standing of municipalities. McKinney's Const. Art. 9, § 1 et seq.; McKinney's Municipal Home Rule Law § 20; McKinney's Town Law § 264(4).

**[9] Action 13 ☞13**

13 Action
    13I Grounds and Conditions Precedent
      13k13 k. Persons Entitled to Sue. Most Cited Cases
A general power to sue necessarily yields to a clear legislative intent negating review.

**[10] Zoning and Planning 414 ☞571**

414 Zoning and Planning
    414X Judicial Review or Relief
      414X(A) In General
        414k571 k. Right of Review. Most Cited Cases
Zoning changes made under the Town Law are insulated from legal challenges by neighboring municipalities. McKinney's Town Law § 264(4).

**[11] Declaratory Judgment 118A ☞129**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
      118AII(F) Ordinances
        118Ak129 k. Zoning Ordinances. Most Cited Cases
Village Law prohibits a town from commencing a declaratory judgment action to challenge, as unconstitutional, a village zoning ordinance and amendment. McKinney's Village Law § 7-706(3).

**[12] Zoning and Planning 414 ☞151**

414 Zoning and Planning
    414III Modification or Amendment
      414III(A) In General
        414k151 k. Power to Modify or Amend in General. Most Cited Cases
A town has the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law. McKinney's Municipal Home Rule Law § 10(1)(i).

**Zoning and Planning 414 ☞191**

414 Zoning and Planning
    414III Modification or Amendment
      414III(B) Manner of Modifying or Amending
        414k191 k. In General. Most Cited Cases
A town has the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law. McKinney's Municipal Home Rule Law § 10(1)(i).

**[13] Environmental Law 149E ☞654**

149E Environmental Law
    149EXIII Judicial Review or Intervention
      149Ek649 Persons Entitled to Sue or Seek Review; Standing
        149Ek654 k. Government Entities, Agencies, and Officials. Most Cited Cases
Bar to judicial review of zoning changes by adjoining municipalities established by Town Law did not apply to challenges to change in zoning regulations under New York State Environmental Quality Review Act (SEQRA), and thus right of municipalities to challenge acts of its neighbor had to be determined on basis of same rules of standing that applied to litigants generally, since SEQRA contemplated that adjoining municipalities that had concern about an action would have same right to judicial review as any other interested party. McKinney's ECL §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

8-0105(1), (4)(i); McKinney's Town Law § 264(4); 6 NYCRR 617.1(c), 617.2(s, t).

**[14]** **Administrative Law and Procedure 15A ☞666**

15A Administrative Law and Procedure
    15AV Judicial Review of Administrative Decisions
        15AV(A) In General
          15Ak665 Right of Review
            15Ak666 k. Interest in General. Most Cited Cases

**Administrative Law and Procedure 15A ☞668**

15A Administrative Law and Procedure
    15AV Judicial Review of Administrative Decisions
        15AV(A) In General
          15Ak665 Right of Review
            15Ak668 k. Persons Aggrieved or Affected. Most Cited Cases
Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute.

**[15]** **Towns 381 ☞15**

381 Towns
    381II Government and Officers
        381k15 k. Governmental Powers in General. Most Cited Cases
When a town exercises the police power that has been granted to it, it must do so in a manner that provides a reasonable opportunity for the presentation to, and consideration by, the town's board or council of complete data and arguments for and against the proposed local law. McKinney's Municipal Home Rule Law § 20.

**[16]** **Zoning and Planning 414 ☞571**

414 Zoning and Planning
    414X Judicial Review or Relief
        414X(A) In General
          414k571 k. Right of Review. Most Cited Cases
Persons who were residents of municipality and owners of property in close proximity to area subject to zoning change were among persons intended to be protected by Municipal Home Rule Law provisions and were harmed by municipality's alleged failure to comply with them and thus had standing to assert cause of action complaining of procedural infirmities in municipality's adoption of adult student housing law under Municipal Home Rule Law. McKinney's Municipal Home Rule Law § 20.

**[17]** **Zoning and Planning 414 ☞571**

414 Zoning and Planning
    414X Judicial Review or Relief
        414X(A) In General
          414k571 k. Right of Review. Most Cited Cases
Persons who owned and resided upon property in close proximity to area subject to zoning change were affected by mutual benefits and restrictions that were enforced by comprehensive zoning plan requirement and would have been harmed by municipality's failure to act consistently with its comprehensive plan and thus had standing to raise claims alleging that adult student housing law adopted by municipality was inconsistent with municipality's comprehensive plan and thus constituted impermissible spot zoning and that adoption of adult student housing law was illegal under New York law in that it was not rationally related to health, safety, and welfare of community.

**[18]** **Zoning and Planning 414 ☞234**

414 Zoning and Planning
    414V Construction, Operation and Effect
        414V(A) In General
          414k234 k. Operation and Effect in General. Most Cited Cases
Zoning laws operate to impose mutual benefits and restrictions on the parties within the community.

**[19]** **Zoning and Planning 414 ☞571**

414 Zoning and Planning

414X Judicial Review or Relief
    414X(A) In General
        414k571 k. Right of Review. Most Cited Cases

Adjoining municipalities exercised their own zoning authority with respect to property located within their geographical jurisdiction and thus did not have any interest in other municipality's compliance with either its comprehensive plan or procedural requirements of Municipal Home Rule Law and consequently did not have standing to assert claims against other municipality that enacted adult student housing law alleging that such law constituted impermissible spot zoning, there were procedural infirmities in adoption of such law, and that law was not rationally related to health, safety, and welfare of community. McKinney's Municipal Home Rule Law § 20.

**[20] Zoning and Planning 414 ⟲⟶571**

414 Zoning and Planning
    414X Judicial Review or Relief
        414X(A) In General
            414k571 k. Right of Review. Most Cited Cases

Adjoining landowners who were affected by land use determination that was subject to review under General Municipal Law, and adjoining municipalities that necessarily had same interest in regional review that General Municipal Law required, had standing to assert that enacting municipality failed to comply with procedural requirements of that statute with respect to adoption of adult student housing law and revised comprehensive zoning law. McKinney's General Municipal Law § 239-m.

**[21] Constitutional Law 92 ⟲⟶850**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)8 Freedom of Religion and Conscience
                92k850 k. Zoning and Land Use. Most Cited Cases

**Constitutional Law 92 ⟲⟶909**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)10 Due Process
                92k909 k. Zoning and Land Use. Most Cited Cases

**Constitutional Law 92 ⟲⟶940**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)11 Equal Protection
                92k940 k. Zoning and Land Use. Most Cited Cases

Municipalities that adjoined other municipality that enacted adult student housing law did not have personal stake in outcome of litigation, and thus did not have standing to raise claims alleging discrimination in violation of equal protection or due process on basis of familial status based upon exclusion of unmarried adult student housing from new zoning district or that adult student housing law was intended to benefit particular religious community. U.S.C.A. Const.Amends. 1, 14; McKinney's Const. Art. 1, §§ 6, 11.

**[22] Constitutional Law 92 ⟲⟶909**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)10 Due Process
                92k909 k. Zoning and Land Use. Most Cited Cases

**Constitutional Law 92 ⟲⟶940**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
            92VI(A)11 Equal Protection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 45 A.D.3d 74)**

92k940 k. Zoning and Land Use. Most Cited Cases

Married couple did not have personal interest in municipality's alleged discrimination against unmarried persons by enactment of adult student housing law in alleged violation of equal protection or due process, and thus couple did not have standing to raise those claims; although couple may have had abstract interest in whether municipality was impermissibly discriminating in favor of particular religion, they did not allege any injury as result of allegedly unconstitutional conduct. U.S.C.A. Const.Amends. 1, 14; McKinney's Const. Art. 1, §§ 6, 11.

**[23] Environmental Law 149E ⬳656**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek649 Persons Entitled to Sue or Seek Review; Standing
            149Ek656 k. Other Particular Parties. Most Cited Cases

Property owners, to extent that they resided in close proximity to site selected for development, possessed requisite interest in dispute over whether planning board took hard look as required by New York State Environmental Quality Review Act (SEQRA) in connection with application for approval of site plan in accordance with recently enacted adult student housing law, and thus owners had standing to challenge adoption of adult student housing law as violative of SEQRA, since it was inferred from owners' proximity to site that they would suffer environmental injury. McKinney's ECL § 8-0101 et seq.

**[24] Environmental Law 149E ⬳651**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek649 Persons Entitled to Sue or Seek Review; Standing
            149Ek651 k. Cognizable Interests and Injuries, in General. Most Cited Cases

To establish standing under the New York State Environmental Quality Review Act (SEQRA), a peti-

tioner must show that: (1) that he will suffer an environmental injury that is in some way different from that of the public at large, and (2) the alleged injury falls within the zone of interest sought to be protected or promoted by SEQRA. McKinney's ECL § 8-0101 et seq.

**[25] Environmental Law 149E ⬳654**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek649 Persons Entitled to Sue or Seek Review; Standing
            149Ek654 k. Government Entities, Agencies, and Officials. Most Cited Cases

Municipality could not be presumed to have suffered environmental injury, in context of standing inquiry under New York State Environmental Quality Review Act (SEQRA), by reason of its proximity to source of impacts. McKinney's ECL § 8-0101 et seq.

**[26] Municipal Corporations 268 ⬳1017**

268 Municipal Corporations
    268XVI Actions
        268k1017 k. Rights of Action. Most Cited Cases

In the context of the standing inquiry, a municipality is not permitted to assert the collective individual rights of its residents; municipality is limited to asserting rights that are its own.

**[27] Municipal Corporations 268 ⬳1017**

268 Municipal Corporations
    268XVI Actions
        268k1017 k. Rights of Action. Most Cited Cases

In the context of the standing inquiry, municipalities, like individual litigants, have interests to protect, including property interests.

**[28] Environmental Law 149E ⬳654**

149E Environmental Law
    149EXIII Judicial Review or Intervention
        149Ek649 Persons Entitled to Sue or Seek

Review; Standing

149Ek654 k. Government Entities, Agencies, and Officials. Most Cited Cases

A municipality that has been identified as an involved agency, i.e., an agency with some approval authority with respect to the project, has standing to make a claim under the New York State Environmental Quality Review Act (SEQRA). 6 NYCRR 617.2(s).

**[29] Environmental Law 149E ☞654**

149E Environmental Law

149EXIII Judicial Review or Intervention

149Ek649 Persons Entitled to Sue or Seek Review; Standing

149Ek654 k. Government Entities, Agencies, and Officials. Most Cited Cases

The unique nature of a municipality's environmental interests under the New York State Environmental Quality Review Act (SEQRA) requires that the inquiry into its environmental standing not be a mechanical one, particularly in light of the established preference that the issues presented by land use disputes be decided on the merits, rather than by a "heavy-handed" approach to standing. McKinney's ECL § 8-0101 et seq.

**[30] Environmental Law 149E ☞654**

149E Environmental Law

149EXIII Judicial Review or Intervention

149Ek649 Persons Entitled to Sue or Seek Review; Standing

149Ek654 k. Government Entities, Agencies, and Officials. Most Cited Cases

Adjoining municipalities that were concerned that development permitted by other municipality's adult student housing law would have substantial detrimental effect on roads in their community, their shared water supply and sewer systems, and character of their neighborhoods, possessed requisite interest in dispute over whether other municipality's planning board took hard look as required by New York State Environmental Quality Review Act (SEQRA) in connection with application for approval of site plan in accordance with recently en-

acted adult student housing law, and thus had standing to challenge adoption of adult student housing law as violative of SEQRA. McKinney's ECL §§ 8-0105(6), 8-0109(2); 6 NYCRR 617.7(c)(1)(iv, v).

**[31] Environmental Law 149E ☞588**

149E Environmental Law

149EXII Assessments and Impact Statements

149Ek584 Necessity for Preparation of Statement, Consideration of Factors, or Other Compliance with Requirements

149Ek588 k. Impacting Human Environment. Most Cited Cases

The impact that a project may have on existing community character, with or without a separate impact on the physical environment, is a relevant concern in an environmental analysis under the New York State Environmental Quality Review Act (SEQRA). McKinney's ECL §§ 8-0105(6), 8-0109(2); 6 NYCRR 617.7(c)(1)(iv, v).

**[32] Zoning and Planning 414 ☞571**

414 Zoning and Planning

414X Judicial Review or Relief

414X(A) In General

414k571 k. Right of Review. Most Cited Cases

Landowners and municipalities that adjoined land selected for development under recently enacted adult student housing law suffered actual and concrete harm, and thus became aggrieved for purpose of having standing to challenge proposed development, when adult student housing law was enacted, at which point planning board committed itself to definite course of future action, notwithstanding fact that no site plan for development of any particular site had been approved.

**325 Zarin & Steinmetz, White Plains, N.Y. (Michael D. Zarin and Jody T. Cross of counsel), for appellants.

Holland & Knight, LLP, New York, N.Y. (Robert Bergen and Leah Griggs Pauly of counsel), for respondents Town of Ramapo, Town Board of Town of Ramapo, Planning Board of Town of Ramapo, and Board of Appeals of Town of Ramapo.

**\*\*326** Feerick Lynch MacCartney, PLLC, South Nyack, N.Y. (Dennis E.A. Lynch of counsel), for respondent Yeshiva Chofetz Chaim of Radin.

Rice & Amon, Suffern, N.Y. (Terry Rice of counsel), for respondent Scenic Development, LLC.

ROBERT A. SPOLZINO, J.P., DAVID S. RITTER, JOSEPH COVELLO, and RUTH C. BALKIN, JJ.

SPOLZINO, J.P.

**\*76** The appellants, four villages located within the Town of Ramapo**\*77** and two residents of the Town, challenge the Town's enactment of a local law permitting adult student living facilities in certain residential zones adjacent to the four villages. The Town cross-moved to dismiss the combined amended petition/complaint (hereinafter the amended petition) in this hybrid article 78 proceeding and declaratory judgment action on the grounds that the four villages do not have legal capacity to sue and that the appellants collectively lack standing to raise the claims asserted here. We conclude that it is within the authority granted by the Legislature to the four villages to sue on the claims that are made here, that Town Law § 264(4) does not deprive the four villages of either capacity or standing to assert those claims, and that the appellants have standing to assert some, but not all, of the claims that they raise.

The events leading to this litigation began in the spring of 2004, when the Town Board of the Town of Ramapo (hereinafter the Town Board) proposed to enact a local law amending the Town's zoning code to permit, as a conditional use, the construction and operation of "adult student living facilities" in certain residential zones. The proposed law defined an "adult student living facility" as "[h]ousing designated to be used only for adult married students, faculty, spouses and minor children while the adult student is pursuing full time post secondary education at an educational institution." The term "adult student" was further defined to encompass "[f]ull time married students attending a post secondary level educational institution whether for general or religious instruction."

The combined petition/complaint (hereinafter the

petition) alleged that the proposed law was intended to address a finding in the Town's recently adopted comprehensive plan that such facilities were necessary to accommodate the growing number of married students attending Orthodox Jewish religious educational institutions in the Town. By virtue of the lot size requirements articulated in the proposed local law, the proposed permitted use was anticipated to be applicable initially only to four sites in the unincorporated area of the Town. Each of those sites is located adjacent to or near the border of one or more of the four villages, and all of those sites are located within two miles of each other.

The Town forwarded the proposed local law to the County of Rockland for its review and recommendations, in accordance with the requirements of General Municipal Law § 239-m, and held a public hearing with respect to the proposed local law on **\*78** June 2, 2004. Acting as lead agency pursuant to the New York State Environmental Quality Review Act (ECL article 8 [hereinafter SEQRA] ), the Town Board thereafter classified the adoption of the proposed local law as a Type I action under SEQRA, presumptively requiring the preparation of an Environmental Impact Statement (hereinafter EIS). The Town Board nevertheless issued a negative declaration, finding that the enactment of the local law would not have a significant**\*\*327** adverse impact on the environment, and thus did not require the preparation of an EIS. Despite several negative comments from the Rockland County Department of Planning, the Town Board, on June 15, 2004, unanimously enacted a modified version of the proposed law as Local Law No. 9 (2004) of Town of Ramapo (hereinafter the adult student housing law).

In October 2004 the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Village of Wesley Hills, all of which are located within the Town of Ramapo, together with, among others, Milton B. Shapiro and Sonya Shapiro, who are residents of the Town, commenced this hybrid CPLR article 78 proceeding and action (hereinafter this proceeding) against the Town, the Town Board, the Planning Board of the Town of Ramapo (hereinafter the Planning Board), and the Board of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

Appeals of the Town of Ramapo (hereinafter the Board of Appeals), as well as against Scenic Development, LLC, a developer involved in the development of the four sites, and Yeshiva Chofetz Chaim of Radin (hereinafter Chofetz Chaim), an Orthodox Jewish organization that was anticipated to own and operate adult student housing for its members on the four sites (hereinafter collectively the defendants).

Subsequent to the adoption of the adult student housing law, but prior to the commencement of this proceeding, the Town initiated a process leading to the adoption of a comprehensive revision of its zoning law. The local law that was proposed to accomplish that revision included the provisions permitting adult student housing facilities that had been enacted by the adult student housing law, with minor changes. After conducting an environmental review that did not include additional study of the potential impacts resulting from the adoption of the adult student housing law, the Town Board enacted the revised comprehensive zoning law in November 2004. During the same period, Chofetz Chaim applied to the Planning Board for site plan approval to permit the construction of adult student housing on one of the four sites. The Planning Board issued a negative **\*79** declaration with respect to the site plan, thus determining that the construction of the facility would not have a significant impact on the environment and, concomitantly, foregoing the preparation of an EIS in connection with that project. Shortly thereafter, with the permission of the Supreme Court, the appellants amended the petition so as to include a CPLR article 78 challenge to the Town Board's adoption of the comprehensive zoning law and the Planning Board's issuance of the negative declaration with respect to the Chofetz Chaim site plan application.

The amended petition asserts thirteen causes of action. The first four causes of action allege that, in adopting the adult student housing law, the Town failed, in four different respects, to comply with the requirements of SEQRA. The fifth and sixth causes of action make similar assertions with respect to the subsequent adoption of the revised comprehensive zoning law. The seventh cause of action alleges that the adult student housing law is inconsistent with the Town's comprehensive plan and thus constitutes impermissible spot zoning. The eighth and ninth causes of action complain of procedural infirmities in the adoption of the adult student housing law under the Municipal Home Rule Law and the General Municipal Law, respectively. The tenth and eleventh causes of action allege constitutional violations, specifically, discrimination on the basis of familial status based upon the exclusion of unmarried adult student housing from the **\*\*328** new zoning district, in violation of the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and New York Constitution article I, §§ 6, 11, and in violation of the First Amendment of the United States Constitution insofar as the adult student housing law is intended to benefit a particular religious community. The twelfth cause of action asserts that the adoption of the adult student housing is illegal under New York law in that it is not rationally related to the health, safety, and welfare of the community. The thirteenth cause of action asserts that the Planning Board failed to take the hard look required by SEQRA in connection with the application for approval of the site plan proposed by Chofetz Chaim for one of the four adult student housing sites.

Prior to answering the amended petition, the Town, the Town Board, the Planning Board, and the Board of Appeals cross-moved to dismiss the amended petition, asserting, inter alia, that the four villages (hereinafter the Villages) did not have **\*80** legal capacity to sue and that the appellants collectively lacked standing to raise the claims asserted here. Scenic Development, LLC, and Chofetz Chaim each separately cross-moved for the same relief on the same grounds. The Supreme Court agreed with the defendants, granted the relevant branches of the cross motions, and dismissed the amended petition insofar as asserted by the appellants. This appeal ensued.

[1][2][3][4] The first issue presented is the Villages' legal capacity to prosecute this proceeding. "Capacity to sue is a threshold matter allied with,

but conceptually distinct from, the question of standing. As a general matter, capacity 'concerns a litigant's power to appear and bring its grievance before the court' "(*Silver v. Pataki,* 96 N.Y.2d 532, 537, 730 N.Y.S.2d 482, 755 N.E.2d 842, quoting *Community Bd. 7 of Borough of Manhattan v. Schaffer,* 84 N.Y.2d 148, 155, 615 N.Y.S.2d 644, 639 N.E.2d 1; *see Matter of Graziano v. County of Albany,* 3 N.Y.3d 475, 478-479, 787 N.Y.S.2d 689, 821 N.E.2d 114). Capacity to sue can be derived from an express statutory grant, as in the case of a business corporation or unincorporated association (*see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra* at 155, 615 N.Y.S.2d 644, 639 N.E.2d 1), or can be inferred, even in the absence of statutory authority, where the power to sue and be sued is a necessary incident of the party's responsibilities (*see Silver v. Pataki, supra* at 537-538, 730 N.Y.S.2d 482, 755 N.E.2d 842; *Matter of Graziano v. County of Albany, supra* at 480-482, 787 N.Y.S.2d 689, 821 N.E.2d 114). Where there is no statutory authority to sue, and such authority is not necessarily implied from the entity's other powers, however, there is no capacity, and a petition or complaint must be dismissed (*see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra* at 157, 615 N.Y.S.2d 644, 639 N.E.2d 1; *Matter of Pooler v. Public Serv. Commn.,* 43 N.Y.2d 750, 401 N.Y.S.2d 1009, 372 N.E.2d 797).

[5][6] "Being artificial creatures of statute, [governmental] entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate"(*Community Bd. 7 of Borough of Manhattan v. Schaffer, supra* at 155-156, 615 N.Y.S.2d 644, 639 N.E.2d 1; *see Matter of Town of Riverhead v. New York State Bd. of Real Prop. Servs.,* 5 N.Y.3d 36, 41, 799 N.Y.S.2d 753, 832 N.E.2d 1169; *Matter of Graziano v. County of Albany, supra* at 478-479, 787 N.Y.S.2d 689, 821 N.E.2d 114). Here, the necessary statutory predicate is provided **329 by Village Law § 1-102(5), which authorizes villages "to sue and be sued, to complain and defend and to institute, prosecute,

maintain, defend and intervene in, any action or proceeding in any court." This provision constitutes an express grant of legislative authority empowering villages to sue (*see* **81*Village of Lansing v. Triphammer Dev. Co.,* 193 A.D.2d 919, 920, 597 N.Y.S.2d 766; *see also*Village Law § 4-400[1][d]; *cf.*Village Law § 4-412[1] ). Thus, it is not necessary to consider whether the Villages' capacity to sue may be inferred as a necessary incident of their municipal responsibilities.

[7] The defendants' argument that some more specific authority is required in order to establish the Villages' capacity to sue rests on two inapposite premises. The first is that the Villages' capacity to sue is somehow limited by the principle that a municipality may not sue the State (*see City of New York v. State of New York,* 86 N.Y.2d 286, 293, 631 N.Y.S.2d 553, 655 N.E.2d 649). While it is true that a village is a creature of the State and, as such, cannot sue its creator (*id.*), the Villages are not attempting to do so here. The rule does not bar an action by one creature of the State against another. The defendants' assertion that the Villages' ability to sue is limited in the same manner as that of a governmental agency (*see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra; Matter of Pooler v. Public Serv. Commn., supra* ) is similarly misplaced. Unlike the plaintiffs in those cases, the Villages here can point to enabling legislation directly empowering them to sue. That is sufficient to overcome the defendants' argument that the Villages lack capacity.

Our holding in *Village of Port Chester v. City of Rye,* 234 A.D.2d 453, 651 N.Y.S.2d 146 is similarly not implicated here. The issue in that case was whether a village could challenge a traffic regulation adopted by an adjoining city with respect to a street wholly within that city, albeit one that provided access to the village. Although we addressed the city's argument in terms of the authority of the village to sue, the city's motion to dismiss was actually predicated on its assertion that the village lacked standing to sue. The focus of our analysis in that case, which was on the issue that the village sought to raise, rather than on its general

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

corporate powers, makes it clear that the complaint was dismissed there for lack of standing, not the absence of capacity to sue. While *Village of Port Chester v. City of Rye, supra* thus arguably has some relevance to the discussion of the Villages' standing here, it does not stand for the proposition that specific legislation is required before a village may commence a lawsuit.

[8][9] The defendants are correct in asserting, however, that even where the Legislature has conferred capacity to sue, it may take it away. A general power to sue necessarily yields to a "clear legislative intent negating review" (*Community Bd. 7 of Borough of Manhattan v. Schaffer, supra* at 156, 615 N.Y.S.2d 644, 639 N.E.2d 1; *see* **82***Matter of Town of Riverhead v. New York State Bd. of Real Prop. Servs., supra* at 42-43, 799 N.Y.S.2d 753, 832 N.E.2d 1169). Here, the defendants identify what appears to be such a limitation in Town Law § 264, which, after establishing various procedural requirements for the adoption of zoning regulations, provides that a village, although among the entities entitled to be heard at a public hearing held by a neighboring town with respect to a proposed zoning change, "shall not have the right of review by a court as hereinafter provided" (Town Law § 264[4]). The defendants construe this provision as depriving a village of capacity to challenge **330 any change in a town's zoning regulations, regardless of the manner in which the change is accomplished or the nature of the challenge. Although statutory language expressly depriving a party of a "right of review" would appear to raise an issue of capacity (*see City of New York v. State of New York, supra* at 293, 631 N.Y.S.2d 553, 655 N.E.2d 649), the Court of Appeals has addressed the corresponding provision of the Village Law (*see*Village Law § 7-706[3]) as presenting, instead, an issue of standing (*see Town of North Hempstead v. Village of N. Hills, 38 N.Y.2d 334, 379 N.Y.S.2d 792, 342 N.E.2d 566).* Consistent with this approach, we conclude that while Town Law § 264(4) may be of concern in addressing the issue of the Villages' standing, it does not limit the capacity to sue that they enjoy by reason of Village Law § 1-102(5).

[10] The legislative history of Town Law § 264(4) evidences a clear legislative intent that zoning changes made under the Town Law be insulated from legal challenges by neighboring municipalities. The language in issue was introduced into the Town Law in 1956 (*see* L. 1956, ch. 83), apparently after some controversy as to the proper role of adjoining municipalities in the zoning process. Prior to the 1950s, the Town Law, as well as the Village Law, required that a municipality seeking to adopt a zoning law first hold a public hearing "at which parties in interest and citizens shall have an opportunity to be heard" (Town Law § 264 [L. 1932, ch. 634]; *see*Village Law § 178 [L. 1923, ch. 564] ). These statutes did not, however, address whether such parties might be entitled to judicial review. Beginning in 1952, the Legislature amended these provisions to require that various public agencies, such as regional state park commissions and housing authorities, be notified of proposed zoning changes that might be relevant to them (*see* L. 1952, ch. 623; L. 1954, ch. 130). Adjoining municipalities were not initially included in these notice requirements. In 1955, however, the Legislature passed a bill defining adjoining municipalities as **83 "parties in interest" with respect to municipal zoning changes (1955 N.Y. Senate Bill S. 2356), but the bill was vetoed by Governor Harriman because "a neighboring municipality would be enabled to interfere with practically all acts of the adjoining community which would extend within five hundred feet of the boundary line" (Governor's Veto Message, April 25, 1955). A compromise bill, adopting the language that is in issue here, passed in the following legislative session and was approved by Governor Harriman (*see* L. 1956, ch. 83), who wrote in doing so: "In the bill now before me the objections which were raised last year have been met, the affected community now has the right to be heard but cannot otherwise interfere with the municipality which is changing its regulations" (Governor's Mem. Approving L. 1956, ch. 83, 1956 N.Y. Legis. Ann., at 453).

[11] Based upon this legislative history, there can be no real dispute that the Legislature's intent in adopting Town Law § 264(4) was to allow the adjoin-

Case 7:07-cv-09278-KMK     Document 12-4     Filed 01/02/2008     Page 13 of 34

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

ing municipality to have some input into its neighbor's planning process, but to deprive it of the ability to impede, through litigation, the decisions of the enacting municipality. Consistent with this, the only authoritative construction of the statute holds that the corresponding provision of the Village Law (see Village Law § 7-706[3] ) prohibits a town from commencing a declaratory judgment action to challenge, as unconstitutional, a village zoning ordinance and amendment (see *Town of North Hempstead v. Village of N. Hills, supra* ).

The issue that is presented here, however, differs significantly from that which **331 was decided by the Court of Appeals in *Town of North Hempstead v. Village of N. Hills,* since the zoning change at issue here is not a product of the Town's authority under Town Law § 264. Rather, the adult student housing law, formally known as "Local Law No. 9 (2004) of the Town of Ramapo," was, as its name implies, adopted as a local law pursuant to the authority provided by the Municipal Home Rule Law (see Municipal Home Rule Law § 20). To hold that the Villages' claims with respect to the adult student housing law are barred by Town Law § 264(4) would thus require not merely that we enforce the statutory bar and adhere to its interpretation as established by the Court of Appeals, as is our obligation, but that we extend the effect of the statute to preclude all claims by one municipality with respect to the zoning enactments of its neighbors, without regard to the source of the authority by *84 which that action is taken. Moreover, even if we were to conclude that the restriction imposed by Town Law § 264(4) applies to judicial review of a local law adopted pursuant to the Municipal Home Rule Law, we would further have to hold, in order to reach the result urged by the defendants, that the statute bars review of statutory claims, including claims under SEQRA, that did not exist at the time when Town Law § 264(4) was adopted. We conclude that such an extension of its effect is not warranted.

Despite its otherwise expansive reading of Town Law § 264(4), the Court of Appeals has held that the restriction it imposes is not absolute and must

yield when a contrary legislative intent is apparent. The Court of Appeals expressly recognized this in *Town of North Hempstead v. Village of N. Hills,supra,* by distinguishing its prior decision in *Matter of Town of Bedford v. Village of Mount Kisco,* 33 N.Y.2d 178, 351 N.Y.S.2d 129, 306 N.E.2d 155, and noting the continuing vitality of the holding in that case that an independent statutory basis for standing will overcome the stricture of Town Law § 264(4) (see *Town of North Hempstead v. Village of N. Hills, supra* at 341, 379 N.Y.S.2d 792, 342 N.E.2d 566). While neither the Municipal Home Rule Law nor the statutes upon which the Villages' causes of action are predicated has expressly granted standing to an adjoining municipality to challenge the adoption of a local law, their history and purpose provide a sound basis for reaching the conclusion that such a legislative intent may safely be inferred.

[12] In 1963, eight years after the Legislature adopted the language of Town Law § 264(4) upon which the defendants rely, the voters approved New York Constitution article IX, granting significant additional authority to local governments. The Municipal Home Rule Law (see L. 1963, ch. 843) and its companion, the Statute of Local Governments (see L. 1964, ch. 205), were adopted by the Legislature to implement these new provisions (see *Holt v. County of Tioga,* 56 N.Y.2d 414, 417-418, 452 N.Y.S.2d 383, 437 N.E.2d 1140). The Municipal Home Rule Law provides, among other things, that a town is empowered to adopt local laws relating to its property, affairs, and government, as long as those laws are not inconsistent with the terms of the state constitution or any general law (see Municipal Home Rule Law § 10[1] [i] ). This grant includes the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law (see *Matter of Dalrymple Gravel & Contr. Co. v. Town of Erwin,* 305 A.D.2d 1036, 758 N.Y.S.2d 755; *Matter of Pete Drown, Inc. v. Town Bd. of Town of Ellenburg,* 229 A.D.2d 877, 646 N.Y.S.2d 205; *85 Kasper v. Town of Brookhaven,* 142 A.D.2d 213, 217, 535 N.Y.S.2d 621; *Matter of Schilling v. Dunne,* 119 A.D.2d 179, 184, 506 N.Y.S.2d 179; **332 North Bay Assoc. v. Hope, 116

A.D.2d 704, 706, 497 N.Y.S.2d 757; *Village of Savona v. Soles,* 84 A.D.2d 683, 446 N.Y.S.2d 639; *Yoga Socy. of N.Y. v. Incorporated Town of Monroe,* 56 A.D.2d 842, 843, 392 N.Y.S.2d 81). Considering the fact that the Municipal Home Rule Law was adopted at a time when the dispute that led to the language of Town Law § 264(4) here at issue was within memory, the absence of any corresponding provision restricting the standing of adjoining municipalities to challenge zoning changes adopted in that manner is a telling indicator of the Legislature's intent that there be no such limitation.

[13] The case for refusing to extend the effect of Town Law § 264(4) to claims raised under SEQRA is more compelling. Even within the context of its decision in *Town of North Hempstead v. Village of N. Hills, supra,* the Court of Appeals recognized the potential for inconsistency between an interpretation of Town Law § 264(4) that would deny a neighboring municipality the right to review a zoning change that may affect it and that court's identification, a few weeks earlier, in *Berenson v. Town of New Castle,* 38 N.Y.2d 102, 378 N.Y.S.2d 672, 341 N.E.2d 236, of the need for regional planning (*see Town of North Hempstead v. Village of N. Hills, supra* at 341, 379 N.Y.S.2d 792, 342 N.E.2d 566). In reaching its decision in *Town of North Hempstead,* however, the Court of Appeals had no occasion to consider the impact of SEQRA, which had been enacted in August 1975, but did not become effective until the following September (*see* L. 1975, ch. 612, § 2; L. 1976, ch. 228, § 3), or of the regulations implementing SEQRA, which were not initially filed until March 1976 (*see* 6 NYCRR 617.1 [Historical Note] ). Thus, although the Court of Appeals expressly declined in *Town of North Hempstead* to allow the town's suit to proceed, under the principles of environmental standing that were then developing, that decision cannot be read as precluding a SEQRA challenge to a change in zoning regulations (*see Town of North Hempstead v. Village of N. Hills, supra* at 340-341, 379 N.Y.S.2d 792, 342 N.E.2d 566).

SEQRA, in fact, permits just such a challenge. By defining the term "agency" to include the governing body of any political subdivision of the state (ECL 8-0105[1] ) and the term "action" to include any project or activity "directly undertaken by an agency" (ECL 8-0105[4][i] ) or "involving the issuance to a person of a ... permit" (ECL 8-0105[4][i] ), SEQRA clearly applies to local zoning determinations (*see* 6 NYCRR 617.1 [c] ). SEQRA does not expressly define, however, the role of neighboring municipalities in the SEQRA review process. In addressing the broader *86 issue of public participation in that process, the statute provides only that the draft environmental impact statement shall be "made available to the public prior to acting on the proposal which is the subject of the environmental impact statement," leaving the particulars of notice, standing, and related issues to the regulations to be promulgated by the Commissioner of the New York State Department of Environmental Conservation (hereinafter the DEC) (ECL 8-0109 [6]; *see* ECL 8-0113[2][f], [i] ).

The DEC's SEQRA regulations developed the distinction between an involved agency, which is "an agency that has jurisdiction by law to fund, approve or directly undertake an action" (6 NYCRR 617.2[s] ), and an interested agency, which is "an agency that lacks the jurisdiction to fund, approve or directly undertake an action but wishes to participate in the review process because of its specific expertise or concern about the proposed action" (6 NYCRR 617.2 [t] ). Critically, the **333 regulations make no provision respecting the entitlement of an interested agency to judicial review, other than that "[a]n 'interested agency' has the same ability to participate in the review process as a member of the public"(*id.*). That ability to participate, of course, includes the right, in accordance with the applicable principles of the doctrine of standing, to seek judicial review of the SEQRA determination. SEQRA thus contemplates that an adjoining municipality that has a concern about an action would have the same right to judicial review as any other interested party. The only conclusion that can reasonably be drawn from this is that the bar to judicial review of zoning changes by adjoining municipalities established by Town Law § 264(4) does not apply to challenges under SEQRA, and that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

right of a municipality to challenge the acts of its neighbors must be determined on the basis of the same rules of standing that apply to litigants generally (*cf.* Town Law § 264[3] ).

[14] The issue presented by the doctrine of standing is whether the litigants "should be allowed access to the courts to adjudicate the merits of [the] dispute" (*Society of Plastics Indus. v. County of Suffolk, 77 N.Y.2d 761, 769, 570 N.Y.S.2d 778, 573 N.E.2d 1034).* The inquiry is twofold. "Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute" (*Matter of Gernatt Asphalt Prods. v. Town of Sardinia, 87 N.Y.2d 668, 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; see* **\*87** *Matter of Dairylea Coop. v. Walkley, 38 N.Y.2d 6, 10, 377 N.Y.S.2d 451, 339 N.E.2d 865).* Applying these principles here, we conclude that the Villages have standing to assert the claims that they raise under SEQRA and General Municipal Law § 239-m with respect to the adoption of the adult student housing law and the revised comprehensive zoning law, and that the Village of Wesley Hills has standing to raise the SEQRA claim that is asserted with respect to the Chofetz Chaim site plan application. Moreover, the Shapiros have standing to assert the same causes of action as the Villages, as well as the causes of action alleging that the adult student housing law was not properly enacted under the Municipal Home Rule Law, that it is not consistent with the Town's comprehensive plan, and that it is not rationally related to the health, safety, and welfare of the community. The Shapiros have no standing, however, to challenge Chofetz Chaim's site plan application, and none of the appellants have standing to raise the constitutional claims that have been asserted.

[15][16] Municipal Home Rule Law § 20 articulates the particulars of the notice, hearing, voting, filing, and publication requirements for the enactment of a local law. The purpose of these requirements is to ensure that when a town exercises the police power that has been granted to it, it does so

in a manner that provides "a reasonable opportunity ... for the presentation to and consideration by the [town's board or] council of complete data and arguments for and against the proposed local law"(*Martin v. Flynn, 19 A.D.2d 653, 654, 241 N.Y.S.2d 883).* As residents of the Town and as the owners of property in close proximity to the area subject to the zoning change, the Shapiros are among the persons intended to be protected by these provisions, and are harmed by the Town's alleged failure to comply. They, therefore, have standing to assert a cause of action that these provisions have been violated (*see Matter of Duke & Benedict v. Town of Southeast, 253 A.D.2d 877, 678 N.Y.S.2d 343;* **\*\*334** *Matter of Andrews v. Nagourney, 41 A.D.2d 778, 342 N.Y.S.2d 79, affd. 32 N.Y.2d 784, 345 N.Y.S.2d 542, 298 N.E.2d 680).* The Supreme Court should not, therefore, have dismissed the Shapiros' eighth cause of action.

[17][18] The Shapiros have a similar interest assuring that the Town did not act beyond its zoning authority by adopting a zoning law that is not consistent with the Town's comprehensive plan. Zoning laws operate to impose mutual benefits and restrictions on the parties within the community (*see Topanga Assn. for a Scenic Community v. County of Los Angeles, 11 Cal.3d 506, 517, 113 Cal.Rptr. 836, 522 P.2d 12; Benner v. Tribbitt, 190 Md. 6, 20, 57 A.2d 346;* **\*88** *Bogert v. Washington Twp., 45 N.J.Super. 13, 31, 131 A.2d 535, 545, affd. 25 N.J. 57, 135 A.2d 1).* This mutuality is maintained by enforcement of the requirement that zoning decisions be made in accordance with the community's comprehensive plan (*see Udell v. Haas, 21 N.Y.2d 463, 469, 288 N.Y.S.2d 888, 235 N.E.2d 897).* The Shapiros own and reside upon property affected by the mutual benefits and restrictions that are enforced by the comprehensive plan requirement. They thus have an interest that is intended to be protected by the comprehensive plan requirement, and they would be harmed by the Town's failure to act consistently with its comprehensive plan. The Shapiros, therefore, have standing to raise such claims (*see Matter of Sun-Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, 69 N.Y.2d 406, 409-410, 515 N.Y.S.2d 418,*

508 N.E.2d 130) and, accordingly, the dismissal of the seventh and twelfth causes of action insofar as asserted by the Shapiros was in error.

[19] The Villages, by contrast, have no interest in the Town Board's compliance with either its comprehensive plan or the procedural requirements of Municipal Home Rule Law § 20. Since the Villages exercise their own zoning authority with respect to property located within their geographical jurisdiction (see Village Law § 7-700), they are beyond the bounds of the mutuality of restriction and benefit that underlies the comprehensive plan requirement. They also have, at most, a limited stake in the integrity of the governmental decision-making process in the Town. Because the interests of the Villages are thus related marginally, if at all, to the purposes intended to be promoted by the procedural requirements of Municipal Home Rule Law § 20, they do not have standing to prosecute the seventh, eighth, and twelfth causes of action (see *Mahoney v. Pataki,* 98 N.Y.2d 45, 52, 745 N.Y.S.2d 760, 772 N.E.2d 1118; *Matter of Gizzo v. Town of Mamaroneck,* 36 A.D.3d 162, 824 N.Y.S.2d 366; *Matter of Rediker v. Zoning Bd. of Appeals of Town of Philipstown,* 280 A.D.2d 548, 550, 721 N.Y.S.2d 77). Those causes of action were, therefore, properly dismissed insofar as asserted by the Villages.

[20] The causes of action alleging a violation of General Municipal Law § 239-m, however, may be asserted by all of the appellants. The purpose of General Municipal Law § 239-m is to "bring pertinent inter-community and county-wide planning, zoning, site plan and subdivision considerations to the attention of neighboring municipalities and agencies having jurisdiction" (General Municipal Law § 239-l) and by so doing to facilitate regional review of land use proposals that may be of regional **89 concern (see *Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra* at 677, 642 N.Y.S.2d 164, 664 N.E.2d 1226). Individuals such as the Shapiros, who are affected by a land use determination that is subject to review under General Municipal Law § 239-m, have standing to assert that the enacting municipality has failed to comply with the requirements of that statute**335 (see

*Matter of Duke & Benedict v. Town of Southeast, supra* ). Because adjoining municipalities necessarily have the same interest in the regional review that General Municipal Law § 239-m requires, the Villages also have standing to assert such claims. The appellants' ninth cause of action should not, therefore, have been dismissed.

[21][22] The appellants' constitutional claims, however, were properly dismissed, since none of the appellants have standing to raise them. Whether a municipality is or is not a person for the purpose of asserting a violation of the Fourteenth Amendment of the United States Constitution (*compare Township of River Vale v. Town of Orangetown,* 403 F.2d 684, with *South Macomb Disposal Auth. v. Township of Washington,* 790 F.2d 500, 505; *City of S. Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231, 233,*cert. denied*449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502; *City of New Rochelle v. Town of Mamaroneck,* 111 F.Supp.2d 353, 364), it must still have a personal stake in the outcome of the litigation in order to have standing to raise an equal protection or due process claim (see *Warth v. Seldin,* 495 F.2d 1187, 1192 n. 6,*affd.*422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343). The Villages have no such stake in either of the constitutional claims. Similarly, the Shapiros, as a married couple, have no personal interest in the Town's alleged discrimination against the unmarried. While the Shapiros may have an abstract interest in whether the Town is impermissibly discriminating in favor of a particular religion, they have failed to allege any injury as a result of the allegedly unconstitutional conduct, as they are required to do (see *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700). The Supreme Court therefore properly dismissed, for lack of standing, the tenth and eleventh causes of action insofar as asserted by all of the appellants.

[23][24] The appellants' remaining causes of action center upon the Town's alleged failure to comply with the requirements of SEQRA. "To establish standing under SEQRA, the petitioners must show

(1) that they will suffer an environmental 'injury that is in some way different from that of the public at large,' and (2) that the alleged injury falls within the zone of interest **90** sought to be protected or promoted by SEQRA" (*Matter of Barrett v. Dutchess County Legislature,* 38 A.D.3d 651, 653, 831 N.Y.S.2d 540, quoting *Society of Plastics Indus. v. County of Suffolk, supra* at 772-773, 570 N.Y.S.2d 778, 573 N.E.2d 1034; *see Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra* at 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; *Matter of Blue Lawn v. County of Westchester,* 293 A.D.2d 532, 533, 740 N.Y.S.2d 404).

The Shapiros live immediately across the street from the Patrick Farm site, which is one of the four sites identified in the course of the Town's review processes as subject to development in accordance with the adult student housing law. Such proximity alone permits an inference that the Shapiros possess the requisite interest in the dispute (*see Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra* at 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; *Matter of Barrett v. Dutchess County Legislature, supra; Matter of Long Is. Contractors' Assn. v. Town of Riverhead,* 17 A.D.3d 590, 594-595, 793 N.Y.S.2d 494; *Matter of Rediker v. Zoning Bd. of Appeals of Town of Philipstown, supra* at 550, 721 N.Y.S.2d 77). The Shapiros thus have standing to challenge the adoption of the adult student housing law as violative of SEQRA because it is inferred from their proximity to the site that they will suffer **336** environmental injury (*see Matter of Sun-Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, supra* at 413-414, 515 N.Y.S.2d 418, 508 N.E.2d 130; *Golden v. Steam Heat,* 216 A.D.2d 440, 628 N.Y.S.2d 375; *Matter of Prudco Realty Corp. v. Palermo,* 93 A.D.2d 837, 461 N.Y.S.2d 58, *affd. on other grounds* 60 N.Y.2d 656, 467 N.Y.S.2d 830, 455 N.E.2d 483; *Matter of Marasco v. Luney,* 99 A.D.2d 492, 470 N.Y.S.2d 436). The Shapiros do not allege, however, that they reside in close proximity to the Nike site, one of the four sites to which the adult student housing law applies, and the one on which Chaim Chofetz applied for site plan approval in order to construct adult student housing. Since the Shapiros have not alleged any

other basis upon which they have suffered injury with respect to that site plan application, therefore, the thirteenth cause of action was properly dismissed insofar as asserted by the Shapiros.

[25] The inference from proximity that supports the standing of an individual or non-governmental entity, however, does not operate in the same way to confer standing on a municipality. That presumption rests on the unremarkable conclusion that environmental injury is the ordinary consequence of proximity to the source of a significant environmental impact (*see Matter of Mobil Oil Corp. v. Syracuse Indus. Dev. Agency,* 76 N.Y.2d 428, 559 N.Y.S.2d 947, 559 N.E.2d 641; *Akpan v. Koch,* 75 N.Y.2d 561, 569, 555 N.Y.S.2d 16, 554 N.E.2d 53; *Vinnie Montes Waste Sys. v. Town of Oyster Bay,* 199 A.D.2d 493, 606 N.Y.S.2d 41; **91** *Matter of Valhalla Union Free School Dist. v. Board of Legislators of County of Westchester,* 183 A.D.2d 771, 583 N.Y.S.2d 503). The residents near a road that will receive substantial additional traffic from a significant development, or the neighbors of an industrial facility that will give rise to smoke or noise, are clearly affected directly by those impacts in a way that others are not (*see Matter of Barrett v. Dutchess County Legislature, supra; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v. Planning Commn. of City of N.Y.,* 259 A.D.2d 26, 32-33, 695 N.Y.S.2d 7; *Matter of Parisella v. Town of Fishkill,* 209 A.D.2d 850, 851-852, 619 N.Y.S.2d 169).

[26] A municipality, however, does not suffer from that traffic or noise in the same way. A municipality, as such, neither breathes foul air, nor hears loud noises, nor waits in traffic. As a result, since a municipality is limited to asserting rights that are its own (*see Town of Scarsdale v. County of Westchester,* 192 A.D.2d 517, 518, 595 N.Y.S.2d 811), and is not permitted to assert the collective individual rights of its residents (*see Gulotta v. State of New York,* 228 A.D.2d 555, 557, 645 N.Y.S.2d 41; *Incorporated Vil. of Northport v. Town of Huntington,* 199 A.D.2d 242, 243-244, 604 N.Y.S.2d 587), it cannot be presumed to have suffered environmental injury by reason of its prox-

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

**(Cite as: 45 A.D.3d 74)**

imity to the source of the impacts. A municipality thus cannot establish its standing merely on that basis.

To say that a municipality is not presumed to suffer environmental injury in the same way as an individual, however, does not mean that a municipality can never suffer cognizable environmental injury. We have held that "villages may have standing to sue in appropriate cases" (*Incorporated Vil. of Northport v. Town of Huntington, supra* at 243, 604 N.Y.S.2d 587), where they have "a demonstrated interest in the potential environmental impacts of the project" (*Matter of Town of Babylon v. New York State Dept. of Transp.,* 33 A.D.3d 617, 618-619, 822 N.Y.S.2d 138). Thus, although we have **337 denied standing to a municipality where it could not demonstrate that it was aggrieved by the determination in issue (*see Village of Port Chester v. City of Rye, supra; Village of East Hills v. Siegel,* 83 A.D.2d 849, 441 N.Y.S.2d 747), we have found a municipality to have standing where a specific municipal interest was articulated (*see Town of Riverhead v. Long Is. Light. Co.,* 258 A.D.2d 643, 644, 685 N.Y.S.2d 792).

[27][28] A municipality's "demonstrated interest in the potential environmental impacts of the project" can be established in several ways. A municipality that has been identified as an involved agency, i.e., an agency with some approval authority with respect to the project (*see* 6 NYCRR 617.2 [s] ), for example, has *92 standing on that basis alone (*see Matter of Town of Pleasant Val. v. Town of Pough-keepsie Planning Bd.,* 289 A.D.2d 583, 736 N.Y.S.2d 70). Direct authority over the matter, however, is not required. Municipalities, like individual litigants, have interests to protect, including property interests. In *Town of Riverhead v. New York State Dept. of Envtl. Conservation,* 193 A.D.2d 667, 669, 598 N.Y.S.2d 14, for example, we held that a town was entitled to litigate a challenge to an action taken by the DEC because the town was an interested property owner. Similarly, in *Matter of Town of Coeymans v. City of Albany,* 284 A.D.2d 830, 728 N.Y.S.2d 797, the Appellate Division, Third Department, held that where a town

alleged that, as a result of a city's siting of a regional waste disposal facility within the town, "an aquifer and other water resources are subject to potential contamination and that Town 'public use facilities, such as schools ... would be adversely affected by blowing trash, noise and odors, [and] infestations of vectors' because of their proximity to the proposed landfill"(*id.* at 833, 728 N.Y.S.2d 797), the town had standing to challenge the city's compliance with SEQRA because "these alleged adverse effects are peculiar to the Town's role as a municipal agency"(*id.* at 833, 728 N.Y.S.2d 797).

[29][30] The unique nature of a municipality's environmental interests, however, requires that the inquiry into its environmental standing not be a mechanical one, particularly in light of the established preference that the issues presented by land use disputes be decided on the merits (*see Matter of Barrett v. Dutchess County Legislature, supra* ), rather than by a "heavy-handed" approach to standing (*see Matter of Sun-Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, supra* at 413, 515 N.Y.S.2d 418, 508 N.E.2d 130; *Matter of Douglaston Civic Assn. v. Galvin,* 36 N.Y.2d 1, 6, 364 N.Y.S.2d 830, 324 N.E.2d 317). Applying those principles here, and assuming, as we must for the purpose of this motion, that the allegations set forth in the complaint and in opposition to the motion are true (*see Matter of Long Is. Contractors' Assn. v. Town of Riverhead,* 17 A.D.3d 590, 594, 793 N.Y.S.2d 494), the Villages have established a "demonstrated interest in the potential environmental impacts" of the adult student housing law sufficient to give them SEQRA standing.

The amended petition alleges that land use in the Villages is mostly low to medium density residential, and that significant parcels of land that could be developed under the adult student housing law adjoin the villages, including the 200-acre Patrick Farm site and the 4.7-acre Nike site, both of which are surrounded by low density residential uses. The amended petition *93 alleges that the change in zoning would increase the total number of residential units that may be built on these parcels by a factor of more than 10. It further alleges that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Villages share much of their infra**338 structure with the Town, and that development under the adult student housing law will generate substantial increases in water and sewage system usage and traffic. In this regard, Jeffrey Osterman, the appellants' expert planner, opined in his affidavit, submitted in opposition to the defendants' cross motions, that development to the maximum potential permitted by the adult student housing law would increase water usage by 12 times over the usage generated by the current zoning. The Rockland County Sewer District, in commenting on Chaim Chofetz's proposed site plan for the Nike site, noted that the increased development, while within the existing capacity of the sewage system, "may lead to an overflow of the Sewer District's facilities in the future." In a similar vein, the Rockland County Commissioner of Planning, in comments submitted to the Town Board pursuant to General Municipal Law § 239-m, asserted that the impact to the community character of neighboring communities with low to moderate density "would be significant" and that, therefore, adult student housing of the type authorized by the adult student housing law should not be permitted "in the immediate proximity of a municipal boundary."

These assertions establish a basis for legitimate concern on the part of the Villages that the development permitted by the adult student housing law will have a substantial detrimental effect on the roads in their community, their shared water supply and sewer systems, and the character of their neighborhoods. They fall short, however, of establishing the property interest that provided the basis for the standing of the municipalities in *Town of Riverhead* and *Town of Coeymans,* since there is no claim that the Villages themselves own or otherwise have responsibility for these facilities.

Nevertheless, a municipality is more than the collection of pavement, pipes, and other improvements that make up its infrastructure. Rather, a village is a local governmental unit with broad powers, conferred not just by legislative grant, but as a matter of constitutional entitlement (*see Town of Black Brook v. State of New York,* 41 N.Y.2d 486, 489,

393 N.Y.S.2d 946, 362 N.E.2d 579; N.Y. Const. art. IX). It "is politically a separate municipality, with powers of its own and authority to govern itself as it sees fit, within the limits of the organic law of its creation and the state and federal *94 Constitutions"(*Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 389, 47 S.Ct. 114, 71 L.Ed. 303).

In the furtherance of this authority, municipal officials exercise a broad array of powers with respect to the nature of the community, including the powers to protect and enhance the "physical and visual environment" (*see* Municipal Home Rule Law § 10[1][a][10] ), and to enact zoning regulations (*see Matter of Kasper v. Town of Brookhaven, supra* at 217, 535 N.Y.S.2d 621; *Matter of Schilling v. Dunne, supra* at 184, 506 N.Y.S.2d 179; *North Bay Assoc. v. Hope, supra* at 706, 497 N.Y.S.2d 757; *Yoga Socy. of N.Y. v. Incorporated Town of Monroe, supra* at 843, 392 N.Y.S.2d 81). It is through the exercise of these powers that they define the character of the community for the benefit of its residents (*see Curtiss-Wright Corp. v. Town of E. Hampton,* 82 A.D.2d 551, 556, 442 N.Y.S.2d 125).

[31] Community character is specifically protected by SEQRA. SEQRA requires the preparation of an environmental impact statement with respect to any action that "may have a significant effect on the environment" (ECL 8-0109[2] ). "Environment," for this purpose, includes, significantly, "existing patterns of population concentration, distribution, or growth, and **339 existing community or neighborhood character" (ECL 8-0105[6] ). The criteria by which the significance of a project is determined include "the creation of a material conflict with a community's current plans or goals as officially approved or adopted" and "the impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources or of existing community or neighborhood character" (6 NYCRR 617.7[c][1] [iv], [v] ). "The impact that a project may have on ... existing community character, with or without a separate impact on the physical environment, is a relevant concern in an environ-

mental analysis"(*Chinese Staff & Workers Assn. v. City of New York,* 68 N.Y.2d 359, 366, 509 N.Y.S.2d 499, 502 N.E.2d 176).

The power to define the community character is a unique prerogative of a municipality acting in its governmental capacity. All of the other incidents of local government, including its electoral and legislative processes, management policies, and fiscal decisions, are ultimately aimed at determining and maintaining the community that its residents desire. It is the right to continue to exercise that authority which the Villages assert here, in the face of the potential threat posed by the Town's action with respect to the property along the Villages' borders. Substantial development in an adjoining municipality can have a significant detrimental impact on the character of a community**95** (*see Matter of National Merritt v. Weist,* 41 N.Y.2d 438, 444, 393 N.Y.S.2d 379, 361 N.E.2d 1028; *Matter of Holmes v. Brookhaven Town Planning Bd.,* 137 A.D.2d 601, 604, 524 N.Y.S.2d 492), thereby limiting the ability of the affected municipality to determine its community character in ways far more important than might the traffic concerns at issue in *Village of Port Chester v. City of Rye, supra* or the individual variance that was challenged in *Village of East Hills v. Siegel, supra.* Thus, unlike the solid waste generation fee at issue in *Incorporated Vil. of Northport v. Town of Huntington, supra,* the Villages sue here not to assert a claim that belongs to their residents individually but, rather, to protect their unique governmental authority to define their community character. The Villages have thus established a "demonstrated interest in the potential environmental impacts" of the adult student housing law, and they therefore have standing to seek judicial review of the SEQRA process that resulted in its adoption. Because it is only the Village of Wesley Hills, however, that has alleged any such interest as to the Chofetz Chaim site plan application, it is only that village that has established the requisite standing to pursue the thirteenth cause of action.

[32] Finally, the harms alleged by the appellants are not speculative and the interposition of their causes of action are not premature. The appellants suffered actual and concrete harm, and thus became aggrieved, when the adult student housing law was enacted, at which point the Town Board committed itself to a definite course of future action, notwithstanding the fact that no site plan for the development of any particular site had by then been, or has yet to be, approved (*see Matter of Eadie v. Town Bd. of Town of N. Greenbush,* 7 N.Y.3d 306, 317, 821 N.Y.S.2d 142, 854 N.E.2d 464; *Matter of Young v. Board of Trustees of Vil. of Blasdell,* 89 N.Y.2d 846, 848-849, 652 N.Y.S.2d 729, 675 N.E.2d 464; *Matter of Save the Pine Bush v. City of Albany,* 117 A.D.2d 267, 269-270, 502 N.Y.S.2d 540, *affd.* 70 N.Y.2d 193, 201-203, 518 N.Y.S.2d 943, 512 N.E.2d 526; *Matter of J.B. Realty Enter. Corp. v. City of Saratoga Springs,* 270 A.D.2d 771, 773, 704 N.Y.S.2d 742; *Matter of Price v. County of Westchester,* 225 A.D.2d 217, 220, 650 N.Y.S.2d 839; **340***Matter of Wing v. Coyne,* 129 A.D.2d 213, 216-217, 517 N.Y.S.2d 576; *Matter of Avy v. Town of Amenia,* 4 Misc.3d 1020(A), 2004 WL 1949174, *affd.* 27 A.D.3d 557, 813 N.Y.S.2d 134).

Accordingly, the Supreme Court correctly dismissed the appellants' tenth cause of action, as well as the seventh, eighth, eleventh, and twelfth causes of action insofar as asserted by the Villages, but incorrectly dismissed the first through sixth and ninth causes of action insofar as asserted by the Villages. The **96** Supreme Court improperly dismissed the first through ninth, eleventh, and twelfth causes of action insofar as asserted by the Shapiros, and improperly dismissed the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, but properly dismissed the thirteenth cause of action insofar as asserted by the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Shapiros.

Thus, the order and judgment is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages and substituting therefor provisions denying those branches of the cross motions, by deleting the provisions thereof

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, and twelfth causes of action insofar as asserted by the Shapiros and substituting therefor provisions denying those branches of the cross motions, and by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, and the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages, the first, second, third, fourth, fifth, sixth, seventh, eighth, and twelfth causes of action insofar as asserted by the Shapiros, and the thirteenth cause of action insofar as asserted by the Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.

The parties' remaining contentions are without merit.

ORDERED that the order and judgment is modified, on the law, (1) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth **\*97** causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions, (2) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and

twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and substituting therefor provisions denying those branches of the cross motions, and (3) by deleting the provisions thereof granting those branches of the respondents**\*\*341** /defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.

**\*68** RITTER, COVELLO and BALKIN, JJ., concur.

N.Y.A.D. 2 Dept.,2007.

Village of Chestnut Ridge v. Town of Ramapo

45 A.D.3d 74, 841 N.Y.S.2d 321, 2007 N.Y. Slip Op. 06434

END OF DOCUMENT

**Exhibit E**

*Environmental Clean Part*

At a ~~term~~ of the Supreme Court of the State
of New York, held in and for the County of
Westchester at White Plains, New York on
September *11*, 2007.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE VILLAGE OF CHESTNUT RIDGE, THE      :
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS,     :
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

         Index No. 04-16876

       :

                  Petitioners/Plaintiffs,

       :

      - against -                  :     Assigned Judge:
                                   Hon. Francis A. Nicolai

THE TOWN OF RAMAPO, THE TOWN           :
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF         :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC and    :
THE BOARD OF APPEALS OF THE TOWN OF
RAMAPO,                            :

**ORDER TO SHOW CAUSE**
**RECEIVED**

SEP  5 2007

CHIEF CLERK
WESTCHESTER SUPREME
AND COUNTY COURTS

           Respondents/Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UPON reading the Affirmation of Michael D. Zarin, dated September 5, 2007,

and the exhibits annexed thereto; and upon all affidavits, pleadings and proceedings previously

had and filed herein, ~~it is hereby~~ *and upon oral argument before this Court on Sept 5, 2007,*
*and Affirmation of Dennis E.A. Lynch Esq dated 9/6/07, Memorandum of Town*
*Respondents dated 9/6/07, & Affirmation of Michael Ozarin'esq dated 9/7/07, as limited to*
ORDERED, that Respondents/Defendants the Town of Ramapo, the Town Board *the issue*
*of the*
of the Town of Ramapo, the Planning Board of the Town of Ramapo, the Board of Appeals of *Temporary*
*Restraining*
the Town of Ramapo (collectively, the "Town" or "Municipal Respondents"), Yeshiva Chofetz *Order Set*
*Forth*
Chaim of Radin ("Chofetz Chaim"), and Scenic Development, LLC, shall appear and show cause *hereby*
*Courtroom 800*
before this Court at the Westchester County Courthouse, 111 Dr. Martin Luther King, Jr.

*Acting*
Boulevard, White Plains, New York, before the Hon. Francis A. Nicolai, Justice of the Supreme

Court, on the _26_ *TH* day of September, 2007 at ~~8:30~~ *10:00* o'clock, in the forenoon, or as soon thereafter

as the parties can be heard why an Order should not be entered restoring and/or reinstating the

Preliminary Injunction granted by this Court in its Order, dated August 2, 2005, or in the

alternative, granting a new Preliminary Injunction:

      (i)    enjoining all Municipal Respondents from granting any further approvals
              pursuant to and/or in connection with the Town's Adult Student Housing
              Law ("ASHL"), and rescinding any permits and approvals previously
              granted;

      (ii)   enjoining all Municipal Respondents from processing any applications
              pursuant to or in connection with the ASHL;

      (iii)  enjoining the Town from issuing any additional or new Building Permits
              or Certificates of Occupancy with regard to Chofetz Chaim's ASHL
              project on the property known as the Nike Site, or any other site pursuant
              to and/or in connection with the ASHL; and

      (iv)  suspending any other building or site work under the ASHL at the Nike
              Site or any other site,

until such time as a final determination is rendered with regard to (i) the legality of the ASHL,

and (ii) the legality of the negative declaration issued in connection with the Chofetz Chaim

Application on November 30, 2004; and it is further

      ORDERED, that pending a hearing and determination of the Motion for a

Preliminary Injunction that a Temporary Restraining Order is hereby issued enjoining:

      (i)    enjoining all Municipal Respondents from granting any further approvals
              pursuant to and/or in connection with the Town's Adult Student Housing
              Law ("ASHL"), ~~and rescinding any permits and approvals previously granted~~;

      (ii) enjoining Respondents Scenic Development and Yeshiva and its agents and
          assigns from applying for a temporary or permanent Certificate of Occupancy
          for the Nike site; *and from occupying the site.*

*[handwritten right margin: new / VF JJC]*

      (iii) enjoining all Town respondents, their departments and employees, from
          issuing any Certificates of Occupancy for any structure erected on Chofetz
          Chaim's ASHL project on the property known as the Nike site, and from
          issuing any further permits as to any other site pursuant to and/or in connection
          with the ASHL; and

*[handwritten left margin: new / ADJC]*

2

*any site other than*

(iv)    suspending any other building or site work under the ASHL at the Nike Site ~~during other~~ site; and it is further

ORDERED, that a copy of this Order to Show Cause, and the papers upon which it is predicated, shall be served upon Respondents or their respective counsel by personal service or overnight mail no later than September *13*, 2007; and ~~it is~~ *by personal service upon Mosdos Chofetz Chaim INC. and the law firm of Rochelle Inger PLLC, 1 Dalewood Dr, Suffern NY on or before Sept. 14, 2007, Sept. 18, 2007, 10:00* ORDERED, that answering papers, if any, shall be served upon *RJSC*

Petitioners/Plaintiffs' counsel as to be received no later than September _____, 2007, ~~and reply~~ papers shall be served upon Respondents/Defendants' respective counsel and filed no later than ~~September _____, 2007; and~~ it is further

ORDERED, that the Sheriff's Office of Westchester County or any other authorized law enforcement agency with jurisdiction shall have the power to enforce this Order to Show Cause. *ORDERED, that all counsel shall appear on the return date at which time no testimony will be taken and a hearing date will be scheduled.*

*ORDERED, that on the return date of this application, Mosdos Chofetz Chaim INC and Respondent Yeshiva Chofetz Chaim & Radin shall appear and clarify the difference between these entities, and the legal distinctions between them, if any.*

*[signature]*
Honorable Francis A. Nicolai
Acting Supreme Court Justice

3

**Exhibit F**

Proceedings                    19

that's all, not to adjourn the

proceedings.

        With regard to threshold issues,

Mr. Zarin is here for the individual

families and for the villages. I know

of no evidence that has been set forth

that the villages have authorized by

resolution this application, so if he

has that proof, certainly I would like

to see it. I think that's germane to

the Court's consideration of the

issues, that is one threshold issue.

        The second threshold issue, your

Honor, since December 14th of 2005, the

premises that are the subject matter of

this proceeding insofar as the Nike

site were transferred.

        There is necessary party called

Mosdos, Mosdos Chofetz Chaim Inc. who

has not been given notice of this

particular proceeding, is not a party

to this particular proceeding, and I

think before the Court issues any

orders, would have a right to come and

Proceedings                    20

1
2      argue their respective position.

3            THE COURT:  Would you just be a

4      little more specific with regard to

5      that argument?  Who is the necessary

6      party?

7            MR. LYNCH:  The current owner of

8      the site, the person who has the permit

9      for the site.  Your Honor, I have for

10     the Court's information, if I can hand

11     it up, it's the only copy I have, a

12     copy of a permit issued by the Town of

13     Ramapo, December 15th of 2005, to

14     Mosdos Chofetz Chaim, so at least since

15     December of '05--

16           THE COURT:  Is that an individual,

17     religious corporation?

18           MR. LYNCH:  I did not do the

19     incorporation, I don't know.  If I had

20     to guess, I would guess it's a

21     religious corporation.

22           THE COURT:  It is the same as

23     Yeshiva Chofetz Chaim, is that the same

24     people?

25           MR. LYNCH:  I am not the attorney

Proceedings                    21

1

2    for the Mosdos Chofetz Chaim.  I don't

3    know its make-up.  They were not given

4    copies of the papers.  They own the

5    property.  They have the permit.  They

6    are a necessary party, I believe,

7    before the Court can enter any

8    particular order.  I also have a copy

9    of the deed if your Honor would want

10   that particular exhibit.  I can hand it

11   up, if I could, with your Honor's

12   permission.

13        So those, I think, are threshold

14   issues.

15        THE COURT:  Would you have these

16   marked as Respondent's B and C.

17        Mr. Zarin, we don't have copies

18   for you.  We have to give you copies

19   after this argument.

20        MR. ZARIN:  Can I take a look at

21   them?

22        THE COURT:  Show them to counsel,

23   please.

24        MR. LYNCH:  Your Honor, putting

25   aside --

Proceedings                    22

1

2          THE COURT:  One moment, let's

3     review the documents for a second.

4          MR. LYNCH:  Forgive me.

5          MR. ZARIN:  I would just like to

6     point out, your Honor, it appears both

7     parties share the same address.

8          THE COURT:  Well, Mr. Zarin, the

9     real question in my mind is, we need a

10    rabbinical scholar present who can

11    answer this question.  The caption says

12    Yeshiva Chofetz Chaim of Radin, and

13    that says Mosdos Chofetz Chaim, and the

14    question in my mind, two-thirds of it

15    have the same words.  Whether we are

16    dealing with the same entity or not,

17    but that is something we have to

18    determine.  I don't know.

19         MR. ZARIN:  I would also like to

20    raise, your Honor, that there have

21    been --

22         THE COURT:  One moment, let us

23    have one argument completed and then

24    you can respond.

25         Before you proceed, one of the

1

2    if they would have recognized the risks

3    at that time, and they would have at

4    that time ceased construction and

5    ceased processing this to allow the

6    process to play itself out and we

7    sought a calendar preference with the

8    Appellate Division which opposed, we

9    sought to expedite in all respects this

10   litigation, it was opposed with

11   sanctions, with other motions and the

12   like, so this pleading of equity now at

13   this stage to allow them to continue I

14   think is really fraught with a certain

15   amount of disingenuousness and lacks

16   merit.

17         On the issue of the necessary

18   party, your Honor, this case has had a

19   number of pleadings post December 15th,

20   '05, both some initiated by defendants,

21   others initiated by us, in which

22   defendants put in papers, never was the

23   issue raised in any of those that we

24   were lacking the necessary party, nor

25   was this party ever added to their

1          Proceedings                33
2          caption as a relevant party to any of
3          their particular motions concerning the
4          property, so to raise it at this stage
5          again I think is without merit and
6          certainly disingenuous.
7              With respect to the, I think the
8          sort of underlying issue here about
9          look, the irreparable harm, there
10         should be no irreparable harm here.
11             If we have to undertake or redo
12         SEQRA, we will redo SEQRA and see if
13         there are any mitigations, and we will
14         face the issues at this juncture.
15             This Court sitting as the
16         environmental court I think is well
17         versed in the intent or the purported
18         intent and the meaning and the
19         practical implications of SEQRA, and if
20         plaintiffs would have, or if defendant
21         town and the applicant would have
22         recognized the import of SEQRA at that
23         time, this project may have been very
24         different, as this Court cited.  It may
25         have had less density.  It may have had

**Exhibit G**

Supreme Court of the State of New York
Appellate Division: Second Judicial Department

M60392
E/sl

ROBERT A. SPOLZINO, J.P.
DAVID S. RITTER
JOSEPH COVELLO
RUTH C. BALKIN, JJ.

2007-08557

DECISION & ORDER ON MOTION

In the Matter of Village of Chestnut Ridge,
et al., petitioners, v Town of Ramapo, et al.,
respondents.

(Index No. 04-16876)

Motion by the respondent Yeshiva Chofetz Chaim of Radin for leave to appeal to this court from an order of the Supreme Court, Westchester County, dated September 11, 2007, and to stay enforcement of the order pending hearing and determination of the appeal.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

ORDERED that the branch of the motion which is for leave to appeal is denied; and it is further,

ORDERED that the branch of the motion which is to stay enforcement of the order pending hearing and determination of the appeal is denied as academic.

SPOLZINO, J.P., RITTER, COVELLO and BALKIN, JJ., concur.

ENTER:

_James Edward Pelzer_
James Edward Pelzer
Clerk of the Court

September 25, 2007

MATTER OF VILLAGE OF CHESTNUT RIDGE v TOWN OF RAMAPO