UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------

THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESTLEY HILLS,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

Petitioners/Plaintiffs,

-against-                                      Case No.: 07 CIV 9278

THE TOWN OF RAMAPO, THE TOWN BOARD OF
THE TOWN OF RAMAPO, THE PLANNING BOARD
OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ
CHAIM OF RADIN, SCENIC DEVELOPMENT, LLC
and THE BOARD OF APPEALS OF THE TOWN OF
RAMAPO, and MOSDOS CHOFETZ CHAIM, INC.

Respondents/Defendants.

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REMAND

Joseph J. Haspel, Esq. (JJH-5753)
*Attorney for Defendant Mosdos*
40 Matthews Street
Suite 201
Goshen, New York 10924
845-294-8950

# TABLE OF CONTENTS

Preliminary Statement ……………………………………………………………    1

Statement of Facts …………………………………………………………    4

Argument ……………………………………………………………………    12

    The Plaintiffs Attempts To Deprive Mosdos Its
    Use of Its Property Is Cause For Removal of This Case ………………    12

    Plaintiff's Procedural Arguments Are Without Merit ………………………    17

Conclusion …………………………………………………………………..    23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESTLEY HILLS,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

Petitioners/Plaintiffs,

-against-

Case No.: 07 CIV 9278

THE TOWN OF RAMAPO, THE TOWN BOARD OF
THE TOWN OF RAMAPO, THE PLANNING BOARD
OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ
CHAIM OF RADIN, SCENIC DEVELOPMENT, LLC
and THE BOARD OF APPEALS OF THE TOWN OF
RAMAPO, and MOSDOS CHOFETZ CHAIM, INC.

Respondents/Defendants.

------------------------------------------------x

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

Preliminary Statement

Mosdos Chofetz Chaim, Inc. ("Mosdos") by its attorney, Joseph J. Haspel, Esq.,

submits this Memorandum in opposition to the Motion of Petitioner/Plaintiffs to remand

this case back to the Supreme Court of the State of New York.

This case is - and has always been - about stopping the spread of the ultra

orthodox and Hasidic Jewish communities in the Town of Ramapo, Rockland County.

In its Petition for removal, Defendant Mosdos Chofetz Chaim, Inc. ("Mosdos") expressly

based its grounds for removal upon the breach of its civil rights under the Fair Housing

Act and the reasoning set forth in Sofarelli v. Pinellas County, et al, 931 F.2d 718 (11th

Cir. 1991) ("Sofarelli") (holding that the filing of a State Court lawsuit as a means to

coerce, intimidate or deter one from moving into a certain neighborhood and thus violate

the Fair Housing Act is grounds for removal in and of itself). In accordance with this

1

Court's Chamber's Rules, a pre-motion conference was held on November 2, 2007. At that time, Mosdos once again indicated that it grounded its Removal Petition upon its claim that Plaintiffs' State Court Action is nothing more than a thinly veiled attempt to stop ultra orthodox and Hasidic jews from spreading into their neighborhoods, and as such the lawsuit was a violation of Mosdos's congregants and students' civil rights and contrary to federal policy as articulated in the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc *et seq.* ("RLUIPA") .

While the *Sofarelli* case, and the reasoning contained therein, was the focus of Mosdos's Removal Petition and the focus of the discussion at the pre-motion conference, it is all but ignored in Plaintiff's instant motion seeking a remand. Instead, Plaintiffs focus on procedural arguments which either are inapplicable (assignee's rights), or grounded in minority and/or an outdated view of the law of removal (timeliness for added defendants to remove). These procedural arguments will be discussed in detail below. Plaintiffs also recite the hornbook law of petitions for removal and related motions for remand, *i.e.* that generally federal questions raised as defenses or counterclaims do not support removal. Mosdos does not challenge the rudimentary law cited by Plaintiffs in this regard. However, the issues presented in this motion are far beyond these rudimentary concepts.

In the simplest terms, Mosdos contends that Plaintiffs' actions in prosecuting their State Court action are specifically designed to deny Mosdos's congregants and students housing based upon their being ultra orthodox and/or Hasidic Jews and as such, the acts are in violation of the Fair Housing Act, 43 U.S.C. §3602 *et seq.* ("FHA"). Besides the FHA, Congress has expressed the policy of the United States to prevent

2

this type of discrimination through its enactment of RLUIPA.  It is well settled that jews constitute a "race" for purposes of the civil rights act. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed. 594 (1987). *See also, Weiss v. La Suisse Societe C'Assurances Sur La Vie*, 260 F.Supp.2d 644 (S.D.N.Y. 2003). As this is a remand motion, the Court's inquiry is limited to that set forth in the four corners of the pleadings. *C.f. Lovern v. General Motors Corporation*, 121 F.3d 160 (4th Cir. 1997). Mosdos's Answer with Counterclaims indicating the facts upon which this case is based is annexed as Exhibit A.

Plaintiffs present a ruse when they suggest that this case is only about New York's State Environmental Quality Review Act (Environmental Conservation Law, Article 8) ("SEQRA"). Regardless, as will be shown below, the policies behind New York's SEQRA and the U.S.'s RLUIPA are, to a significant measure, in conflict. It is the use of these competing statutes by which the Plaintiffs are pressing their discriminatory agenda in violation of the FHA. Noteworthy is the fact that within the State Court system, this case has been assigned to a specialized part in the Supreme Court - Westchester County designed for SEQRA and other environmental matters, instead of the Supreme Court - Rockland County. It is respectfully submitted that that Court is not equipped to properly balance the policy and laws of the United States as articulated in RLUIPA and the FHA, with the policy of New York State as articulated in SEQRA. Under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, federal law may supersede state law, *Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed. 547 (1973); *United States v. City of St. Paul*, 258 F.3d 750 (8th Cir. 2001) (holding that Supremacy Clause precluded City from enforcing its nuisance

abatement code where doing so would interfere with HUD's goal of providing a suitable living environment); *National Solid Wastes Management Association v. Alabama Department of Environmental Management,* 910 F.2d 713 (11th Cir. 1990) (stating: "The Constitution, here specifically the commerce and supremacy clauses, may not be encroached upon, even in an attempt to do something good for the environment." 910 F.2d at 725).

By its very existence, RLUIPA provides that a Religious organization, such as Mosdos, cannot be overly burdened by land use laws. The FHA provides that orthodox and Hasidic Jews cannot be discriminated against in housing accommodations. Coupled together, federal policy is clear, and Mosdos only wants that policy to be enforced.

## STATEMENT OF FACTS

Mosdos is the owner of certain real property in the Town of Ramapo, County of Rockland, State of New York. The property is formerly known as the Nike Site. It is on this site that Mosdos has been the subject of religious discrimination in the past. It is this site, now known as Kiryas Radin, that Mosdos has developed a center of advanced learning. On this site sits the Yeshiva of Mosdos Chofetz Chaim which was designed and built as a religious institution of learning preparing young individuals to become permanent members of the clergy. It draws its mission from the Torah, the Talmud, as well as the teachings of its founder, Rabbi Israel Mayer Kagan. The campus setting is integral to its mission. The location and setting of Kiryas Radin is uniquely suited to the purpose. There is no readily available alternative site with existing facilities that will accommodate the purpose without significant interruption of its mission.

As developed, the site contains a synagogue, study halls, classrooms, a library/Talmudic research center, a ritual emersion bath and residential areas. The entire site is enclosed with fencing, gates, and partition walls. The campus will serve rabbinical students and their families as a center for advanced study and prayer. It is a live in - higher educational institution for the purpose of instructing students in philosophy, theology, spirituality and the religious life in order to prepare them for the rabbinate. It further serves many families as their synagogue and religious studies center.[1]

Noteworthy is the fact that the Kiryas Radin campus is located on a main road abutting the campus of a secular school. This is shown in the aerial view depicted in Exhibit A to the Village's papers. It is not, as described in the moving papers, surrounded only by single family residences. Also noteworthy is the fact that the building of the facility is for all intents and purposes complete, and it was built with all necessary building permits. This case, at least with respect to Mosdos, is no longer about stopping the development of a religious campus, it is about stopping the use of that campus.

The Law of the State of New York provides that where construction is completed, a lawsuit seeking to stop construction should be dismissed as moot. The exception to this rule is where the challenger of the proposed project has sought and has been rejected preliminary injunctive relief. The New York State Court of Appeals has described this rule of law as follows:

> Typically, the doctrine of mootness is invoked where a change in

---

[1] The long history of Chofetz Chaim and Yeshiva Chofetz Chaim is set forth in its Answer with Counterclaims, and the Court is respectfully referred thereto.

circumstances prevents a court from rendering a decision that would effectively determine an actual controversy" (*Matter of Dreikausen v Zoning Bd. of Appeals of the City of Long Beach*, 98 N.Y.2d 165, 172, 774 N.E.2d 193, 746 N.Y.S.2d 429 [2002]). Where the change in circumstances involves a construction project, we must consider how far the work has progressed towards completion. Because a "race to completion cannot be determinative," however, other factors bear on mootness in this context as well. (*Id.*) "Chief among them has been a challenger's failure to seek preliminary injunctive relief or otherwise preserve the status quo to prevent construction from commencing or continuing during the pendency of the litigation" (*Dreikausen*, 98 N.Y.2d at 173). Also significant are whether work was undertaken without authority or in bad faith, and whether substantially completed work is "readily undone, without undue hardship" *(id.)*. Further, we may elect to retain jurisdiction despite mootness if recurring novel or substantial issues are sufficiently evanescent to evade review otherwise.

*Citineighbors Coalition of Historic Carnegie Hill  v. New York City Landmarks Preservation Commission*, 2 N.Y.3d 727, 778 N.Y.S.2d 740, 811 N.E.2d 2 (2004).

In the instant case, a preliminary injunction was sought and, in fact, conditionally granted upon the posting of a preliminary injunction bond. *See* Decision and Order annexed as Exhibit D to the moving papers. It is well settled that where a plaintiff has the opportunity to post a bond to enjoin conduct, and chooses not to do so, then the request for injunctive relief is deemed abandoned, *City of Yonkers v. The Federal Sugar Refining Company*, 221 N.Y. 206, 116 N.E. 998 (1917) (the court stating: "A plaintiff then has the opportunity, if he thinks the security excessive, to abandon his injunction.) *See also, Bonded Concrete, Inc. v. Town of Saugerties*, 42 A.D.3d 852, 855, 841 N.Y.S.2d 152, 155 (3rd Dep't 2007); *Gross v. Shields*, 130 Misc.2d 641, 496 N.Y.S.2d 894 (Sup.Ct. N.Y.Cty. 1985). Since Mosdos completely built its project in accordance with all regulations in effect at the time, and with all necessary approvals from the Town of Ramapo, and since Plaintiffs abandoned their request for injunctive relief, Plaintiffs'

case against Mosdos's Kiryas Radin Campus is moot and dismissable. What survives is Mosdos's federal counterclaim, which should be heard in Federal Court.

Mosdos believes that the Plaintiffs' actions constitute a classic example of discrimination and exclusion under the cloak of legitimacy and rationalization, and it is this type of evil behavior which led to the enactment of RLUIPA.[2]

The Kiryas Radin Campus is in the Town of Ramapo near the boundaries of the Village of New Hempstead, New York. The Village of New Hempstead is not one of the Petitioner/Plaintiffs in this action. The subject property was assumed back into the unincorporated Town of Ramapo ("Town") pursuant to agreement and stipulation between the Village of New Hempstead, the Town, and the Yeshiva which agreement was made as part of a Federal Court stipulation. This Stipulation concluded a lawsuit with the Village of New Hempstead, which was the first municipality which attempted to stop the religious development of the site.

As constructed, the religious studies campus is an almost entirely self-sufficient facility. The Yeshiva will provide for their own sanitation, and will be responsible for all road maintenance, snow removal, and upkeep of the campus. In addition, it is

_____

[2] Sometimes, zoning board members or neighborhood residents explicitly offer race or religion as a reason to exclude... More often, discrimination lurks behind such vague and universally applicable reasons such as traffic, anesthetics, or 'not consistent with the city's land use plan' Senate Legislative History-Joint Statement of Sen. Hatch and Sen. Kennedy 'Need For Legislation' 146 Cong.Rec. S774-01 (daily ed. July 27, 2000) ("The hearing record demonstrates a widespread practice of individualized decisions to grant or refuse permission to use property for religious purposes; these individualized assessments readily lend themselves to discrimination, and they also make it difficult to prove discrimination in any individual case"); H.R. Rep. No. 106-219, at 17 ("Local land-use regulation, which lacks objective, generally applicable standards, and instead relies on discretionary individualized determinations, presents a problem that Congress has closely scrutinized and found to warrant remedial measures under its section 5 authority").

anticipated that over one hundred children will be living in the site premises. The education for these children will be provided by the Yeshiva schools. Therefore, the children will place no strain on the public school system. The Kiryas Radin campus will be in keeping with Chofetz Chaim religious teachings. Jewish religion and custom teaches that Yeshivas are a necessary and vital part of the Jewish life. Yeshivas serve as communities of learning for intense Torah study, charitable works, outreach, and continuous religious practice. According to the beliefs of orthodox jewry, everyone in the learning community, from spouses to children, benefits from the intense religious atmosphere. The creation of a Yeshiva and its communal setting furthers the teachings of the Torah, the goals of the Jewish religion, and it is central to the religious vision of Mosdos.

The Town of Ramapo's Jewish population including Orthodox Jews has grown substantially. While the Town of Ramapo has attempted to work with the growth and expansion of the Orthodox and Hasidic Jewish communities, the Villages have consistently acted to restrain their growth. Indeed, within the Town of Ramapo, a 'village incorporation movement' began in the late 1970's, when orthodox and Hasidic Jewish families began to reside in the Town of Ramapo in increasing numbers. In opposition to the influx of Orthodox and Hasidic Jews within the Town of Ramapo, residents began to establish villages for the purpose of controlling who resided within each village. Within the Town of Ramapo, the Villages of Pomona, Montebello, Chestnut Ridge, Wesley Hills and New Hempstead were formed in the past decade.

The purpose of the village formation movement was to exercise control over zoning and planning and not accommodate the influx of people the local villages

deemed undesirable. The attitude towards the Orthodox and Hasidic Jewish communities in the area has been the platform of the local politicians who have run their campaigns on platforms of containing the spread of the Orthodox and/or Hasidic Jewish communities.

In 2000, a new supervisor was elected who undertook a reevaluation of the needs of the Town. The Supervisor, Christopher St. Lawrence, helped to craft a Master Plan that addressed the needs of the growing community and its surrounding regions. To the horror of the surrounding Villages the Town's Plan allowed for the inclusion of multi-family zones and accessory apartments. During its Master Plan review, the Town of Ramapo learned that there is a distinct population in the jurisdiction that are in need for adequate housing. Many of them are married and single students of the several large religious educational centers in the Town of Ramapo. These are Jewish students who continue their religious studies after marriage. As married couples studying Jewish teachings full-time, these students do not have much income. They would further benefit from the intense religious atmosphere of the communal environment. The Yeshivas wanted to build adequate living quarters for these students on their campuses. However, there were no Town codes available to set guidelines for this type of construction. In order to accommodate any expansion of the Yeshivas, either a variance had to be granted or the zoning code had to be amended to allow multi-family housing to be built in the Town of Ramapo.

During this period of review and comment on the Comprehensive Plan, the Villages who complained about the lack of resources still approved the development of over one thousand multi-family, high-density units in their own respective villages

without any alarm over infrastructure or sewer capacity. In addition, an additional 1,200 units north of the Town of Ramapo are being, or have been connected to the town's infrastructure. In addition, over eighty senior units were approved by the Villages throughout Ramapo without any opposition. These newly approved projects were not a concern to the Villages, as they are not for Orthodox or Hasidic Jews.

In 2001, the Yeshiva approached the town to approve a religious campus at the former Nike missile base. The Yeshiva asked the Town to address the request pursuant to the then newly passed RLUIPA legislation. After much delay the Yeshiva was told that the town would accept the proposed project under RLUIPA provided that the development could be reconciled with all Federal, State and Local Law.    After much discussion about alternative plans, the site was redesigned to accommodate the Town's requests.

As built the campus includes spaces for married students, and their families. According to the Chofetz Chaim's teachings, life at the Yeshiva is central to the student's religious experience and includes many rituals and constant religious practice in the home areas for the students, their spouses, and their children. This religious community would be free from the outside secular influence of mass media, such as television, and had been deemed permissible by the town attorney. Unfortunately, married student housing did not fit within the dormitory definition within the Town Code. Accordingly, the Town chose to amend its Code to meet this deficiency.    Inclusion of the "Adult Married Student" housing classification in the Town's Comprehensive Plan, notwithstanding its limited extent, met with vehement opposition from Villages. The Town used a Generic Environmental Impact Statement (GEIS) in preparation of putting

together a Comprehensive Plan. Pursuant to the GEIS, public opinions (including those from the Villages) were thoroughly solicited and considered over the course of three years. The Villages, realizing that the Master Plan allowed for the growth of the Orthodox and Hasidic communities, started an organized campaign to defeat and block the Master Plan and the Adult Student Housing law from adoption.

Various village politicians and other Village activists used racist remarks and racial stereotyping to install fear and misinformation in regards to the passage of the Master Plan. Articles were written and speeches were given, deriding the Orthodox and Hasidic Communities, including Chofetz Chaim, because of their religious beliefs and religious mode of dress. The Villages mounted a concerted effort to subvert and dominate the Town of Ramapo meetings, in their opposition to passage of the new Comprehensive Plan.

On June 15, 2004 at a special meeting, the Town adopted Resolution No. 2004-358, finding no significant adverse impact on the environment in permitting Adult Student Housing, and issued a Negative Declaration. The Town subsequently amended the zoning code to permit Adult Student Housing as a conditional use, to be known as Local Law #9-2004

Subsequently, Mosdos redesigned the project to conform to this new student housing code. Mosdos submitted its revised plans using the new law as the guide for planning and engineering to the town for site plan approval. Included with this plan was a list of several matters requiring zoning board variances. Once the Plaintiffs learned that Mosdos intended to utilize the law (including RLUIPA) to build housing for its students, the Villages filed suit to stop the promulgation of the law. Although the pretext

of the lawsuit is environmental concerns, the goal of the Plaintiffs is to prevent the spread of the Orthodox and Hasidic communities through intimidation and the financial pressure which results from having to participate in spurious lawsuits.

The Plaintiffs have continually attempted to block any attempts of the Yeshiva to improve its Nike Site campus according to their religious beliefs. The Plaintiffs have gone so far as to contact federal and state agencies with contrived environmental concerns. When the federal agencies dismissed those complaints, the Plaintiffs continued to assert environmental problems, with no basis in fact or law. Prior to the events which are at the center of Plaintiffs' instant lawsuit, *i.e.* the enactment of the Adult Student Housing Law and the modifications of the Town of Ramapo's comprehensive plan (collectively, the "Town's Enactments"), Mosdos maintained that it should be permitted to build its Yeshiva and associated housing under RLUIPA.

Subsequent to the Town's Enactments, Mosdos has maintained that the Town's Enactments were not critical to its ability to build its Yeshiva and associated housing under RLUIPA. Yet, the Town's Enactments have provided a vehicle upon which the Plaintiffs could latch in their attempts to litigate to death the opening of the Kiryas Radin religious campus.

## ARGUMENT

### The Plaintiffs Attempts To Deprive Mosdos Its
### Use of Its Property Is Cause For Removal of This Case

Mosdos does not, as the Plaintiffs contend, assert that RLUIPA grants "wholesale immunity" from land use regulation. RLUIPA does not give religious institutions the right to act with impunity; they remain subject to the constraints of appropriate applicable zoning and land use regulations that meet RLUIPA standards.

Moreover, they remain subject to all other local laws not covered by the act. *Congregation Beth Yitzchok of Rockland, Inc., v. Town of Ramapo,* 593 F. Supp. 655 (1984). RLUIPA does not preempt fire, building, health and safety, nuisance, and similar codes. The act does, however, apply to a regulation that by its application imposes a zoning or land use restriction substantially burdensome to the religious use or development of property by a religious institution. Mosdos is a religious institution involved in the exercise of religion. 42 U.S.C. 2000cc-5(5).

Within the context of the Town's land use regulatory scheme, SEQRA is a land use statute which, through State-wide regulations, is imposed upon municipalities and land developers. SEQRA guidelines are used to elicit disclosures pertaining to conditional zoning, variances, amendments, and other objectives of the all municipalities' Zoning Codes. It is a land use regulation within the meaning of RLUIPA that the Villages are prohibited from implementing in a manner that imposes a substantial burden on Mosdos's religious exercise, in the absence of compelling justification. Compelling justification demands that the governmental interest be incapable of implementation by alternative means posing lesser restriction on Mosdos. 42 U.S.C. § 2000cc2(a)(1).

The Village's attempt to exclude SEQRA from the provisions of RLUIPA is misplaced. "SEQRA" is essentially an environmental full disclosure statute to be used within the land use regulatory scheme. To conceive of SEQRA without land use issues is like conceiving a valley without mountains. It cannot be done.

Interestingly, both RLUIPA and SEQRA speak in terms of burden and mitigation. RLUIPA does not permit undue burdens upon religious organizations, while SEQRA

requires mitigation of burdens to the environment where such mitigation is not overly burdensome. As stated above, under the Supremacy Clause of the United States Constitution, federal law and policy supersede conflicting state law and policy. Regardless, what is important in analyzing this case in general, and this motion in particular, is the policy of the United States when addressing land use by a religious organization as articulated through the RLUIPA statute. In the instant case, the use of a State Statute to undermine a religious entity's ability to use its facility is clearly contrary to the policy behind RLUIPA.

It is the Plaintiffs' intent to use the judicial process, in a manner which appears benign on the surface, in order to undermine the Federal Law and policy that gives rise to Mosdos' ability to remove this case to the Federal Court. As noted above, Mosdos's petition to remove this case was grounded in its belief that the Plaintiffs are using the State Court system as a vehicle to coerce, intimidate, deter or deprive its students from moving into Kiryas Radin. These actions permit removal under 28 U.S.C. §1443(1). See *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991). In *Sofarelli*, various individuals filed suit against Michael Sofarelli to enjoin him from transporting a house by trailer through John's Parkway, a public roadway in Pinellas County, Florida. *Id.* at 720. After some of the individuals were quoted in the local newspaper as stating that they had racial motivations for halting the house move, Mr. Sofarelli removed the case to federal court under section 1443(1) asserting that plaintiffs' efforts to block the move were racially motivated and violated his civil rights under the Fair Housing Act. *Id.* The federal district court remanded the case back to state court and, on appeal, the Eleventh Circuit reversed, holding that removal was proper under section 1443. *Id.* at

725.  In so holding, the Circuit stated that Mr. Sofarelli's counterclaim asserted that the lawsuit in state court was filed in an effort to deter him from providing housing to African Americans in violation of the Fair Housing Act, and since the lawsuit itself was the act by which Mr. Sofarelli's civil rights would be violated, removal was appropriate and warranted. The case originally filed against Sofarelli in state court involved issues of property ownership and land use rights, issues appropriately addressed by state courts. The Eleventh Circuit found that the case fell squarely within the Supreme Court's decision in *State of Georgia v. Rachel*, 384 U.S.780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). The facts in this case stand on all four corners with *Sofarelli*. Like in *Sofarelli*, Mosdos contends that the Plaintiffs are using the State Court system to further their wrongful agenda. Movants all but ignore *Sofarelli*, and, instead, suggest that the Eleventh Circuit's decision "contains no analysis of the propriety of removing a claim under the FHA based on allegations of coercion," and that the Eleventh Circuit's analysis was "far too superficial." Nothing could be further from the truth.

Contrary to the Movant's suggestion, the Eleventh Circuit in *Sofarelli* looked to the Supreme Court authority in *Rachel* and concluded that where the act of going to State Court was in conflict with the laws and policies of the United States, removal is appropriate. In *Rachel*, the Supreme Court was addressing laws of the State of Georgia, which when prosecuted in a certain way were in conflict with the Federal Civil Rights Act. As noted in *Sofarelli*, the very lawsuit being sought to be removed in *Rachel* was part of the machinery being used to deny the parties' their civil rights. The Eleventh Circuit then applied that reasoning to a case where the plaintiffs were using the State Court system to sidestep the Fair Housing Act.

In the instant case, Mosdos alleges that the Villages are using the State Court system and State statutes to pummel it into submission, or in other words, to stop Mosdos's from opening its religious campus. Like in *Sofarelli*, the intent of the parties using the law is at issue, not the law itself. In *Rachel* and *Sofarelli*, the State Laws which were being misused applied to all persons located in the States of Georgia and Florida respectively. This fact did not make the malignancy any more palatable. Indeed, the misuse of State Law to achieve a wrongful agenda was the driving force behind the Eleventh Circuit's determination that removal was proper. The misuse of SEQRA by Plaintiffs herein should be the driving force behind this Court's denial of the instant motion.

The Second Circuit cases cited by Movants do not provide the Villages refuge from *Sofarelli*. Both cases pre-date *Sofarelli* and neither are in conflict with *Sofarelli*. In *New York v. Davis*, 411 F.2d 750 (2nd Cir. 1969) the Court was presented with a criminal prosecution of the proponent of removal. The prosecution was grounded upon threats made by the proponent. Since the menacing complaint against the proponent was completely unrelated to any claim under the Fair Housing Act, the Court declined to allow the removal. Indeed, the Fair Housing Act does not give one the right to threaten another. Notwithstanding, the Second Circuit noted that removal might be allowable if the proponent were being prosecuted on racial grounds due to the place where he was living. Thus, under this authority, if Mosdos and its property is the subject of this lawsuit because the Plaintiffs are proceeding on racial grounds due to the place where the ultra orthodox and Hasidic Jews will be living, removal is proper. Indeed, this is precisely what Mosdos's counterclaim asserts. Accordingly, under this Second Circuit authority,

removal is proper.

The other case cited by Movants, *Emigrant Savings Bank v. Elan Management Corp.*, 668 F.2d 671 (2nd Cir. 1982), involves Defendants who sought to remove a foreclosure action to Federal Court alleging that the plaintiff bank was racially motivated when it refused to restructure the defaulted mortgages. The Court remanded the case noting that the right of a mortgagee to foreclose its mortgage in no way conflicts with any Federal civil rights law, including the Fair Housing Act. To hold otherwise would provide persons protected by the civil rights laws *carte blanche* to default on their loans. Certainly, this authority does not stand for the proposition that Mosdos's claims do not make this case removable.

In Movants' footnote 11, it is conceded that: "the FHA might support removal where a land use provision itself directly interfered with an African-American's ability to live in a premise for race-based reasons." Since under the case, *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed. 594 (1987), jews are a protected race like African-Americans, and since Plaintiffs' use of SEQRA is interfering with Mosdos's ability to occupy its premises, and since there is a clear indication that the Plaintiffs are motivated by their desire to stop the expansion of the ultra-orthodox and/or Hasidic jewish communities in their midst, it appears as if the Plaintiffs have conceded that removal is appropriate under the law.

Perhaps this is why the Villages have resorted to procedural arguments. However, these procedural arguments do not hold water.

## Plaintiff's Procedural Arguments Are Without Merit

The first procedural argument proffered by the Villages is that Mosdos is bound

by a stipulation entered into by counsel for Yeshiva Chofetz Chaim of Radin which

agreed to withdraw its petition for removal and agreed to the remand of this case.

Based upon the language of the Order of Remand, it is probably unnecessary to

address why the Movants are incorrect on the law. Indeed, the Remand Order provides

at its fourth "Whereas" clause:

> WHEREAS, Respondent/Defendant Yeshiva Chofetz Chaim of
> Radin further consented that, in the event that Petitioner/Plaintiffs
> amend the Verified Petition and Complaint, said
> Respondent/Defendant will not seek removal of this action or any
> part thereof to any United States District Court, **provided, that no
> new Respondents/Defendants are added to this action;**
> (emphasis added)

Thus, since Mosdos was added as a new Respondent/Defendant and the

Verified Petition and Complaint was amended, the Remand Order expressly provided

that Yeshiva Chofetz Chaim of Radin ("Radin") could seek removal of this action. This

provision certainly would allow Mosdos to seek removal.

In arguing that this provision should be deemed meaningless, the Movants

hollowly state that Mosdos is merely a "successor in interest" to Radin without any rights

of its own. It is respectfully submitted that the Consent Order is unambiguous, and it

does not limit who may or may not be new Respondents/Defendants who may trigger

this provision.

Of interest is the fact that the Movants acknowledge that Mosdos did not

purchase the property from Radin, which is the party who consented to the Remand

Order. It purchased the property from Yeshiva Chofetz Chaim, Inc., which is the party

that received the property from Yeshiva Chofetz Chaim Kiryas Radin, Inc.    Although no

one would suggest that these entities are without some level of affiliation, they are

independent of each other, with different directors, trustees and corporate purposes, albeit there is some overlapping.

As to the law, the Movant confuses the notion of transferee and successor-in-interest. Although a successor-in-interest is typically a transferee of that interest, a transferee of property need not be a successor-in-interest to all that possessed by the transferor. *Holland v. Williams Mt. Coal Co.*, 496 F.3d 670, 672 (D.C.Cir. 2007).

Moreover, the Movant confuses what runs with the land and what does not. Mosdos would agree that as a subsequent purchaser of real property, it is generally bound by that which runs with the land, *i.e.* easements, liens and zoning designations. With respect to these types of encumbrances, Mosdos would agree that without some intervening right it could receive no more than that held by its transferor. Accordingly, it recognizes that it may be affected by the instant lawsuit making it a necessary party. However, as merely a purchaser of the land, it would not agree that it was bound by a consent to an order issued by its transferor's transferor. Certainly, the Court did not have jurisdiction over Mosdos when it issued the Consent Order, and the Consent Order did not provide that it is binding on the parties' successors. *See e.g. Johnson v. Florida*, 348 F.3d 1334 (11th Cir. 2003); *Shaffer v. Mitchell Transport, Inc.*, 635 F.2d 261 (3rd Cir. 1980) (reviewing successorship cases in the context of Labor Law); *CFTC v. Next Financial Services Unlimited*, 2007 U.S.Dist.LEXIS 8116 (S.D.Fla. 2007) (Court expressly making consent order binding on successors). To the contrary, the Consent Order expressly indicated that it may be unwound if there is a new party brought in. Query, if the case deals with a finite number of properties (four), what new parties could the consent order be referring to. The obvious answer is parties who are brought into

the case as a result of a purchase of the property - like Mosdos.

As noted in the moving papers, the original owner went through a Chapter 11 bankruptcy and reorganized, and it was through that reorganization that the subject property was transferred. Plaintiffs attempt to use Kiryas Radin's Chapter 11 against Mosdos, but their cherry picking of the Kiryas Radin's Plan of Reorganization is deceptively lacking. Indeed, an analysis of Kiryas Radin's Confirmed Chapter 11 Plan clearly precludes Plaintiffs' instant procedural arguments.

Kiryas Radin's confirmed Chapter 11 Plan expressly provided at Paragraph 7.4 that: "On the Effective Date the Debtor [Radin] will transfer the Property [Kiryas Radin] 'as is' to the holder of the then Class 2 M&T Secured Claim. *The Property shall be transferred free and clear of all claims, liens and encumbrances.*"[3] (emphasis added) . In addition, the Confirmed Plan of Reorganization at Paragraph 9.1(b) provided:

> Except as otherwise provided in the Plan, all Persons shall be precluded and enjoined from asserting against the Debtor and the Reorganized Debtor and their respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

A copy of Radin's Confirmed Plan is annexed as Exhibit B. Thus, to the extent, if any, that Radin's consent to the Consent Order constituted an encumbrance of the interest transferred (the land), it was wiped out by the Order confirming Radin's Chapter 11 Plan of Reorganization.

---

[3] During the Chapter 11 proceeding Yeshiva Chofetz Chaim, Inc. purchased the mortgage from M&T bank and be holder of the M&T Secured Claim.

For all these reasons, it is clear that the Villages procedural argument of successorship fails.

The cases cited by Movants do not lend support to their position. The first case, *Allstate Insurance Co. v. Administratia Asigurarilor De Stat*, 875 F.Supp. 1022 (S.D.N.Y. 1995) involved an insurance company's action against reinsurance companies. Pursuant to a New York State statute, the plaintiff sought to compel the defendants to post security. That statute protected New York claimants by allowing them to request security from unauthorized foreign insurers. Since the underlying claimant was not a New York company and since plaintiff was clearly a successor-in-interest of the underlying claimants (assignors were SLR and NESCO) the Court held that plaintiff was without standing to seek security under the statute. Of importance is that the *Allstate* case concerns the assignment of a claim, and that claim is the subject of the statute. Certainly, in such a circumstance, the rights of the assignor *vis a vie* the claim transfers to the assignee. In the instant case, there was no assignment of a claim, there was a purchase of real property. Thus, any citation to law which holds that an assignee stands in the shoes of its assignor is not applicable to issue of removal.

With respect to Movants' argument that Mosdos's removal is untimely because it is made over thirty days from the service of the original summons upon the original parties, that argument is contrary to the weight of current authority. The trend in the case law has been toward the later-served rule. Under this rule, later-served defendants have thirty days from their date of service to file a notice of removal with unanimous consent of the other defendants, even if the first-served defendant did not file a notice of removal within thirty days of its service. Courts adopting this approach have

emphasized the inequity of foreclosing the later-served defendant's right to removal merely because it was not served concurrently. *Glatzer v. Hanley*, 2007 U.S.Dist.LEXIS 34487 (S.D.N.Y. 2007); *General Pump & Well, Inc. v. Laibe Supply Corp.*, 2007 U.S.Dist. LEXIS 80656 (S.D.Ga. 2007); *Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999); *C.L.B. v. Frye*, 469 F.Supp.2d 1115 (M.D.Fla. 2006); *Bussey v. Modern Welding Co.*, 245 F. Supp. 2d 1269 (S.D. Ga. 2003). *See* 14C Charles A. Wright, Arthur R. *Miller* & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 3d § 3732, at 339-40 (1998). *See* 16 James Wm. Moore et al., Moore's Federal Practice § 107.30[3][a][i], at 107-163 (3d ed. 2000).

In support of the last served rule, and noting that other Courts in the Southern District of New York have adopted the last served rule, District Judge Chin wrote in the *Glatzer* case, *supra*:

> Furthermore, as defendants correctly note, the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), favors adoption of the last-served defendant rule. There, the Supreme Court held that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 350. Thus, a defendant's time to remove does not begin to run until simultaneous service of the summons and complaint, or receipt of the complaint "through service or otherwise" after service of the summons. *Id.* at 347-48. Mere receipt of the complaint, without formal service, does not trigger the removal period. *Id.* "The last-served defendant rule is consistent with . . . *Murphy Brothers*, in that it preserves every defendant's opportunity to seek removal and provides every defendant with a uniform time in which to do so, whereas under the first-served defendant rule, the procedural rights of later-served defendants 'slip away . . . before one is subject to any court's authority.'" *Varela*, 148

F.Supp.2d at 300

*Id.*

In the instant case, all of the Defendants have indicated to Mosdos that they support the removal.

Based upon the above authority, Mosdos would have thirty days from the date it was served to file its Removal Petition. It did so in a timely fashion, and accordingly the removal petition is procedurally sound.

**Conclusion**

For all the foregoing reasons, it is respectfully requested that the instant motion to remand this case be denied in toto.

Respectfully submitted,

Joseph J. Haspel
Attorney for Defendant Mosdos
40 Matthews Street
Suite 201
Goshen, New York 10924
845-294-8950

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                        )ss.:
COUNTY OF ORANGE    )

      Leslie K. Schofield, being duly sworn, deposes and says: I am not a party to this action, am over the age of 18 years and reside in Middletown, New York.

      On December 14, 2007, I served a true copy of the annexed Memorandum of Law in Opposition to Motion to Remand in the following manner: by mailing the same in a sealed envelope, with postage prepaid thereon, via Federal Express, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) listed below.

Jody Cross, Esq.
Zarin & Steinmetz
81 Main Street
Suite 415
White Plains, New York 10601

Terry Rice, Esq.
Four Executive Boulevard
Suite 100
Suffern, New York 10901

Patrick Sweeny, Esq.
Holland & Knight LLP
195 Broadway
New York, New York 10007

                                                 Leslie K. Schofield

Sworn to before me this
14th day of December, 2007

_____
NOTARY PUBLIC
Joseph J. Haspel
02HA6056394
Qualified in Orange County
Commission Expires 3/19/2011