EXHIBIT  B

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____ x
                                          :
                                          :
In re:                                    :      Chapter 11
                                          :
YESHIVA CHOFETZ CHAIM KIRYAS              :      Case No. 03-16729 (RDD)
RADIN, INC.,                              :
                                          :
                                          :
                            Debtor.       :
_____ x

# SECOND AMENDED PLAN OF REORGANIZATION, AS MODIFIED, FOR YESHIVA CHOFETZ CHAIM KIRYAS RADIN, INC.

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
Attorneys for Yeshiva Chofetz Chaim
 Kiryas Radin, Inc.
1345 Avenue of the Americas
New York, New York 10105-0143
(212) 586-4050

Of Counsel:    A. Mitchell Greene, Esq.
               Scott A. Steinberg, Esq.

Dated:    New York, New York
          November 23, 2005

{00286572.DOC;3}

**Yeshiva Chofetz Chaim Kiryas Radin, Inc.**, the debtor and debtor-in-possession, proposes the following Second Amended Plan of Reorganization, As Modified, (the "Plan") pursuant to Sections 1121(a), 1122 and 1123 of Title 11 of the United States Code.

# ARTICLE I

## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article I but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; and (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of the Plan.

1.1  **"Administrative Claim Bar Date"** means the first Business Day that is 30 days after the Effective Date.

{00286572.DOC;3}

2

1.2    **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim.

1.3    **"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under Section 503(b) of the Bankruptcy Code.

1.4    **"Allowed Claim"** means a Claim that (a) on the Effective Date has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim was filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, or (b) on the Effective Date is a Disputed Claim but only to the extent that such Disputed Claim is subsequently allowed in accordance with the provisions of Article VIII of the Plan.

1.5    **"Assets"** means all of the property of the Debtor's estate, of whatever kind or nature, whether tangible or intangible, choate or inchoate, including, but not limited to the Mortgaged Premises, cash, accounts, rents, security deposits, furniture, fixtures, equipment, books and records, claims, and causes of action; *provided, however,* that the Assets only include executory contracts and unexpired leases to the extent assumed and assigned to Purchaser pursuant to the provisions of Article VI of the Plan.

{00286572.DOC;3}

3

1.6    **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time and effective as of the Petition Date.

1.7    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to Section 157(d) of Title 28 of the United States Code.

1.8    **"Bankruptcy Fees"** mean all fees and charges assessed against the estate under Section 1930 of Title 28 of the United States Code.

1.9    **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

1.10    **"Bar Date"** means May 24, 2004, the date set by Order of the Bankruptcy Court, subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

1.11    **"Board of Trustees"** means the duly authorized board of trustees of the Debtor.

1.12    **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.13    **"Case"** means this case under Chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled *In Re Yeshiva Chofetz Chaim Kiryas Radin, Inc., Case No. 03-16729 (RDD)*.

{00286572.DOC;3}

4

1.14    **"Cash"** means lawful currency of the United States of America.

1.15    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.16    **"Confirmation"** means the entry of the Confirmation Order.

1.17    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order; *provided, however,* that the Reorganized Debtor, in its sole discretion may waive the requirement that the Confirmation Order become a Final Order, in which event the Confirmation Date shall mean any Business Day selected by the Purchaser following the entry of the Confirmation Order on which the Confirmation Order is not stayed by an Order of a court of competent jurisdiction.

1.18    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider, *inter alia,* (i) confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, (ii) offers for the purchase of the Assets and (iii) any other matter necessary for the entry of the Confirmation Order.

1.19    **"Confirmation Order"** means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor.

1.20    **"Creditor"** means a holder of an Allowed Claim.

1.21    **"Cure Amount"** means any amount required, pursuant to Section 365(b)(1)(A) and (B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

{00286572.DOC;3}

1.22    **"Debtor"** means Yeshiva Chofetz Chaim Kiryas Radin, Inc. a Religious Corporation, organized under the laws of the state of New York.

1.23    **"Deficiency Claim"** means, unless the holder thereof elects treatment in accordance with Section 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, that portion of an Allowed Claim that exceeds the value of all property in which the Estate has an interest that is subject to a Lien securing such Allowed Claim.

1.24    **"Disbursing Agent"** means the Reorganized Debtor or any Entity selected by the Debtor and/or Reorganized Debtor to distribute payments or property under the Plan.

1.25    **"Disclosure Statement"** means the *Second Amended Disclosure Statement for Second Amended Plan of Reorganization for Yeshiva Chofetz Chaim Kiryas Radin, Inc.,* including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.26    **"Disputed Claim"** means a Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if, (i) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the

{00286572.DOC;3}

Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim has been listed in the Schedules.

    1.27  **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to Section 8.7 of the Plan.

    1.28  **"Effective Date"** means, subject to the provisions of Articles X and XI hereof, the first Business Day following the thirtieth day following the Confirmation Date; *provided, however,* that the Effective Date shall be subject to such reductions or extensions, as the Debtor determines in its sole discretion, are necessary to finalize any documentation necessary to consummate the transactions contemplated by the Plan.

    1.29  **"Entity"** means any Person, estate, trust, governmental unit and the United States Trustee.

    1.30  **"Estate"** means the estate created on the Petition Date as set forth in Section 541 of the Bankruptcy Code.

    1.31  **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

    1.32  **"M&T"** means Manufacturers & Traders Trust Company.

{00286572.DOC;3}

1.33    "**M&T Note**" means each and every promissory note, including any amendment or modification thereof, or allonge thereto, evidencing an obligation owed to M&T or any assignee of M&T, and secured by a lien on the Mortgaged Premises on other property of the estate.

1.34    "**M&T Security Documents**" means each and every mortgage, assignment of rents, security agreement and such other agreements granting M&T a Lien or Liens on property of the Debtor or the Debtor's Estate to secure the obligation of Debtor to M&T under the M&T Note.

1.35    "**M&T Secured Claim**" means the full amount of the Debtor's indebtedness to M&T secured by the Mortgaged Premises.

1.36    "**Legal Holiday**" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.37    "**Mortgaged Premises**" or "**Property**" means the real property and the improvements thereon, located at Kiryas Radin Drive, Ramapo, New York.

1.38    "**Order**" means an order of the Bankruptcy Court.

1.39    "**Person**" means individual, partnership or corporation, but does not include governmental unit.

1.40    "**Petition Date**" means October 27, 2003, the date on which the Debtor commenced this Case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.41    "**Plan**" means this Second Amended Plan of Reorganization, As Modified, for Yeshiva Chofetz Chaim Kiryas Radin, Inc. as it may be amended, supplemented or modified

{00286572.DOC;3}

8

from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.42    **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.43    **"Priority Claim"** means an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, Bankruptcy Fees or an Employee Benefit Claim, to the extent entitled to priority under Section 507 of the Bankruptcy Code.

1.44    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.45    **"Professional"** means all professionals employed by the Debtor under Section 327 of the Bankruptcy Code.

1.46    **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (including fees and expenses allowed under Sections 330 or 331 of the Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to Section 503 of the Bankruptcy Code.

1.47    **"Proof of Claim"** means a proof of Claim filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.48    "**Pro Rata**" means the proportion an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

{00286572.DOC;3}

9

1.49    **"Redevelopment Project"** means the construction of housing units and community facilities, including, but not limited to , a synagogue, library, community center, park and playground area on the Mortgaged Premises.

1.50    **"Reorganized Debtor"** means the Debtor, on and after the Effective Date, as reorganized in accordance with the terms of the Plan and as reflected in its Certificate of Incorporation.

1.51    **"Schedules"** mean the schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.52    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.53    **"Secured Tax Claim"** means a Secured Claim for taxes (including, but not limited to, real property taxes, water and sewer assessments and charges, emergency repair fees, financial aid liens, and other similar liens, fees and charges), if any exist, held by or on behalf of a Governmental Unit, to the extent, if any, that such taxes are entitled to priority over the first mortgage held by M&T.

{00286572.DOC;3}

1.54    **"Transfer Taxes"** means any and all stamp taxes or similar taxes, if and as applicable, including, without limitation New York State Mortgage Recording Taxes imposed under Article 11 of the New York State Tax Law.

1.55    **"Unsecured Claim"** means an Allowed Claim, including a Deficiency Claim that is not an Administrative Claim, a Bankruptcy Fee, a Priority Claim, a Priority Tax Claim, a Secured Claim or a Secured Tax Claim.

1.56    **"Yeshiva"** means the Yeshiva Chofetz Chaim, a non-debtor affiliate of the Debtor.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article II in full settlement, release and discharge thereof.

2.1    **Administrative Claim Bar Date**. Except as otherwise provided in Sections 2.2, 2.3 and 2.4 of the Plan, Proofs of Administrative Claims must be filed no later than the Administrative Claim Bar Date. Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or its property.

2.2    **Professionals' Compensation and Reimbursement**. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than the Administrative Bar

{00286572.DOC;3}

11

Claims Date. Any such application timely filed shall be deemed to be a Proof of Administrative

Claim. No later than three (3) days prior to the Effective Date, each such Professional shall provide

the Disbursing Agent with an estimate of the total amount of compensation and expenses for which

such Professional expects to seek final compensation pursuant to Section 330 of the Bankruptcy

Code. Such estimates shall include estimated sums for the preparation and prosecution of any such

application. On the Effective Date the Disbursing Agent shall segregate sufficient cash to pay all

such estimated compensation and expenses in full unless the parties agree otherwise. Objections to

any Professional's application for compensation or reimbursement must be filed and served upon

such Professional, and the Disbursing Agent, no later than 30 days after the filing of such

application. Any such objection not timely filed and served shall be deemed to have been waived.

2.3     **Ordinary Course Liabilities.**   Holders of Administrative Claims for

liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental

units for taxes or interest or penalties related to such taxes) shall not be required to file any Proofs of

Administrative Claim and such Administrative Claims shall be assumed and paid by the

Reorganized Debtor pursuant to the terms and conditions of the transaction giving rise to such

Administrative Claim without any further action by the holders of such claims.

2.4     **Post-Petition Tax Claims.**   All Proofs of Administrative Claims for Post-

Petition Tax Claims for which no bar date has otherwise previously been established, must be filed

on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the

filing of the tax return for such taxes for such tax year or period with the applicable Governmental

Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim

{00286572.DOC;3}

12

by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.5    **Administrative Claims.**  Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full or as may otherwise be mutually agreed, in writing, between the Disbursing Agent and the holder of such claim on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.6    **Priority Tax Claims.**  Except as may be otherwise mutually agreed in writing between the Reorganized Debtor and such Governmental Units, all Allowed Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code, shall be paid in Cash in full, in equal annual installments over a six-year period from the date of assessment of such tax, together with applicable statutory interest accruing from the Effective Date on the unpaid portion thereof. Such payments shall commence on the later of: (i) 60 days after the Effective Date, (ii) 30 days after the entry of a Final Order allowing such Priority Tax Claim and (iii) such other time that is agreed to by the holder of such Priority Tax Claim and the Debtor; *provided,*

{00286572.DOC;3}

13

*however,* that the Reorganized Debtor may, in its sole discretion, pay such Claims in Cash in whole or in part, at any time on or after the Effective Date, without premium or penalty.

   2.7 **Bankruptcy Fees.** All fees and charges assessed against the Debtor or its Estate under Section 1930 of Title 28 of the United States Code shall be paid in cash in full by the Debtor or the Effective Date. Subsequent to the Effective Date, all fees and charges assessed against the Debtor or its Estate under Section 1930 of Title 28 of the United States Code shall be paid in cash, in full, as and when due, by the Debtor or the Disbursing Agent through entry of the Final Decree closing this case.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

   Except as otherwise provided in Article III, Allowed Claims are classified as set forth in this Article III. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

   3.1 **Class 1 - Priority Claims.** Class 1 consists of all Priority Claims.

   3.2 **Class 2 - M&T Secured Claim.** Class 2 consists of the M&T Secured Claim.

   3.3 **Class 3 - Unsecured Claims.** Class 3 consists of all Unsecured Claims.

{00286572.DOC;3}

## ARTICLE IV

### TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

4.1    **Class 1 - Priority Claims.** All Allowed Priority Claims shall be paid in Cash in full, with interest, on the Effective Date, or as may be otherwise agreed in writing between the Reorganized Debtor and the holders of such Claims.

4.2    **Class 3 - Unsecured Claims.** Subject to the provisions of Article VIII of the Plan with respect to Disputed Claims, in full satisfaction of all Unsecured Claims, each holder of an Unsecured Claim shall receive on the Effective Date, or as soon thereafter as is practicable, Cash in the full amount of such Allowed Unsecured Claim, with interest.

## ARTICLE V

### TREATMENT OF IMPAIRED CLAIMS

5.1    **Class 2 – M&T Secured Claim.** Class 2 is impaired under the Plan. Subject to the provisions of Article VIII of the Plan with respect to Disputed Claims, in full and final satisfaction of its Secured Claim, the Property will be transferred to the holder of the Class 2 M&T Secured Claim, free and clear of all claims, liens and encumbrances.

{00286572.DOC;3}

15

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     **Rejection of Executory Contracts and Unexpired Leases.** On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party, if any, except such executory contracts and unexpired leases expressly assumed herein or by order of the Bankruptcy Court, shall be deemed rejected in accordance with Section 365 of the Bankruptcy Code.

6.2     **Rejection Claims.**  Allowed Claims arising from the rejection of any executory contract or unexpired lease of the Debtor shall be treated as Class 3 Unsecured Claims.

6.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Claim for damages arising from the rejection of an executory contract or unexpired lease shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by counsel for the Debtor within 30 days after the earlier of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Confirmation Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, the Reorganized Debtor or their successors or their respective properties.  The Debtor is not aware of any executory contracts or unexpired leases to which it is a party.

{00286572.DOC;3}

# ARTICLE VII

## IMPLEMENTATION OF THE PLAN

7.1 **Implementation.** The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

7.2 **Injunction Against Recording and Taxing Authorities.** As of the Effective Date, the New York State Department of Taxation and Finance and all other New York State and local taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Debtor, its estate, the Reorganized Debtor, any nominee, any creditor of the Debtor or any direct or indirect partner, owner, officer or attorney of any of such entities in connection with a transfer of the Deed or to charge against the Mortgaged Premises or rents generated by the Mortgaged Premises, any Transfer Taxes, which shall in all events be exempt from payment as provided under Section 1146(c) of the Bankruptcy Code, and the Confirmation Order shall so provide.

{00286572.DOC;3}

17

7.3    **Funding.**  Payments and distributions to be made under the Plan are to be made by the Reorganized Debtor who shall be the Disbursing Agent.  In order to fund this Plan, the Debtor and the Yeshiva Chofetz Chaim, a non-debtor affiliate, will raise through donations, pledges and other commitments, sufficient funds to make the payments required herein.  Such funding shall be accomplished as follows: (i) as of the date hereof, the Yeshiva has raised, or caused to be raised, the sum of $1,000,000.00 which was used to purchase the M&T Secured Claim from M&T; and (ii) on or before the Confirmation Date, the Debtor will deliver, or cause to be delivered, $150,000 (the "Initial Deposit") to Debtor's counsel, to be held in escrow (the "Claims Escrow"), which will be used to pay Administrative Claims and Priority Tax Claims.  The holders of Allowed Unsecured Claims have agreed to waive distribution on account of such claims.

7.4    **Transfer of Property.**  On the Effective Date the Debtor will transfer the Property "as is" to the holder of the then Class 2 M&T Secured Claim.  The Property shall be transferred free and clear of all claims, liens and encumbrances.

7.5    **Transfer Taxes.** (a) Pursuant to Section 1146 of the Bankruptcy Code, the initial issuance, transfer or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate, Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by Section 1146, if any, shall not be subject to any state, local or federal law imposing sales tax.

(b) On or before the Effective Date, the Debtor and the holder of the M&T Secured Claim shall execute and file the pre-transfer questionnaires, affidavits, tax returns and other

{00286572.DOC;3}

18

instruments and forms required to be filed pursuant to Article 31-B of the Tax Law of the State of New York to enable the New York State Department of Taxation and Finance to issue either (i) a Form TP-585 (Statement of No Tax Due) showing no tax due with respect to any such transfers provided in the Plan or (ii) a Form TP-582 (Tentative Assessment and Return) showing the amount of Gains Tax due on any such transfer provided in the Plan.

7.6    **Release and Discharge of Liens.**  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any lien, claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.  Pursuant to Sections 105, 1141(c), 1142(b) and 1146(c) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, including but not limited to any and all notices of satisfactions, release or discharge of any lien, claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order shall expressly so provide.

7.7    **Injunction Against Recording and Taxing Authorities.**  As of the Effective Date, the Office of the City Register, New York County, New York, the New York City Department of Finance, the New York State Department of Taxation and Finance and all other New York State and local taxing authorities including, but not limited to the County of Rockland and the Town of Ramapo, shall be permanently enjoined from the commencement or continuation of any action to

{00286572.DOC;3}

19

collect from the Debtor, its estate, the holder of the Class 2 Claim, any creditor of the Debtor or any direct or indirect partner, owner, officer or attorney of any of such entities in connection with a transfer of the Deed or to charge against the Property or the Rents, any Transfer Taxes, which shall in all events be exempt from payment a provided under Section 1146(c) of the Bankruptcy Code, and the Confirmation Order shall so provide.

7.8    **Preservation of Rights of Action.** Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Reorganized Debtor shall retain and may, in accordance with its determination of its best interest, enforce any claims, rights and causes of action arising under Sections 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

7.9    **Deemed Cure and/or Waiver of Defaults.** Any default of the Debtor on any contract or instrument or otherwise which existed on the Petition Date, shall be deemed cured and/or waived, as the case may be, and such cure and/or waiver shall relate back to the Petition Date, upon the Effective Date of this Plan.

7.10    **Vesting of Assets.** (a) Except as otherwise provided herein, on the Effective Date all assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims and Encumbrances and any and all Liens, Claims and Encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtor vesting in the Reorganized Debtor shall be free and clear of all Claims of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

{00286572.DOC;3}

**20**

(b) Except as otherwise provided herein, following the Effective Date the Reorganized Debtor may operate the Mortgaged Premises and buy, use, acquire, and dispose of the Mortgaged Premises and the other Assets, and settle and compromise any claims, interests and causes of action free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

8.1    **Disbursing Agent.** The Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan. The Disbursing Agent may employ or contract with other entities to assist in or perform the distribution of the property to be distributed. The Disbursing Agent shall serve with a bond, which bond shall not be cancelled on less than thirty (30) days notice to the Bankruptcy Court and the United States Trustee. The Disbursing Agent may liquidate any non-cash assets it receives.

8.2    **Timing of Distributions Under the Plan.** Subject to Section 8.6 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Claim shall be deemed to be timely made if made on or within five Business Days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or (iii) such other times provided in the Plan.

8.3    **Method of Payment.** Unless otherwise expressly agreed, in writing, by the Reorganized Debtor, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

{00286572.DOC;3}

8.4    **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, any party in interest may object to the allowance of any Claim filed with the Bankruptcy Court in whole or in part by serving and filing an objection to such Claim no later than the Confirmation Date; *provided, however,* that the Debtor and/or the Reorganized Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 90 days after the Effective Date or (ii) 90 days after the date proof of such Claim is filed.

8.5    **Prosecution of Objections.** After the Confirmation Date, only the Reorganized Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Reorganized Debtor shall have the right to litigate to judgment, settle or withdraw any objection to any Claim.

8.6    **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

8.7    **Escrow of Cash Distributions.** (a) On the Effective Date, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims entitled to treatment as administrative expenses or as priority claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax, and (iii) any amount due but not payable on the Effective Date on account of administrative expenses or

{00286572.DOC;3}

22

claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code). The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

(b) In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c) The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

8.8    **Distribution After Allowance.** Within thirty (30) days after the resolution of any Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

{00286572.DOC;3}

23

8.9    **Investment of Segregated Cash and Property.** To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

8.10    **Distribution After Disallowance.** Subject to Section 8.7(c) of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved, shall be retained by the Reorganized Debtor.

8.11    **Surrender of Instruments.** (a) Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor. In addition, at the election of the Disbursing Agent, a Creditor that holds a mortgage, security interest, assignment of rents or other such instrument shall execute and deliver to the Disbursing Agent an assignment or satisfaction of such mortgage, security interest, assignment of rents or other such instrument, in proper form for recording. Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to Section 8.13 of the Plan.

{00286572.DOC;3}

24

(b) In the event any Creditor is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such Entity's title to such Claim; (ii) proof of the loss, destruction, mutilation or theft of such Note or other instrument evidencing a Claim; (iii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iv) such indemnification as may be required by the Disbursing Agent and all other Entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(c) All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Reorganized Debtor nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects. Any such Note or instrument received by the Disbursing Agent that is not properly tendered and to which the defects have not been cured or waived, will be returned by the Disbursing Agent to the tendering holder as soon as practicable.

8.12    **Delivery of Distributions.** Except as provided in Sections 8.13 and 8.14 of the Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of

Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

8.13 **Undeliverable Distributions.** (a) If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.14 of the Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.14 of the Plan, within 30 days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in the Plan shall require the Reorganized Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

8.14 **Unclaimed Distributions.** Any Cash or other property to be distributed under the Plan shall be distributed to the Reorganized Debtor if it is not claimed by the entity entitled thereto before the later of (i) 3 years after the Effective Date or (ii) 60 days after an Order allowing the Claim of that entity becomes a Final Order.

{00286572.DOC;3}

8.15    **Set-offs.** The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Reorganized Debtor may hold against the holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such holder.

## ARTICLE IX

## DISCHARGE AND RELEASES

9.1    **Discharge.** (a) On the Effective Date the Debtor shall be discharged pursuant to Section 1141 of the Bankruptcy Code from all Claims against the Debtor that arose prior to the Effective Date and from any liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not (i) a Proof of Claim has been filed or deemed to have been filed with respect to such Claim, (ii) such Claim is allowed or disallowed, or (iii) the holder of such Claim has accepted the Plan.

(b) Except as otherwise provided in the Plan, all Persons shall be precluded and enjoined from asserting against the Debtor and the Reorganized Debtor and their respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim or Interest based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(c) Except as otherwise provided under the Plan or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan and Section 1141(d)(1) of the Bankruptcy Code, shall be null and void and of no force and effect, regardless of whether a Proof of Claim therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims against the Debtor shall be precluded from asserting against the Debtor, the Reorganized Debtor and the Yeshiva, or any of their assets or properties, any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, and the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims, *provided, however*, that the foregoing shall not operate a waiver of or release from any causes of action arising out of any express contractual obligation owing by any former director, officer or employee to the Debtor and is not a waiver of or release for any attorneys retained in connection with the Chapter 11 Cases from claims by their respective clients. Nothing in Article IX of the Plan shall effect a release in favor of any person other than the Debtor with respect to causes of action based on willful misconduct, gross negligence, intentional fraud, breach of fiduciary duty that results in a personal profit at the expense of the Estate, and/or the knowing misuse of confidential information. Nothing in Article IX of the Plan shall effect a release of any claim of the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal

{00286572.DOC;3}

28

Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the releases, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the releases for any liability whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority. Nothing in Article IX of the Plan shall limit the liability of the Debtor's professionals to its clients pursuant to DR 6-102 of the Code of Professional Responsibility.

9.2    **Injunction.**  To the fullest extent permitted by Section 1141(c) of the Bankruptcy Code, except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, or from property of the Debtor, (ii) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtor or any property distributed under the Plan, or (iii) any Claim discharged under the Confirmation Order, the Plan or pursuant to Section 1141(d)(1) of the Bankruptcy Code.

9.3    **Limitation of Liability.**  Neither the Debtor, the Reorganized Debtor nor any of their respective officers, trustees, members, managers, managing agent or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the

{00286572.DOC;3}

formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Case or the Plan.

9.5    **Plan and Confirmation Order as Release.** From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article IX of the Plan.

# ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

Unless the following conditions are either satisfied or waived in writing by the Debtor, the Plan shall not be consummated and the Confirmation Order shall be vacated:

10.1    **Confirmation Order.** It shall be a condition precedent to the Effective Date that the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Debtor providing, *inter alia,* for the implementation of the Plan in accordance with the provisions of Article VII of the Plan.

10.2    **Final Orders.** It shall be a condition precedent to the Effective Date that the Confirmation Order shall have been entered by the Bankruptcy Court, shall have become Final Orders, and shall not be subject to any stay or limitation, shall not have been modified without the consent of the Debtor and shall remain, in all respects in full force and effect.

10.3    **Filing of Documents.** It shall be a condition precedent to the Effective Date that the Debtor shall have filed with the appropriate official or office such certificates and other

documents as shall be necessary or appropriate to effectuate the transactions provided for under the Plan.

      10.4    **Gains Tax.** It shall be a condition precedent to the Effective Date that the New York State Department of Taxation and Finance shall have issued either (i) a Form TP-585 (Statement of No Tax Due) showing no tax due with respect to any transfers provided in the Plan or (ii) a Form TP-582 (Tentative Assessment and Return) showing the amount of New York Real Estate Transfer Taxes imposed under Article 31 of the New York State Tax Law due on any transfer provided for in the Plan in an amount acceptable to the Reorganized Debtor in its sole discretion which may be unreasonably withheld.

      10.5    **Other Matters.** It shall be a condition precedent to the Effective Date that all matters that the Debtor reasonably deems to be necessary or appropriate to effectuate the transactions contemplated by the Plan shall have occurred or been settled on a basis reasonably satisfactory to the Debtor including, without limitation, the receipt of all approvals, consents, agreements or documents necessary to effectuate the provisions of the Plan.

      10.6    **Failure of Conditions.** In the event that the conditions precedent to the Effective Date set forth in this Article X have not been satisfied or waived in writing on or before the Effective Date, upon the filing with the Bankruptcy Court of written notice, signed by an authorized officer of the Debtor, the Confirmation Order shall be vacated, the Plan shall be deemed to be withdrawn without further Order of the Bankruptcy Court, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against the

{00286572.DOC;3}

Debtor; (ii) constitute a waiver or release of any claims of the Debtor or its Estate against any Person, or (iii) prejudice in any manner the rights of the Debtor or any other party in interest.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1    **Orders in Aid of Confirmation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

11.2    **Compliance with Tax Requirements.** In connection with the Plan, the Debtor, the Reorganized Debtor and, where applicable the Disbursing Agent, shall comply with all withholding and reporting requirements applicable or imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *providing, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

11.3    **Due Authorization by Creditors.** Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, Encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

{00286572.DOC;3}

11.4    **Amendments.** The Plan may be altered, amended or modified by the Debtor and/or Reorganized Debtor, in writing, signed by the Debtor and/or Reorganized Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

11.5    **Modification and Revocation of the Plan.** The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor. The Plan may be altered, amended, or modified by the Debtor and/or Reorganized Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

11.6    **[Intentionally Omitted.]**

11.7    **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.8    **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

11.9    **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

{00286572.DOC;3}

33

11.10 **No Liability.** Notwithstanding anything to the contrary contained in this Plan, the Reorganized Debtor shall have no liability with respect to any obligations of the Debtor other than those obligations directly related to the operation and protection of the Mortgaged Premises and the obligations of the Debtor specifically assumed by the Reorganized Debtor pursuant to this Plan shall not include any other obligation of Debtor including, without limitation, Debtor's liability for taxes measured by the income of debtor or unincorporated business taxes or any other similar obligation.

11.11 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

11.12 **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)     if to the Debtor at (i) c/o Rabbi M. Zaks, Yeshiva Chofetz Chaim Kiryas Radin, Inc., Kiryas Radin Drive, Ramapo, New York, with a copy to (ii) Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 1345 Avenue of the Americas, New York, New York 10105, Attn: Scott A. Steinberg, Esq.

(b)     if to any Creditor at (i) the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address

reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

11.13 **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1 **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(b) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(c) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(d) Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(g) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h) Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(i) Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or

{00286572.DOC;3}

36

document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(j) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(k) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l) Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(m) Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

{00286572.DOC;3}

(n) Enter an Order or Final Decree concluding the Case.

Dated:       New York, New York
              November 23, 2005

                                 **YESHIVA CHOFETZ CHAIM KIRYAS RADIN, INC.**

                                 By: /s/ Rabbi Mayer Zaks
                                    Rabbi Mayer Zaks

                               **ROBINSON BROG LEINWAND GREENE
                                GENOVESE & GLUCK P.C.**
                               Attorneys for Yeshiva Chofetz Chaim Kiryas
                                 Radin, Inc.
                               1345 Avenue of the Americas
                               New York, New York 10105-0143
                               (212)586-4050

                               By: /s/ A. Mitchell Greene
                                  A. Mitchell Greene  (AMG-5900)

{00286572.DOC;3}