UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE OF
POMONA, THE VILLAGE OF WESLEY HILLS,
MILTON B. SHAPIRO, and DR. SONYA
SHAPIRO,

                Plaintiffs-Petitioners,

    -v-

THE TOWN OF RAMAPO, THE TOWN BOARD
OF THE TOWN OF RAMAPO, THE PLANNING
BOARD OF THE TOWN OF RAMAPO, YESHIVA
CHOFETZ CHAIM OF RADIN, SCENIC
DEVELOPMENT, LLC, and THE BOARD OF
APPEALS OF THE TOWN OF RAMAPO, and
MOSDOS CHOFETZ CHAIM, INC.,

                Defendants-Respondents.

Case No. 07-CV-9278 (KMK)

<u>OPINION AND ORDER</u>

---

<u>Appearances:</u>

Michael D. Zarin, Esq.
Daniel M. Richmond, Esq.
Jody T. Cross, Esq.
Zarin & Steinmetz
White Plains, NY
*Counsel for Plaintiffs-Petitioners*

John M. Toriello, Esq.
Patrick J. Sweeney, Esq.
Holland & Knight LLP
Jacksonville, FL, and New York, NY
*Counsel for Defendants-Respondents Town of Ramapo, Town Board of the Town of Ramapo,*
*Planning Board of the Town of Ramapo, and Board of Appeals of the Town of Ramapo*

Joseph J. Haspel, Esq.
Goshen, NY
*Counsel for Defendant-Respondent Mosdos Chofetz Chaim, Inc.*

Reuben S. Koolyk, Esq.
Arnold & Porter LLP
New York, NY
*Counsel for Defendant-Respondent Mosdos Chofetz Chaim, Inc.*

Stephen J. Polter, Esq.
Polter & Stern, LLP
Brooklyn, NY
*Counsel for Defendant-Respondent Yeshiva Chofetz Chaim of Radin*

Terry A. Rice, Esq.
Rice & Amon
Suffern, NY
*Counsel for Defendant-Respondent Scenic Development, LLC*

KENNETH M. KARAS, U.S. District Judge:

On October 16, 2007, Defendant-Respondent Mosdos Chofetz Chaim, Inc. ("Mosdos") removed this case from the New York Supreme Court for Westchester County. Plaintiffs-Petitioners ("Plaintiffs") seek remand, contending that the removal was both procedurally and substantively flawed. For the reasons stated in this Opinion, Plaintiffs' Motion to Remand is granted.

## I. Background

### A. Alleged Facts

Plaintiffs, the Villages of Chestnut Ridge, Montebello, Pomona, and Wesley Hills (collectively, "the Villages") and Milton B. Shapiro and Sonya Shapiro (the "Shapiros," collectively with the Villages, "Plaintiffs"), consist of four villages located in the Town of Ramapo ("Ramapo") and two residents of Ramapo. (Am. Verified Pet. & Compl. ("Am. Compl.") ¶¶ 31-37, 41-42.) Plaintiffs challenge a local law, the Adult Student Housing Law, Local Law No. 9-2004 ("ASHL"), enacted on June 15, 2004 by Defendant Town of Ramapo (the "Town"), that permits married, adult, student, multi-family, high-density housing in single-family residential zones located in the unincorporated portion of Ramapo and adjacent to the Villages and the residence of the Shapiros. (*Id.* ¶¶ 9-10.)

Plaintiffs allege that the ASHL was proposed to address the Town's finding that such housing was necessary to accommodate the growing number of married students attending Orthodox Jewish religious educational institutions in Ramapo. (*Id.* ¶¶ 68-81; Def. Mosdos's Answer & Countercl. ¶¶ 348-50, 363.) Based on the lot size requirements articulated in the proposed ASHL, the proposed housing would be applicable initially to four sites in the unincorporated area of Ramapo. (Am. Compl. ¶ 112.)

Prior to its enactment, the Town Board of Ramapo (the "Town Board") reviewed the proposed ASHL pursuant to the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Envtl. Conserv. Law § 8-0101 et seq.[1] (*Id.* ¶¶ 11-13.) The Town Board ultimately issued a negative declaration, finding that the enactment of the ASHL would not have a significant adverse impact on the environment and therefore did not necessitate the preparation of an environmental impact statement ("EIS"). (*Id.* ¶¶ 11, 98.)

Subsequent to the enactment of the ASHL and Plaintiffs' initial complaint in October 2004, the Town adopted a new Comprehensive Zoning Law, which purported to incorporate the ASHL. (*Id.* ¶ 18.) In November 2004, following an environmental review process, the Town enacted the Comprehensive Zoning Law. (*Id.* ¶ 184.) Also at this time, the Planning Board of Ramapo (the "Planning Board") issued a negative SEQRA declaration in connection with

---

[1] Under SEQRA, before a discretionary state or local action goes forward, its potential to have a significant adverse effect on the physical environment must be evaluated and alternatives and mitigation measures must be explored. *See* N.Y. Envtl. Conserv. Law ("ECL") § 8-0109(1) (McKinney 2008). The responsible agency must make an initial determination whether an environmental impact statement ("EIS") is necessary. *See* ECL § 8-0109(4) (noting that when an action is to be carried out or approved by two or more agencies, such determination must be made as early as possible after the designation of the lead agency). Generally, an EIS is required to be prepared if the proposed action might have a significant effect on the environment. *See* ECL § 8-0109(2); *see also Schulz v. N.Y. State Dep't of Envtl. Conserv.*, 606 N.Y.S.2d 459, 461 (App. Div. 1994) (noting that "SEQRA regulations mandate the consideration of all 'impacts which may reasonably be expected to result from the proposed action,'" including "subsequent actions which are 'likely to be undertaken as a result thereof'" (quoting N.Y. Comp. Codes R. & Regs., tit. 6, § 617.11 (2008)).

Defendant Yeshiva Chofetz Chaim of Radin's ("Yeshiva") application for site plan approval for the construction of an adult student housing facility at one of the four sites, a location known as the Nike Site, determining that the construction of the facility would not have a significant adverse impact on the environment and thus did not require the preparation of an EIS. (*Id.* ¶¶ 21, 188-191.)[2]

B. Procedural History

Plaintiffs commenced this action on October 13, 2004, in the New York State Supreme Court for Westchester County. In their initial Complaint, Plaintiffs named the Town, the Town Board, the Planning Board, as well as Scenic Development, LLC, a developer involved with the four sites, and Yeshiva, as Defendants. (*Id.* ¶¶ 43-52.) Plaintiffs amended their Complaint on December 23, 2004, to add claims against Defendants. In the initial Complaint, Plaintiffs included claims that Defendants violated the First and Fourteenth Amendments of the United States Constitution.[3] Plaintiffs also sought, and still seek, to have the SEQRA environmental review of the ASHL deemed unlawful and to have the Town Board's negative declaration regarding the Nike Site deemed an abuse of discretion under SEQRA. On November 9, 2004, then-named Defendants removed the case to this Court. *Vill. of Chestnut Ridge v. Town of Ramapo*, No. 04-CV-8865. On December 10, 2004, Judge Stephen C. Robinson signed an Order

---

[2] Mosdos refers to the site, the first to be developed under the ASHL, as "the property formerly known as the Nike Site." (Def. Mosdos's Mem. of Law in Opp. to Mot. to Remand ("Def.'s Mem.") 4.) The name Nike Site derives not from sneakers but from the land's former use as a U.S. Army base for Nike Hercules surface-to-air missiles. The site — among several hundred built across the United States — was constructed in 1956 to detect and shoot down enemy aircraft. By 1974, U.S. Nike sites were shut down. *See* Irene Plagianos, *What's In a Name*, The Journal News, Jan. 2, 2006, at 4A.

[3] As discussed *infra*, Plaintiffs' constitutional claims were dismissed by the Supreme Court for Westchester County, and this dismissal was affirmed by the Second Department. *See Vill. of Chestnut Ridge*, 841 N.Y.S.2d 321, 335 (App. Div. 2007) ("The appellants' constitutional claims . . . were properly dismissed since none of the appellants have standing to raise them.").

on consent of the Parties remanding the case to state court. The Order provided that "Respondent/Defendant Yeshiva Chofetz Chaim of Radin further consented that, in the event that Petitioners/Plaintiffs amend the Verified Petition and Complaint, said Respondent/Defendant will not seek removal of this action or any part thereof to any United States District Court, provided, that no new Respondents/Defendants are added to this action." (Order of Remand, 04-CV-8865, (Dec. 10, 2004), Dkt. No. 12 ("2004 Remand Order").)

Defendant Mosdos contends that it was served with the Amended Complaint "no earlier than on September 26, 2007." (Def. Mosdos's Notice of Removal ¶ 2.) Mosdos filed a Notice of Removal along with its Answer and Counterclaims on October 17, 2007. (Dkt. Nos. 1 & 2.) Mosdos counterclaims for violations of its civil rights by Plaintiffs as protected by the United States and New York Constitutions, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3617. Plaintiffs timely have sought remand. (Dkt. No. 9.) The Court heard oral argument on July 2, 2008.

## II. Discussion

### A. Standard of Review

Mosdos removed to this Court a case that had been in state court – trial and appellate – for over three years. In evaluating the propriety of the removal, the Court starts with the baseline principle that federal courts are courts of limited jurisdiction. *See Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also Irving Trust Co. v. Century Exp. & Imp., S.A.*, 464 F. Supp. 1232, 1234 (S.D.N.Y. 1979) (noting that the right of removal is "a matter of legislative grace" (citing *Great Northern Ry. Co. v.*

*Alexander*, 246 U.S. 276 (1918))). Judicial scrutiny is especially important "in the context of removal, where considerations of comity play an important role." *Johnston v. St. Paul Fire & Marine Ins. Co.*, 134 F. Supp. 2d 879, 880 (E.D. Mich. 2001). Indeed, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003) (internal quotation marks omitted)); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."); *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) ("Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum.").

### B. Consent of All Defendants

As a threshold matter, Plaintiffs contend that the removal was procedurally flawed under the rule of unanimity. Indeed, removal normally requires the consent of all Defendants. *See Glatzer v. Hanley*, No. 06-CV-15347, 2007 WL 1334971, at *2 n.4 (S.D.N.Y. May 8, 2007) ("For removal to be effective in a case where there are multiple defendants, all defendants must join in seeking removal or consent thereto in a timely manner."). Specifically, Plaintiffs suggest that consent was lacking from Defendant Scenic Development, LLC. (Pls.' Reply Mem. of Law in Further Supp. of Mot. for Remand 4-5.)

On April 29, 2008, the Court issued an Order requiring each Defendant to submit a one-page letter stating whether such Defendant consented to removal and at what time, and by what mechanism, such Defendant first consented to removal. All Defendants timely responded and, on the basis of such docketed responses, the Court is satisfied that this removal was on unanimous consent of all Defendants.[4]

## C. Preclusive Effect of Prior Remand

Plaintiffs also argue that all Defendants are bound by the 2004 Remand Order. In brief, they contend that "Yeshiva's waiver of its right to removal is binding upon all subsequently added Defendants, including Mosdos." (Mem. of Law in Supp. of Pls.' Mot. for Remand ("Pls.' Mem.") 11.)

Mosdos retorts that the transfer of interest in the Nike Site was a legitimate transaction among legal entities and that, in any event, the 2004 Remand Order is inapplicable by its own terms because it includes a savings clause providing that it was to apply only so long as "'no new Respondents/Defendants are added to this action.'" (Def. Mosdos's Mem. of Law in Opp. to Mot. to Remand ("Def's. Mem.") 18 (quoting 2004 Remand Order).) Mosdos claims that "[a]lthough no one would suggest [Yeshiva and Mosdos] are without some level of affiliation, they are independent of each other, with different directors, trustees and corporate purposes, albeit there is some overlapping." (*Id.* 18-19.) Plaintiffs have not made any argument or showing to the contrary that the Court should find unity of legal identity. Therefore, the Court

---

[4] Mosdos argues that unanimity is not necessary for removal under 18 U.S.C. § 1443. Indeed, there is authority both supporting and conflicting with this proposition. *Compare Brown v. Florida*, 208 F. Supp. 2d 1344, 1349 (S.D. Fla. 2002) (stating unanimity not required) *and Bridgeport Educ. Ass'n v. Zinner*, 415 F. Supp. 715, 717 n.2 (D. Conn. 1976) (same) *with Matthews v. County of Fremont*, 826 F. Supp. 1315, 1318-19 (D. Wyo. 1993) (unanimity required). Because all Defendants have consented to removal, the Court need not weigh in on this debate.

looks to the plain language of the 2004 Remand Order and, in light of the facially-apparent applicability of the savings clause, finds that it does not preclude this removal.

### D. Timeliness of Removal

A defendant must remove a case within thirty days of being served with the initial pleading. *Id.* 28 U.S.C. § 1446(b). This thirty-day limitation has a dual purpose: first, "it forecloses a defendant from adopting a 'wait and see' approach in the state court;" second, it "minimizes the delay and waste of resources involved in starting a case over in federal court after substantial proceedings have taken place in the state court." *Gorman v. Abbott Labs.*, 629 F. Supp. 1196, 1199 (D.R.I. 1986) (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982)); *see also Pierpoint v. Barnes*, 94 F.3d 813, 817 (2d Cir. 1996) ("Congress placed a strict time limit on motions to remand in order to prevent the delay, inefficiency, and unfairness resulting from late-stage, forum-shopping remand motions."). "The Court is to construe the thirty-day period narrowly, resolving any doubts against removability." *Gen. Ins. Co. of Amer. v. Tilcon New York Inc.*, No. 96-CV-1258, 1996 WL 389265, at *1 (S.D.N.Y. July 11, 1996) (internal quotation marks omitted)).

Plaintiffs contend that this removal is untimely. Citing cases from federal courts in Michigan, Florida, California, and West Virginia — although none from the Second Circuit (which has not addressed the issue) — Plaintiffs argue that the removal statute requires removal within thirty days of service of the first-served defendants and that the addition of a new defendant does not restart that clock. *See* § 1446(b) ("Notice of removal . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the [complaint]."). *But see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) ("We read Congress' provisions for removal in light of a bedrock principle: An

individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process.").

Mosdos points the Court to Judge Chin's thorough discussion of the matter in *Glatzer*, 2007 WL 1334971, at *2, which concluded that the last-served defendant rule was the appropriate one — that is, the thirty-day window to remove must be measured from the time of service of a complaint and summons on the *last-served* defendant. (Def.'s Mem. 22-23.) Plaintiffs urge the Court instead to apply the first-served defendant rule because any equitable argument in favor of the last-served defendant rule is estopped in this case by Mosdos's unclean hands in delaying its joinder and removal. (Pls.' Mem. 12.)

The courts within the Second Circuit indeed are split on whether the first- or last-served rule is the correct one.[5] *Compare Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs.*, No. 04-CV-4991, 2004 WL 2360033, at *3 (S.D.N.Y. Oct. 19, 2004) (applying first-served rule), *Yang v. ELRAC, Inc.*, No. 03-CV-9224, 2004 WL 235208, at *1 (S.D.N.Y. Feb. 6, 2004) (same) *and Quinones v. Minority Bus Line Corp.*, No. 98-CV-7167, 1999 WL 225540, at *2 (S.D.N.Y. Apr. 19, 1999) (same), *with Buechner v. Avery*, No. 05-CV-2074, 2005 WL 3789110, at *3-4 (S.D.N.Y. July 8, 2005) (applying last-served rule), *Barnhart v. Federated Dep't Stores, Inc.*, No. 04-CV-3668, 2005 WL 549712, at *6 (S.D.N.Y. Mar. 8, 2005) (same), *Fernandez v. Hale Trailer Brake & Wheel*, 332 F. Supp. 2d 621, 623 (S.D.N.Y. 2004) (same), *and Varela v. Flintlock Constr., Inc.*, 148 F. Supp. 2d 297, 300 (S.D.N.Y. 2001) (same). The Court need not

---

[5] Further, there is a split within the circuit courts on this question. *See Glatzer*, 2007 WL 1334971, at *2 n.5 (noting that while the Fourth Circuit has adopted a modified version of the first-served defendant rule, the Sixth and Eight Circuits have adopted the "removing defendant" rule, which allows each defendant thirty days from service to remove, regardless of when or if previously-served defendants have filed removal notices); *Varela v. Flintlock Constr., Inc.*, 148 F. Supp. 2d 297, 299 (S.D.N.Y. 2001) (discussing circuit split regarding application of first-served versus last-served defendant rules).

enter the fray, however, as the procedural posture of this case is different than that of the typical, multi-defendant case.

In particular, this is not a case in which a plaintiff waited to serve or add a defendant, and thus faces the prospect of that late-arriving defendant properly electing to remove a case to federal court. *See, e.g.*, *Fernandez*, 332 F. Supp. 2d at 623 (applying last-served defendant rule where plaintiff amended complaint to add defendant four months after first complaint filed). Instead, this is a case where a necessary party (Mosdos) elected not to intervene in the action, even though at oral argument before this Court counsel admitted that Mosdos was long aware of the New York Supreme Court action, and was added only after the state court asked Plaintiffs to substitute Mosdos out of a recognition that Mosdos (and not Yeshiva) had been the real party in interest as to the Nike Site for two years.

The precise sequence of events is as follows. Plaintiffs began this lawsuit in Supreme Court in Westchester County, pursuant to Article 78 of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), in October 2004, challenging the environmental review in connection with the ASHL. Yeshiva timely removed the action in November 2004, only to later stipulate to a remand back to Westchester County Supreme Court. On December 23, 2004, Plaintiffs amended the Complaint to bring additional claims based on the negative declaration in connection with the plan for the Nike Site that then belonged to Yeshiva. (Am. Compl. ¶ 3.) On June 13, 2005, Justice Nicolai granted an injunction to two of the Plaintiffs (Rosenstein and Moskowitz), who later withdrew from the case because of insufficient means to post the bond, but dismissed the claims of the remaining Plaintiffs. *See Vill. of Chestnut Ridge v. Town of Ramapo*, No. 16876/04, slip op. (N.Y. Sup. Ct. June 16, 2005). On December 14, 2005, Yeshiva

deeded its interest in the Nike Site to Mosdos, apparently as part of a Chapter 11 reorganization

plan, but neither Party informed Plaintiffs or any court of this transaction.[6]

On August 14, 2007, the Second Department reversed and reinstated all but the

constitutional causes of action and remanded the case back to Supreme Court.  *See Vill. of

Chestnut Ridge v. Town of Ramapo*, 841 N.Y.S.2d 321, 340-41 (App. Div. 2007).  On September

11, 2007, Justice Nicolai issued a temporary restraining order ("TRO"), enjoining

implementation of the ASHL and occupation of the Nike Site.  That TRO remains in effect.  On

September 17, 2007, Yeshiva moved to stay enforcement of the TRO, claiming that the TRO

"grants relief regarding real property owned by an entity who is not a party to this proceeding."

(Pls.' Answer to Countercl. ("Pls.' Answer") ¶ 123, Ex. G.)  Yeshiva acknowledged, for the first

time, that it had transferred the Nike Site to Mosdos more than a year after the lawsuit began.

(*Id.*; Sept. 5, 2007 Tr. 19-20.)  Yeshiva therefore argued that Mosdos had a "right to come and

argue their [sic] respective position."  (Sept. 5, 2007 Tr. 19-20.)  Rather than require Mosdos to

move to intervene, Justice Nicolai directed Plaintiffs to substitute Mosdos as a defendant in the

case by amending the caption of the Complaint to include it as a Defendant.  (Suppl. Mem. of

Law in Further Supp. of Pls.' Mot. to Remand ("Pls.' Suppl. Mem.") 4 n.7, Ex. B ("Sept. 26,

2007 Tr.") 14.)  Plaintiffs obliged, amending the caption of the Complaint, pursuant to N.Y.

C.P.L.R. § 1018, which provides that "[u]pon any transfer of interest, the action may be

continued by or against the original parties unless the court directs the person to whom the

---

[6] There is some evidence in the record that Yeshiva and Mosdos are closely-aligned entities.  Plaintiffs have proffered evidence that the principle place of business for both entities is located at the same address.  (Pls.' Notice of Mot. for Remand ("Pls.' Notice"), Ex. E. ("Sept. 5, 2007 Tr.") 22, Ex. F (Certificate of Incorporation for Yeshiva) 2, and Ex. G (Certificate of Incorporation for Mosdos) 5.)  In addition, Plaintiffs have proffered evidence that Dennis Lynch, an attorney appearing before this Court on behalf of Yeshiva, has also acted as an attorney for Mosdos.  (Pls.' Notice, Ex. H (various newspaper articles identifying Lynch as Mosdos's counsel).)  How closely they are aligned, or might overlap, need not be determined here.

interest is transferred to be substituted or joined in the action." N.Y. C.P.L.R. § 1018 (McKinney 2008). (Pls.' Suppl. Mem., Ex. C (Pls.' Sept. 26, 2007 Ltr. to Joseph Haspel, Esq. (Counsel to Mosdos) enclosing Amended Complaint including Mosdos in caption "[a]s directed by the [c]ourt in its discretion pursuant to CPLR Section 1018").)

Given the peculiar and disconcerting procedural chronology of this case, the debate over the first-served, last-served defendant rule is not dispositive. Instead, it is critical to note that what really happened here is that one of the original defendants in this case (Yeshiva) arranged for the transfer of its interest in the Nike Site to another entity (Mosdos) in the early stages of the litigation, but did not tell Plaintiffs or the state courts until it received an adverse ruling from the Second Department, nearly three years into the lawsuit.[7] Put another way, rather than view what happened here as Plaintiffs amending the Complaint to add a party, it is more proper to view what happened here as the deliberate choice of a real party in interest (Mosdos) not to timely move to intervene in this lawsuit, and the equally deliberate choice of named party (Yeshiva) not to advise the state courts of the fact it no longer had an interest in property that was a subject of the lawsuit. Only when the state court was finally advised of these facts did it orchestrate a change in Plaintiffs' Complaint to substitute a party that should have been brought into the case, on its own motion, years earlier.

---

[7] At oral argument, Yeshiva argued that it did not make the Court aware of the transfer of the Nike Site to Mosdos because the original Complaint, filed in October 2004, addressed four sites, only one of which (the Nike Site) was transferred to Mosdos. However, it is undisputed that Plaintiffs subsequently amended their initial Complaint in December 2004 to add causes of action based on the "Planning Board's issuance of the negative declaration with respect to the Chofetz Chaim site plan application." *Vill. of Chestnut Ridge*, 841 N.Y.S.2d at 327. The Site Plan challenged in the Amended Complaint *only* addressed development at the Nike Site. (Am. Compl. ¶ 3.) Further, on March 9, 2006 – three months after the transfer of the Nike Site to Mosdos – Yeshiva cross-moved to appeal the December 9, 2005 decision by the Westchester County Supreme Court refusing to modify the TRO. (Pls.' Answer ¶ 111.) Thus, Yeshiva's argument that it had neither the reason nor the occasion to inform the Parties and the Court is not persuasive.

The law does not support Defendants' manipulation of the procedural posture in this case. First, removal law recognizes that plaintiffs are the masters of their own complaints. That is why, for example, a case normally may not be removed based on a federal law defense. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). Based on this same premise, courts also have eschewed removal based on the dismissal of a non-diverse defendant, unless triggered by a voluntary act of the plaintiff. *See Great Northern Ry.*, 246 U.S. at 281-82 (holding that removal based on actions of defendant was improper, "in the absence of voluntary action on the part of the plaintiff"). Indeed, the courts have reaffirmed that this so-called voluntary/involuntary rule survived the 1949 amendment to Section 1446(b), which permitted removal of cases that were not initially removable. *See Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980); *accord Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967); *Greco v. Beccia*, No. 99-CV-2136, 2001 WL 121887, at *3 (M.D. Pa. Feb. 13, 2001) (noting that every court of appeals to have considered the issue has upheld the voluntary/involuntary rule). Thus, a state court dismissal of a non-diverse defendant, absent a choice by a plaintiff, does not grant a diverse defendant the right to removal. *But see Poulos*, 959 F.2d at 72 n.3 (stating that the Second Circuit treats a dismissal as voluntary if Plaintiff fails to appeal); *Quinn*, 616 F.2d at 40 n.2 (noting that a plaintiff's failure to appeal the dismissal is tantamount to consent to the dismissal).

Citing the voluntary/involuntary rule, courts have held that those parties who are introduced into a case by way of intervention do not have a removal right. *See, e.g.*, *Childs v. Valente*, No. 07-CV-18, 2007 WL 805820, at *1-2 (D. Vt. Mar. 15, 2007) ("Defendant's position runs counter to substantial case law holding removal may not be predicated on an intervening petition or complaint."); *Henderson v. City of Chattanooga*, No. 02-CV-045, 2002 WL 32060139, at *7 (E.D. Tenn. Mar. 15, 2002) (holding that claims introduced by intervention

cannot be basis for removal); *Hopkins Erecting Co., Inc. v. Briarwood Apartments of Lexington*, 517 F. Supp. 243, 250 (E.D. Ky. 1981) (rejecting removal based on intervener's claims that were not pled by plaintiff).  As one court explained: "A state court case that initially is non-removable cannot subsequently become removable or be transformed into a removable case unless a change occurs that makes it removable as a result of the plaintiff's voluntary act."  *Henderson*, 2002 WL 32060139, at *5.  Here, while Plaintiffs nominally brought Mosdos into the case in September 2007, Plaintiffs chose neither the need for, nor the timing of, Mosdos's inclusion.  Instead, that was a choice foisted on Plaintiffs by Yeshiva's undisclosed transfer of the Nike Site to Mosdos in 2005, and the state court's understandable request to have Mosdos included in the case in the absence of further motion practice in the middle of litigation over a TRO.  Indeed, it was Yeshiva that first suggested to Justice Nicolai that Mosdos was the real party in interest as to the Nike Site and that Mosdos should be heard from in light of the TRO Justice Nicolai had entered.  And, it bears repeating, that both Yeshiva and Mosdos chose not to inform the state courts about the transfer of the Nike Site for two years and only after an adverse ruling from the Second Department and Justice Nicolai's TRO.

The second reason that Mosdos's removal is untimely is that it is based on the faulty supposition that Plaintiffs amended the Complaint to add Mosdos as a party.  If that was all that happened, and if the Court applied the last-served line of cases discussed above, then Mosdos might have been in the right.  However, instead of amending the Complaint by adding Mosdos as a party (and including new allegations against it), Plaintiffs, again at the direction of the state court, *substituted* Mosdos for Yeshiva, at least with regard to the Nike Site.[8]  In such a circumstance, the courts have held that the last-served defendant rule does not apply and the

_____

[8] It is important here that including Mosdos in the caption was the only change Plaintiffs made in the Complaint.  In fact, Plaintiffs even neglected to remove from the Complaint the federal constitutional causes of action that the Second Department affirmed should be dismissed.

14

new, substituted defendant may not remove the state case. *See Iulianelli v. Lionel, L.L.C.*, 183 F. Supp. 2d 962, 966 (E.D. Mich. 2002) ("In nearly every other case involving a misnamed defendant, or even the addition of a new defendant closely aligned with an existing one, the courts have declined to extend the initial 30-day period of removal."); *First Nat'l Bank & Trust Co. in Great Bend v. Nicholas*, 768 F. Supp. 788, 791 (D. Kan. 1991) ("Grimes's substitution as the real party in interest appears to do little or nothing to change the nature or substance of this case."); *Bogiel v. Teledyne Indus., Inc.*, 542 F. Supp. 45, 48 (N.D. Ill. 1982) (holding that removal by substituted defendant was untimely). Indeed, the courts have followed this rule, even where the substitution was the result of the plaintiff suing the wrong defendant. *See, e.g.*, *Brown v. New Jersey Mfrs. Ins. Group*, 322 F. Supp. 2d 947, 951-52 (M.D. Tenn. 2004) (holding that newly substituted defendant could not remove more than 30 days after service of wrongly identified defendant). Here, Plaintiffs did not sue the wrong defendant. Instead, they sued the entity they rightly believed was the real party in interest regarding the Nike Site as of December 2004. Unbeknownst to them (and the state courts), the Nike Site was subsequently transferred to Mosdos, which never bothered to move to intervene to protect its interests in a lawsuit of which it was aware. Upon learning this, and being directed to do so by the state court, Plaintiffs substituted Mosdos for Yeshiva with respect to the Nike Site. Given this sequence of facts, the removal was grossly tardy. *See Brown*, 322 F. Supp. 2d at 952-53 (holding that removal by substituted defendant was improper, in part because there was a "striking absence in the record . . . that Defendant was unaware of the lawsuit from its inception"); *Iulianelli*, 183 F. Supp. 2d at 968 (removal by substituted defendant untimely, especially where the substituted party was aware of plaintiff's misidentification of initially-named defendant). Indeed, permitting Mosdos to remove this case, after two trial court rulings and one appellate decision over three years in the state courts, would "contravene the 30 day rule's purpose of preventing parties from adopting

a 'wait and see' approach in state court before removing." *Brown*, 322 F. Supp. 2d at 952.

Therefore, the Court concludes that the removal was improperly tardy.[9]

E.  Federal Question Jurisdiction

Plaintiffs argue that even if removal was timely, remand is still appropriate.  The Court agrees.

1.  Federal Causes of Action

After the Parties had fully briefed Plaintiffs' remand motion, the Court noticed that the operative complaint last filed by Plaintiffs (the Complaint that had been amended at the request of Justice Nicolai to substitute Mosdos for Yeshiva regarding the Nike Site) still contained the two federal constitutional causes of action.  In particular, the Tenth Cause of Action alleged that the Town of Ramapo's ASHL facially violated the Fourteenth Amendment, while the Eleventh Cause of Action alleged that the ASHL facially violated the Establishment Clause of the First Amendment.  Given this oversight in the initial briefing, the Court requested more briefing to consider the question of whether removal was proper based on federal question jurisdiction.

The short answer to this question is that Plaintiffs' constitutional claims are dead letter because the Second Department affirmed their dismissal by Justice Nicolai.  *See Vill. of Chestnut Ridge*, 841 N.Y.S.2d at 335 ("The appellants' constitutional claims . . . were properly dismissed since none of the appellants have standing to raise them.").  Thus, while Plaintiffs' Amended Complaint nominally still includes these claims, it is apparent that they remain only because of the haste with which Plaintiffs had to amend their Complaint to accommodate Justice Nicolai's request to substitute Mosdos for Yeshiva as the real party in interest regarding the Nike Site.

---

[9] The Supreme Court's decision in *Murphy*, discussed *supra*, does not dictate a different result.  *See Iulianelli*, 183 F. Supp. 2d at 967 (explaining that *Murphy* did not address the "distinct set of circumstances," such as this, where a plaintiff substitutes a party who was fully aware of the lawsuit and chose not to intervene).

The well-pleaded complaint rule requires a district court to determine if a complaint includes any causes of action that on their face give a federal court jurisdiction. *See Rivet*, 522 U.S. at 475. However, under this rule, a court is permitted to determine if in fact those allegations are viable. For example, courts regularly review complaints to determine if there has been a "fraudulent joinder" of parties to defeat diversity jurisdiction. *See Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (noting that to establish fraudulent joinder, a defendant must demonstrate, inter alia, "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court"). Under this doctrine, if a plaintiff's complaint fails to sufficiently allege a cause of action against a non-diverse defendant under governing state law, the court may properly conclude that the party was fraudulently joined in an attempt to defeat federal diversity jurisdiction and grant a removal motion. *See, e.g.*, *Whitaker v. Amer. Telecasting, Inc.*, 261 F.3d 196, 206-07 (2d Cir. 2001) ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." (quoting *Pampillonia*, 138 F.3d at 460-61)).

So it is with Plaintiffs' putative constitutional claims. While they nominally remain in the Amended Complaint, they fail to state a claim based on the decisions of both state courts that have considered them. Particularly in light of the unusual circumstances in which Plaintiffs had to amend their Complaint, as discussed above, the Court concludes that there are, in fact, no properly pleaded federal causes of action. Indeed, Plaintiffs could not claim otherwise, even if they wanted to, based on res judicata principles. *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) (stating that privity precludes relitigation of a claim against a new defendant with "sufficiently close relationship to the

original"). And, because it is clear that the Parties are not diverse, there is no viable argument that Plaintiffs' causes of action are a basis for this case to be in federal court.

## 2. Removal Under Section 1443

Mosdos argues that even if Plaintiffs did not bring any causes of action within this Court's jurisdiction, the removal was proper under 28 U.S.C. § 1443(1), because state action infringed its federally protected rights.[10]

A party removing an action has the burden of establishing "its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party removing an action pursuant to Section 1443(1) must satisfy the two-part test established by the Supreme Court in *Georgia v. Rachel*, 384 U.S. 780 (1966). In *Rachel*, the Court allowed removal of a criminal trespass prosecution against African-American defendants who had sought to obtain service at privately owned restaurants open to the general public in segregated Atlanta, Georgia. Under *Rachel*, "a state court defendant must demonstrate both (1) that he is being deprived of rights guaranteed by a federal law providing for equal civil rights; and (2) that he is denied or cannot enforce that right in the courts of the state." *Davis v. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997) (internal question marks omitted); *see also Water's Edge Habitat, Inc. v. Pulipati*, 837 F. Supp. 501, 505 (E.D.N.Y. 1993).[11] Mosdos argues that it satisfies this test

---

[10] Section 1443(1) provides that a defendant may remove an action from state court, where it is pending "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens in the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1).

[11] The *Rachel* decision followed two Supreme Court decisions dating back to the late nineteenth century. *See Strauder v. West Virginia*, 100 U.S. 303 (1879); *Virginia v. Rives*, 100 U.S. 313 (1879). It was in the *Strauder-Rives* cases where the Supreme Court first drew the "line of distinction" that "removal would lie when enforcement of the [state court defendant's] rights in a state court was barred by a state statute or constitutional provision which was applicable in terms although unconstitutional on its face, but not when the allegation was simply

because it can establish that the Plaintiffs are improperly using the state court system to prevent Mosdos from creating the religious campus. (Def.'s Mem. 14.) In particular, Mosdos brings counterclaims under 42 U.S.C. § 1983, for violations of the Free Exercise and Free Speech Clauses of the First Amendment (Counterclaims One and Two), 42 U.S.C. §§ 2000cc(2)(a) and 2000cc(2)(b)(2), which are part of RLUIPA (Counterclaims Five and Six), and 42 U.S.C. §§ 3604 and 3617, which are part of the FHA (Counterclaims 12 and 12).[12]

As an initial matter, the causes of action based on the First Amendment and RLUIPA violations are not cognizable under Section 1443(1), and Mosdos does not credibly claim otherwise. For removal to be permissible under Section 1443(1), a party must demonstrate violation of a "right under any law providing for . . . equal civil rights." The Supreme Court has held that this language "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Rachel*, 384 U.S. at 792. Thus, "broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands." *Id.* Accordingly, Mosdos's counterclaims based on the First Amendment and RLUIPA cannot be the basis for Defendants' removal. *See Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (noting that "[c]laims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice" to support removal); *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983) (holding that "broad first

_____

that in practice he would be denied or be unable to enforce his rights." *Emigrant Sav. Bank v. Elan Mgmt. Corp.*, 668 F.2d 671, 673-74 (2d Cir. 1982).

[12] The numbering of the counterclaims was poorly done, as there are two counterclaims labeled as the "Twelfth Cause of Action."

amendment or fourteenth amendment claims do not satisfy the . . . [*Rachel*] test, nor do claims arising under non-racially oriented statutes such as 42 U.S.C. § 1983"); *Stein v. Quinn*, No. 06-CV-1047, 2007 WL 1101496, at *2 (W.D. Wash. Apr. 10, 2007) (rejecting removal based on § 1983); *Water's Edge Habitat*, 837 F. Supp. at 505 ("The federal courts have scrupulously honored the unambiguous language of *Rachel* and [*City of Greenwood v.*] *Peacock* in restricting the scope of the removal statute to violations of explicit federal statutory and Constitutional laws guaranteeing racial equality for all citizens."); *Osborne v. Osborne*, 554 F. Supp. 566, 568-69 (D. Md. 1982) (rejecting removal based on religious rights and gender discrimination grounds).

However, Mosdos's counterclaims based on alleged violation of the FHA are cognizable under Section 1443. *See Emigrant Sav. Bank v. Elan Mgmt. Corp.*, 668 F.2d 671, 673 (2d Cir. 1982). Mosdos's FHA causes of action nonetheless fail the *Rachel* test, even though the Court is willing to assume for the sake of argument, and without deciding the truth of, Mosdos's allegations, that the environmental challenges brought by Plaintiffs are racially motivated. However, it bears noting that *Rachel* was unusual because its particular facts were such that "a firm prediction that a defendant would be denied federal rights in the state court might be made even in the absence of a discriminatory state enactment." *Davis*, 107 F.3d at 1048. Indeed, in *City of Greenwood v. Peacock*, decided the same day as *Rachel*, the Supreme Court spelled out the limits of *Rachel*. 384 U.S. 808, 827-28 (1966). The Court explained: "It is *not* enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied . . . in advance of trial . . . or that the defendant is unable to obtain a fair trial in a particular state court. . . . The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." *Id.* at 827-28.

Thus, even assuming the factual underpinnings of Mosdos's theory of FHA violations, Mosdos has not made the sufficient showing that it will be denied or cannot enforce its FHA rights in New York's courts. To support its argument that the Court should apply *Rachel* to find jurisdiction here, Mosdos relies almost exclusively on the Eleventh Circuit's *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991). Mosdos asks the Court to find in *Sofarelli* the proposition that a counterclaim asserting a FHA violation based on the filing of a state court lawsuit alleged to have been motivated by racial animus is sufficient to warrant removal under Section 1443(1). (Def.'s Mem. 15.) *Sofarelli*, which in any event is valuable only as persuasive authority, cannot do all the work Mosdos asks of it.

*Sofarelli* was a challenge brought by Sofarelli's neighbors to challenge his right to transport a house by trailer through a public roadway in Pinellas County, Florida. 931 F.2d at 720. A neighbor filed an action in Florida state court seeking an injunction against Sofarelli on the theory that the move of the house could not be accomplished except by crossing the neighbor's private property. *Id.* The other neighbors subsequently were quoted in the local newspaper as stating that they had racial motivations for halting the house move. Sofarelli thereupon removed the case under Section 1443 claiming that the suit violated his civil rights under Section 1983 and under the FHA. *Id.* at 720-21. A panel for the Eleventh Circuit held that removal was proper because under the circumstances of the case, the "lawsuit filed in state court is itself the act by which the movant's civil rights are violated." *Id.* at 725.

It is this holding by the *Sofarelli* court that is the key to evaluating Mosdos's claim, as it was to defendants in *Rachel*, because anything less than a claim that Plaintiffs' lawsuit itself is a violation of Mosdos's FHA rights would result in a swift remand. Indeed, Mosdos alleges that removal here was proper because the very bringing of the Article 78 action by Plaintiffs in state court violated Section 3617 of the FHA, which makes it "unlawful to coerce, intimidate,

threaten, or interfere with any person in the exercise or enjoyment of, . . . or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." 42 U.S.C. § 3617. As Mosdos phrases it, Plaintiffs "are using the State Court system as a vehicle to coerce, intimidate, deter or deprive its students from moving into [its religious campus]." (Def.'s Mem. 14.)

To address the viability of this claim, however, this Court need not seek guidance from the Eleventh Circuit, as the Second Circuit has twice addressed the interplay between Section 3617 of the FHA (the statute that forms the core of Mosdos's FHA counterclaims) and Section 1443. In *Emigrant Savings Bank*, the Second Circuit considered an appeal by a defendant in a foreclosure action, which claimed that the foreclosure action was racially motivated and violated Section 3617 because the action itself was retaliatory and intended to coerce and intimidate defendant. *See* 668 F.2d at 672-73. The district court granted plaintiff's remand motion and the Second Circuit affirmed.

The Second Circuit compared defendant's claim in *Emigrant Savings Bank* to the defendants in *Rachel*, and in particular, compared the federal statutory rights each claimed. As Judge Friendly noted, in *Rachel* the federal statute at issue, Section 201(a) of Civil Rights Act of 1964, "created a federal statutory right to service in a place of public accommodation free from any discrimination because of race or color." 668 F.2d at 674. Moreover, before *Rachel*, the Supreme Court had interpreted another section of the Civil Rights Act, Section 203(c), to bar punishment and any attempt to punish any person for exercising or attempting to exercise any right or privilege secured by Section 201 or Section 202. *See id.* (citing *Hamm v. City of Rock Hill*, 379 U.S. 306, 311 (1964)). Thus, in *Rachel*, the removing defendants had a federal statutory right to engage in the conduct for which they were being prosecuted, and the state prosecution itself violated the federal statutory right not to be prosecuted for engaging in that

conduct.  Judge Friendly then contrasted *Rachel* with *Peacock*.  In *Peacock*, the Supreme Court held that removal was improper where the defendants were charged with, among other things, obstructing public streets, a prosecution defendants claimed violated a provision of the Voting Rights Act (42 U.S.C. § 1971(b)), which provided that "no person shall intimidate, threaten, coerce, or attempt" to do the same in connection with a person's right to vote.  *Id.* at 674.  As Judge Friendly observed, unlike the *Rachel* defendants, the *Peacock* defendants had no statutory right to obstruct public streets, and there was no "federal law confer[ring] immunity from state prosecution on such charges."  *Id.* (quoting *Peacock*, 384 U.S. at 827).

The conclusion Judge Friendly reached from *Rachel* and *Peacock* is that the scope of removal under Section 1443 "was limited to statutes containing explicit anti-prosecution language, as was the case with [Section] 203(c) of the Civil Rights Act of 1964 in *Rachel*."  *Id.* at 675.  From there, Judge Friendly concluded that the FHA provided no basis for removal to defendant in *Emigrant Savings Bank*.  To begin, Judge Friendly noted that nothing in the FHA gave defendant "who considers himself a victim of discrimination in the financing of housing . . . a right to take the law into his own hands, as did [Section] 201 of the Civil Rights Act of 1964, and refuse to make payments of interest or principal."  *Id.*  Moreover, in a holding that is on point to this case, Judge Friendly disagreed with the same argument made by Mosdos here, that the foreclosure "was prohibited by [Section] 3617, just as prosecution under the Georgia trespass statute was forbidden by [Section] 203(c) of the Civil Rights Act of 1964."  *Id.*  In particular, Judge Friendly found that defendant's claim "ignore[d] the distinction drawn in *Peacock* . . . between the 'punish or attempt to punish' language of [Section] 203(c) and language which speaks of coercion, intimidation, etc."  *Id.* at 675-76 (internal citations omitted).  As Judge Friendly put it,

> Under the former language the very bringing of the state
> prosecution against a member of the protected class violates
> federal law and no purpose is served by making a class member
> present in a state court a defense which that court is bound to
> accept. Under the latter type of statute there would have to be a
> preliminary determination whether the bringing of the foreclosure
> action was or was not a forbidden 'intimidation.'

*Id.* at 676. Thus, concluded Judge Friendly, to accept defendant's "claim for removal would . . .
disregard the words of the removal statute and a construction now dating back for over a hundred
years." *Id.*

Judge Friendly's opinion in *Emigrant Savings Bank* should not come as a surprise, as he
had a chance to consider the applicability of Section 1443 to the FHA thirteen years earlier, in
*New York v. Davis*, 411 F.2d 750 (2d Cir. 1969). In *Davis*, the removing state defendant had
been charged with menacing based on complaints by an allegedly racist supervisor of New York
City's Department of Social Services. The removing defendant claimed that the Social Services
supervisor initiated the false criminal charges after defendant and his wife, who was African-
American, moved into a "white neighborhood." *See id.* at 752. According to the defendant in
*Davis*, the supervisor repeatedly made racist comments and stated that he would make sure that
defendant and his wife were "shipped out" of their neighborhood. *Id.*

As Mosdos here does, the defendant in *Davis* claimed that the racially-motivated and
false criminal charges contravened Sections 3604 and 3617 of the FHA.[13] Recognizing that
defendant's argument had "evident force," Judge Friendly nonetheless rejected it, noting the
"distinction that in *Rachel* the conduct charged as a criminal offense, to wit, not leaving the
restaurants on request, was alleged by the defendants to be the very activity in which the Civil

---

[13] Section 3604 prohibits discrimination in the sale or rental of dwellings "because of
race, color, religion, or national origin." 42 U.S.C. § 3604. In its Answer and Counterclaims,
Mosdos limits this discrimination claim to religion, but the Court is willing to assume that
Mosdos meant to include, or would include in an amended answer, racial discrimination as well.

Rights Act gave them a right to engage . . . ." *Id.* at 753.  Or, as Judge Friendly also put it: "The line is thus between prosecutions in which the conduct necessary to constitute the state offense is specifically protected by a federal equal rights statute under the circumstances alleged by the [state defendant], and prosecutions where the only grounds for removal are that the charge is false and motivated by a desire to discourage the petitioner from exercising or to penalizing him for having exercised a federal right."[14]  *Id.* at 754.

In light of these two decisions, the Court finds that Defendants had no right to remove this case under Section 1443(1).  First, Mosdos cannot credibly claim, and does not try to claim, that it has a right, under the FHA or any federal statute, to ignore facially-neutral state environmental regulations.  Here, Plaintiffs allege that the ASHL and the negative declaration violated state environmental laws (SEQRA).  But, unlike the state defendants in *Rachel*, that allegation (even if false), or a state court's enforcement of such neutral laws, is not mutually

---

[14] Mosdos seizes on one hypothetical example, discussed in *Davis,* where Judge Friendly theorized that a state court defendant could properly remove a state prosecution based on a violation of the FHA:

> If [defendant] were being prosecuted under a statute forbidding tenancy by persons not approved by a majority of the dwellers in an apartment house and the removal petition alleged that the basis for disapproval was [defendant's] being a party to a mixed marriage.  In such an instance, on the facts claimed by the defendant, [Section] 804 of the Fair Housing Act would have substituted a federal right to occupy the apartment for what the state had branded as a crime.

*Davis*, 411 F.2d at 753.

According to Mosdos, this hypothetical example describes its case.  (Def.'s Mem. 16.) The fit, however, is far from obvious.  In fact, there is no such claim that Mosdos's control over its property is subject to a majority vote of residents in Ramapo, nor any claim that Mosdos is being sued because of the majority's refusal to grant to Mosdos its property.  No doubt, Mosdos does claim that Plaintiffs' litigation efforts are improperly motivated, but that is not enough, especially when Mosdos can find no right in the FHA to ignore state environmental requirements that are on their face race-neutral.

exclusive with any right Mosdos has to own, rent, or sell property under the FHA.  *See Water's Edge*, 837 F. Supp. at 506 ("Even if Water's Edge's occupancy is illegal, the FHA confers no federal right to violate the facially valid Village ordinance limiting the number of occupants in the dwelling.").  Second, unlike the Civil Rights Act, the FHA, and in particular Section 3617, contains no provision that immunizes parties from litigation over state environmental laws.  Nor is it enough that Mosdos could assert that the three-year-old lawsuit might intimidate it, as there would have to be some finding that the action was an unlawful attempt at intimidation.  If Plaintiffs are, in fact, racially motivated and if Mosdos, in fact, might be intimidated by Plaintiffs' actions, then Mosdos is free to make such claims in state court.  But, even assuming all that, this Court is not empowered to substitute its authority for that of the state courts in addressing the merits of Mosdos's claims.  *See Peacock*, 384 U.S. at 827-28 ("The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights.  The civil rights removal statute does not require and does not permit the judges of the federal courts to put their [counterparts] of the state judiciary on trial.").

Given the binding authority from the Supreme Court and the Second Circuit, the Court is not persuaded that *Sofarelli* justifies Defendants' removal.  First, *Sofarelli* is limited because it skips over the second prong of the *Rachel* test entirely, with the court noting that the "parties do not dispute" that the suit was of a type whereby the filing of the lawsuit is itself the act violating the movant's civil rights.  *See Sofarelli*, 931 F.2d at 725.  This is a limitation that the Eleventh Circuit itself has subsequently acknowledged.  *See Alabama v. Conley*, 245 F.3d 1292, 1298 n.9 (11th Cir. 2001) (noting that *Sofarelli* "did not squarely address" whether the FHA prohibited the state lawsuit, "as the parties did not dispute that Sofarelli's allegations fell within the holding of

*Rachel*"). Second, while Mosdos attempts to minimize the impact of *Emigrant Savings Bank* and *Davis* as being decided before *Sofarelli*, it bears noting that *Sofarelli* itself relied on authority that the Second Circuit has rejected. In particular, in support of the claim that the mere initiation of a state court action itself could violate the FHA, the *Sofarelli* court cited *Northside Realty Assoc., Inc. v. Chapman*, 411 F. Supp. 1195 (N.D. Ga. 1976), which in turn cited *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968). In *Whatley*, the court held that a provision of the Voting Rights Act (42 U.S.C. § 1973i(b)), that barred coercion, intimidation, and threats related to voting rights, fell within *Rachel*. Yet, *Whatley* was met with a chilly reception in the Second Circuit:

> The Fifth Circuit, whose decision . . . was reversed in *Peacock*, has taken the position that . . . at the time charges were brought there was no federal statute prohibiting intimidation etc. of persons assisting others in exercising their rights to vote, rather than as contrasting the prohibition against punishment in § 203(c) of the Civil Rights Act of 1964 with the prohibition against intimidation in other statutes. [*Whatley*, 399 F.2d at, 522-23]. . . . We have indicated serious doubt about this interpretation . . . and reject it as not a fair reading of *Peacock*.

*Emigrant Sav. Bank*, 668 F.2d at 675 n.4. Thus, the Court finds Mosdos's reliance on *Sofarelli* to be misplaced, and concludes that the removal was improper under Section 1443(1).

### III. Conclusion

For the reasons stated in this Opinion, Plaintiffs' Motion to Remand is granted. The Clerk of Court is respectfully directed to terminate the pending motion on the docket (Dkt. No. 9) and to effect immediate remand to the New York State Supreme Court, Westchester County.


SO ORDERED.
Dated:          September 30, 2008
                White Plains, New York

                                                KENNETH M. KARAS
                                                UNITED STATES DISTRICT JUDGE

ECF Service List

Michael D. Zarin, Esq.
Daniel M. Richmond, Esq.
Jody T. Cross, Esq.
Zarin & Steinmetz
81 Main Street, Suite 415
White Plains, NY 10601
mzarin@zarin-steinmetz.net
*Counsel for Plaintiffs-Petitioners*

John M. Toriello, Esq.
Patrick J. Sweeney, Esq.
Holland & Knight LLP
195 Broadway
New York, NY 10007
john.toriello@hklaw.com
*Counsel for Defendants-Respondents Town of Ramapo, Town Board of the Town of Ramapo,
Planning Board of the Town of Ramapo, and Board of Appeals of the Town of Ramapo*

Joseph J. Haspel, Esq.
40 Matthews Street
Goshen, NY 10924
jhaspel@warwick.net

Reuben S. Koolyk, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
reuben.koolyk@aporter.com
*Counsel for Defendant-Respondent Mosdos Chofetz Chaim, Inc.*

Stephen J. Polter, Esq.
Polter & Stern, LLP
266 Broadway, Suite 404
Brooklyn, NY 11211
sjpolter@polterstern.com
*Counsel for Defendant-Respondent Yeshiva Chofetz Chaim of Radin*

Terry A. Rice, Esq.
Rice & Amon
Four Executive Boulevard, Suite 100
Suffern, NY 10901
tr0823@msn.com
*Counsel for Defendant-Respondent Scenic Development LLC*